# EXHIBIT 5

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

**BOCHETTO & LENTZ, P.C.**
By:    George Bochetto, Esquire
       David P. Heim, Esquire
       Bryan R. Lentz, Esquire
       Kean C. Maynard, Esquire
Identification Nos. 27783, 84323, 71383, 327794
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900                              *Attorneys for Plaintiff*
(215) 735-2455 fax
gbochetto@bochettoandlentz.com
dheim@bochettoandlentz.com
blentz@bochettoandlentz.com
kmaynard@bochettoandlentz.com

| | | |
|---|---|---|
| **BETH ANN MCCAFFERY** | : | COURT OF COMMON PLEAS |
| 139 Cheswold Lane | : | BUCKS COUNTY, |
| Haverford, PA 19041 | : | PENNSYLVANIA |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | NO. 2025-01954 |
| | : | |
| **NEW YORK UNIVERSITY** | : | |
| **SCHOOL OF LAW** | : | |
| 70 Washington Square South | : | |
| New York, NY 10012 | : | **JURY TRIAL DEMANDED** |
| | : | |
| and | : | |
| | : | |
| **NEW YORK UNIVERSITY** | : | |
| 70 Washington Square South | : | |
| New York, NY 10012 | : | |
| | : | |
| and | : | |
| | : | |
| **PATRICIA CUMMINGS** | : | |
| 405 Round Rock Avenue | : | |
| Round Rock, TX 78664 | : | |
| | : | |
| and | : | |
| | : | |

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

**JOHN DOE**                            :
                                        :
    and                                 :
                                        :
**JANE DOE**                            :
                                        :
            *Defendants.*               :
_____     :

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
Bucks County Bar Association
135 East State Street
Doylestown, PA 18901
(215) 348-9413

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

**BOCHETTO & LENTZ, P.C.**
By:   George Bochetto, Esquire
       David P. Heim, Esquire
       Bryan R. Lentz, Esquire
       Kean C. Maynard, Esquire
Identification Nos. 27783, 84323, 71383, 327794
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900                              *Attorneys for Plaintiff*
(215) 735-2455 fax
gbochetto@bochettoandlentz.com
dheim@bochettoandlentz.com
blentz@bochettoandlentz.com
kmaynard@bochettoandlentz.com

| | | |
|---|---|---|
| **BETH ANN McCAFFERY** | : | COURT OF COMMON PLEAS |
| 139 Cheswold Lane | : | BUCKS COUNTY, |
| Haverford, PA 19041 | : | PENNSYLVANIA |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | NO. 2025-01954 |
| | : | |
| **NEW YORK UNIVERSITY** | : | |
| **SCHOOL OF LAW** | : | |
| 70 Washington Square South | : | |
| New York, NY 10012 | : | **JURY TRIAL DEMANDED** |
| | : | |
| and | : | |
| | : | |
| **NEW YORK UNIVERSITY** | : | |
| 70 Washington Square South | : | |
| New York, NY 10012 | : | |
| | : | |
| and | : | |
| | : | |
| **PATRICIA CUMMINGS** | : | |
| 405 Round Rock Avenue | : | |
| Round Rock, TX 78664 | : | |
| | : | |
| and | : | |
| | : | |

3

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

**JOHN DOE**                                      :
                                                  :
   and                             :
                                                  :
**JANE DOE**                                      :
                                                  :
        *Defendants.*   :
                                                  :
_____          :

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, files the following Civil Action Complaint for damages against New York University School of Law, New York University, Patricia Cummings, John Doe and Jane Doe ("Defendants") and in support thereof avers as follows:

## NATURE OF THIS ACTION

1.      On June 22, 1954, Philadelphia Police Officer Francis McCaffery was on duty patrolling the area near Connie Mack Stadium.

2.      As McCaffery approached the vicinity of 22nd and Sedgley Street, he encountered two men attempting to steal from a vehicle belonging to a staff member of the Philadelphia A's professional baseball team.

3.      When confronted, the thieves turned on Officer McCaffery. One of them drew a revolver and shot the 37-year-old officer. While McCaffery lay wounded on the ground his assailants stole his service weapon, hijacked a taxi, and fled the state.

4.      Both offenders, later identified as federal convicts, were subsequently linked to a murder in another state.

4

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

5.      Although McCaffery survived the shooting, he and his family bore the physical and emotional scars for the remainder of his life. His service and sacrifice left a lasting impact on his children and grandchildren, shaping their values for generations.

6.      In the fall of 2001, McCaffery's granddaughter, Beth Ann McCaffery ("Beth"), followed in his footsteps of public service. She raised her right hand and swore the oath of office as an Assistant District Attorney in Philadelphia, the same city where her grandfather had been wounded while protecting the public.

7.      That oath—*"I do solemnly swear (or affirm) that I will support, obey, and defend the Constitution of the United States and the Constitution of this Commonwealth and that I will discharge the duties of my office with fidelity."*—reflected both Beth's and her grandfather's character.

8.      For 13 years, Beth faithfully carried out her duties, earning the respect and admiration of her colleagues, opposing attorneys and the Judges in front of whom she regularly appeared.

9.      She worked in multiple units, working her way up to the prestigious homicide unit where she prosecuted approximately 50 to 75 murder cases.

10.      In June of 2014, Beth left the District Attorney's Office to dedicate herself to raising her children in their early years.

11.      By early 2018, she was a mother of three young boys, all under the age of five. Her career as a prosecutor in Philadelphia had become a proud chapter in her past and defines her professional character—a character of service and justice.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

12.     But in May of that year, everything changed. Beth's legacy was twisted, rewritten to cast her as a villain, accused of committing the gravest sin in America's justice system: the intentional persecution of an innocent man.

13.     Defendant Patricia Cummings was employed by the Philadelphia District Attorney's Office under District Attorney Larry Krasner.

14.     On May 15, 2018, Cummings drafted—and Krasner's office filed—a motion to abandon – or *nolle pros* – murder charges in a case prosecuted by Beth McCaffery a decade earlier in 2008.

15.     Though Beth was not named in the motion, the media quickly identified her, and the resulting coverage vilified her, dragging her name through the mud.

16.     In the motion, Cummings accused Beth of "egregious misconduct," "hiding evidence," and "violation of the law." By explicitly alleging that Beth concealed evidence and broke the law, Cummings made a direct and unequivocal accusation that Beth had committed criminal acts.

17.     Six years later, in March 2024, NYU and Patricia Cummings—now employed by NYU—republished the same false claims in a report titled *Prosecutorial Misconduct in the Philadelphia District Attorney's Office.*

18.     Unlike the court filing from 2018, the NYU report names Beth twice--going so far as to highlight her name in bold print: **"ADA Beth McCaffery."**

19.     Beth is named as, among other things, one of the prosecutors who "*failed to move beyond the virtue of winning, and have neglected their role as truth-seeking, impartial ministers of justice.*" The NYU report further claimed that she, along with others identified in the report,

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

showed no regard for *"truth or fairness"* and failed to *"uphold [her] constitutional and ethical obligations."*

20.    Shortly after the NYU report was published, it was featured at the Peter L. Zimroth Center on the Administration of Criminal Law's annual conference, which was attended by hundreds of lawyers and extensively promoted online by NYU.

21.    At the event, panelist Patricia Cummings and keynote speaker Larry Krasner praised the report for exposing allegedly unethical and corrupt prosecutors.

22.    The defamatory *per se* accusations against Beth—and others—originated entirely from false claims made in a motion written by Patricia Cummings and filed by Larry Krasner's office in 2018. Despite being fully aware, through Cummings herself, that the allegations lacked any factual basis, NYU chose to republish them.

23.    No one at NYU made any effort to independently verify the allegations. Instead, they relied entirely on Cummings—even though multiple judges had previously found that several claims she made in her capacity as an attorney were either "unreliable" or lacked candor.

24.    This reckless disregard for the truth underscores NYU's complicity in perpetuating a false and damaging narrative.

25.    Despite a Philadelphia court having declared the accusations false and "maliciously intended," the NYU report remains publicly available online, continuing to inflict damage.

26.    Backed by NYU and widely circulated nationwide throughout the legal community, the report has delivered a direct and devastating blow to Beth's personal and professional reputation. The false allegations it contains continue to cast a long and unforgiving shadow over her name.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

27.    The emotional and reputational damage caused by Cummings and the NYU report was entirely foreseeable and nothing short of catastrophic. They shattered Beth's sense of self and left a lasting scar that no apology or retraction could ever undo.

## PARTIES

28.    Plaintiff, Beth Ann McCaffery ("Beth"), is an adult individual residing at 139 Cheswold Lane, Haverford, Pennsylvania 19041.

29.    Defendant, Patricia Cummings ("Cummings"), is an adult individual and attorney with an active license in Texas and an inactive license in Pennsylvania. Cummings currently resides in the State of Texas at 405 Round Rock Avenue, Round Rock, TX 78664.

30.    Defendant, New York University School of Law ("NYU Law"), is a private, academic, nonprofit entity specializing in legal education and research, which functions as an academic subdivision of New York University. Established in 1835, NYU Law is the oldest law school in New York City and one of the oldest in the United States. NYU Law is located at 70 Washington Square South, New York, NY 10012.

31.    Defendant, New York University ("NYU"), is a private not-for-profit research university, founded in 1831 and chartered by the New York State Legislature. NYU has an estimated $6.5 billion endowment, which is among the top 25 largest university endowments in the United States. NYU is located at 70 Washington Square South, New York, NY 10012.

32.    The John and Jane Doe Defendants are yet unknown individuals and/or entities who may have worked and/or conspired with the Defendants in maliciously defaming Beth.

## JURISDICTION AND VENUE

33.    This Court has specific personal jurisdiction over Defendants because each of them had specific contacts with Pennsylvania related to the claims set forth herein, including Cummings prior work for the

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

Philadelphia District Attorney, as well as her and NYU's repeated communications with and presence at the Philadelphia District Attorney's Offices in "researching" and preparing the false and defamatory NYU Report. Defendants further directed their tortious and defamatory activity at Plaintiff with the intent of harming Plaintiff in Pennsylvania.

34.    Venue is proper in Bucks County because transactions and occurrences giving rise to these claims occurred in Bucks County, where Beth was born and raised. Such transactions and occurrences include the publication of the defamatory statements from the NYU Report in Bucks County, where the defamatory NYU Report was read and understood by Beth's friends, neighbors, family members and/or colleagues.

## STATEMENT OF FACTS

### Krasner's So-called "Progressive" Ideology

35.    In January of 2018, Lawrence Krasner entered office as the new District Attorney for the City of Philadelphia.

36.    Krasner campaigned on a progressive platform that denounced an entire generation of Philadelphia prosecutors as dishonest actors complicit in a corrupt and racist system that routinely prosecuted and imprisoned the innocent.

37.    He advanced this sweeping narrative to serve his political agenda, with no regard for the reputations of hundreds of dedicated attorneys like Beth, whose integrity was long respected within the legal community.

38.    Krasner pledged to dismantle their work and actively sought to overturn convictions secured by his predecessors.

39.    Once he was elected, Krasner publicly likened former Assistant District Attorneys—such as Plaintiff—to "war criminals."

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

40.     He referred to the Pennsylvania Office of Attorney General, where many former Philadelphia prosecutors have continued their public service, as "Paraguay"—a historically charged reference to the South American country known for sheltering Nazi war criminals who orchestrated and committed acts of genocide during the Holocaust.

41.     Krasner hired Defendant Patricia Cummings to lead the newly designed Convictions Integrity Unit ("CIU").

42.     As detailed herein, the true purpose of the re-vamped CIU—beyond serving as a vehicle to elevate Krasner's public persona—was to systematically target former prosecutors with unfounded allegations of prosecutorial misconduct, in furtherance of a politically motivated campaign to discredit his predecessors and rewrite the history of the Office.

43.     Cummings, as the Chief of CIU, fully agreed with and worked deliberately to advance this agenda.

44.     In February 2018, just one month after Larry Krasner was sworn in as District Attorney, Patricia Cummings identified the Conviction Integrity Unit's first opportunity to advance Krasner's agenda in *Commonwealth v. Dontia Patterson*.

45.     Patterson was convicted of first-degree murder and was, at the time, serving a life sentence.

46.     Patterson was tried twice for murder charges. Beth prosecuted the first murder trial in 2008, which resulted in a hung jury. In 2009, prosecutor Richard Sax ("Sax") again prosecuted Patterson which resulted in a guilty verdict.

47.     Krasner and Cummings viewed the *Patterson* case as a convenient opportunity for a high-profile first exoneration. It was positioned at a stage in the appeals process that allowed for a swift resolution early in Krasner's first term.

10

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

48.    Just as conveniently, the prosecutor who obtained the conviction—Sax—was a longtime nemesis of Krasner, making the case a chance not only to reverse a conviction but to publicly attack and discredit someone Krasner (and therefore Cummings) had long sought to exact revenge upon.

49.    Since two prosecutors were involved in the case, Krasner and Cummings recognized that to go after Sax, they would also have to attack Beth—despite having no personal or professional history with her, and no legitimate basis whatsoever to question her credibility or ethics.

50.    On May 15, 2018, the Philadelphia District Attorney's Office filed a motion to dismiss the murder conviction in the *Patterson* case.

51.    The motion, formally known as a *Motion to Nolle Prosequi*, was written by Cummings and signed off by Chief of Homicide, Anthony Voci, on orders from Larry Krasner. ("The Cummings Motion.") (Attached here as Exhibit 1.)

52.    The *Patterson* case had been remanded on appeal based on an allegation of ineffective assistance by defense counsel, not any allegation of prosecutorial misconduct.

53.    The Cummings Motion had gone through several drafts before being finalized the day it was filed.

54.    Each of Cumming's earlier drafts included vague suggestions of misconduct by Sax, with no mention of Beth whatsoever.

55.    The idea to accuse Sax of misconduct originated with Cummings and Krasner.

56.    Even so, in the early drafts of the motion the references to Sax were indirect, citing "withheld evidence" without explicitly alleging prosecutorial misconduct. It wasn't until the day before filing the Cummings Motion that Cummings revised the motion to directly accuse ***both***

11

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

Beth and Sax of "egregious prosecutorial misconduct." "a violation of the law," i.e. criminal conduct.

57.    Although the Cummings Motion did not name Beth (or Sax) directly, Beth was one of the two prosecutors implicated throughout the document. The Cummings Motion contained multiple knowingly false statements, including false claims that Beth had engaged in "egregious prosecutorial misconduct."

58.    Specifically, the Cummings Motion alleged in part:

- "Patterson spent 11 years in custody despite the fact that he was 'probably innocent.'"

- "Patterson's conviction is an egregious example of police and prosecutorial misconduct in hiding evidence helpful to the defense that the U.S. Constitution and the Pennsylvania Constitution require to be revealed to the defense before trial."

- "The constitutional requirements police and prosecutors ignored in Patterson's case are crucial. They protect the innocent and redirect the entire criminal justice system to investigate further to pursue the guilty, all of which protects the public."

- "Prosecution that deliberately violates these constitutional rights is not law enforcement in any sense—*it is a violation of the law*." (Ex. 1)

59.    Hiding evidence is not only a violation of constitutional due process—it is also a criminal offense under both Pennsylvania law and federal law, including statutes prohibiting obstruction of justice and official misconduct.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

60.    These accusations—that the prosecutors in the *Patterson* case committed egregious misconduct and engaged in criminal conduct—were false

61.    No one from the DAO including Cummings ever interviewed Sax or Beth before filing the Cumming's Motion.

62.    Both Sax and Beth would have, if asked, denied they concealed any evidence.

63.    Beth would have cited to the dozens of notes and memoranda she prepared during her work on the *Patterson* case. Such memoranda proved Beth had not withheld evidence but had, in fact, turned over all exculpatory information to the defense prior to trial.

64.    As to the specific allegations against Beth and the other prosecutor—that they had withheld exculpatory information from the defense—Cummings knowingly and intentionally fabricated such accusations and purposely avoided information she knew would undermine the effort to attack Sax and Beth.

65.    The day after the Cummings Motion was filed, a well-respected, veteran prosecutor sent an internal email about the Cummings Motion, stating he had been "up all night," worrying about "the coming lawsuits" due to "a lot of mistakes and misstatements," noting he was "never consulted" about this filing and only heard about it an hour before it was filed.

66.    The veteran prosecutor's email ended: "We tried to tell you there were major issues with it and it needed to be changed, but it is obviously too late now."

67.    Upon information and belief, a copy of this email was shared with Cummings, yet neither she nor anyone else from her CIU sought to amend the motion or correct the falsehoods contained in the Cummings Motion.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

### *The Initial Aftermath of Cummings' Lies*

68.     Beth first learned of Cumming's false allegations in May 2018 when she received a voicemail from newspaper reporter, Chris Palmer of *The Philadelphia Inquirer*, informing her that an explosive motion had been filed against Beth, accusing her of intentionally concealing evidence to manipulate the outcome of a murder trial in order to convict and innocent man.

69.     Upon listening to the voicemail, Beth discovered that an article had already been published online at *Philly.com* titled *"Philly DA's Office: Ex-Prosecutors Committed Egregious Misconduct in 2007 Murder Case."* The article specifically identified Beth McCaffery as one of the ex-prosecutors. **(Ex. 2)**

70.     Beth then obtained a copy of the Cummings Motion.

71.     At first, Beth could hardly believe it—*It had to be a mistake,* she thought. *How could Cummings and Krasner brazenly file false allegations to free a convicted murderer—without even bothering to ask me, the original prosecutor, what actually happened?*

72.     Before for long, the accusations gained local, national, and even international attention, and Krasner's Office failed to correct or retract the false accusations, Beth began to realize there was no mistake.  She had become the unwitting victim of Krasner's political agenda and his personal vendettas.

73.     Beth was completely devastated. She experienced physical illness and severe bouts of emotional distress over the damage to her reputation and career prospects.

74.     Beth had built her career on ethical prosecution and unwavering dedication to justice. The idea that her name would forever be associated with "egregious prosecutorial misconduct" was unimaginable.

14

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

75.     Beth became despondent. She could not sleep and laid awake at night looping the false accusations in her head, over and over again, agonizing over the impact on her good name.

76.     In the seven years since the accusation was first made, she has endured a torturous cycle of reliving the trauma—the mutilation of her professional reputation—every time these malicious lies resurface.

77.     This ongoing reputational harm has caused severe emotional distress, a sense of professional isolation, and lasting damage to her standing as an attorney.

78.     The false accusations were headlined in the Philadelphia region's largest newspaper and online.

79.     Anyone who searched the internet for the name "Beth McCaffery," including her three sons, would find the accusation of law breaking and "egregious prosecutorial misconduct."

80.     For years thereafter the "egregious prosecutorial misconduct" story was publicized nationally and internationally and hung-over Beth like a black cloud.

81.     Shortly after the Cummings Motion was quoted in the *Inquirer*, Beth learned her older brother and her parents were secretly nominating her for her high school's sports Hall of Fame.

82.     Beth had been an all-star soccer player at Archbishop Wood High School in Buck's county and a Division One Soccer Player in College at Villanova.

83.     Beth's brother and parents had secretly planned to nominate her for the honor, hoping to surprise her. But, when Beth found out, she called her parents in tears, pleading with them not to go through with it. *"The first thing they will do is search my name on the internet and they will see THIS! This lie that I committed egregious misconduct to convict an innocent man!"*

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

***Patterson's Civil Claims***

84.     Within months of the Cummings Motion being filed, Patterson's lawyers notified the City of Philadelphia of his intent to sue for the 11 years he had "wrongfully" spent in jail—years that Cummings and Krasner stated he should never have served.

85.     Soon thereafter, Beth was contacted by the Philadelphia City Solicitor's Office who informed her that the City intended to contest Patterson's claim and sought her assistance in defending against the impending lawsuit.

86.     For the first time since the publication of the Cummings Motion, Beth felt a glimmer of hope that she could clear her name.

87.     Beth began collaborating with the City Solicitor and their investigators to gather the evidence needed to refute the claims made in the Cummings Motion.

88.     The Cummings Motion asserted Patterson could not have committed the murder because he was "friends" with the victim. Determined to challenge this claim, Beth collaborated with the City Solicitor and their investigator to locate the victim's family.

89.     The investigators located the victim's mother and sister, who firmly denied Cummings' claim that their deceased son and brother had been friends with Patterson. Moreover, they revealed to the investigator that no one from Cummings' or Krasner's office had EVER contacted them before, the filing of the Cummings Motion and releasing Patterson from prison.

90.     Next, the Cummings Motion claimed that neither of the two eyewitnesses who identified Patterson as the killer had known him before the day of the murder. It also implied that their testimonies had been influenced by pressure or coaching.

91.     Beth informed the City Solicitor that these claims were blatantly false.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

92.     First, one of the eyewitnesses was a neighborhood barber who testified at a preliminary hearing and at two trials that he had seen Patterson almost daily for months prior to the murder. The barber testified he had spoken with Patterson on multiple occasions, making it impossible that he did not know Patterson before the murder.

93.     Next, Beth collaborated with the investigators to track down the two eyewitnesses, neither of whom had ever been interviewed by Cummings or anyone else in Krasner's office. Once located, both eyewitnesses signed sworn statements reaffirming the accuracy of their original testimony identifying Patterson as the murderer.

94.     The Cummings Motion contained numerous other false statements, including the defamatory accusations that Beth had engaged in prosecutorial misconduct by withholding exculpatory evidence.

95.     This exculpatory information involved alternative suspects—individuals linked to a drug gang that, according to some witnesses, had a conflict with the murder victim.

96.     The Cummings Motion characterized this alternative suspect information as "strong evidence" that "identified the likely perpetrator."

97.     In preparation for defending against Patterson's impending civil lawsuit, the City Solicitor issued a "Notice of Preservation" to the District Attorney's office, including to Cummings and Krasner individually. Per the Notice, Cummings and the District Attorney's Office had a duty to preserve all Patterson investigative and trial files. **(Ex. 3)**

98.     Thereafter, the City Solicitor obtained copies of what Cummings and Krasner asserted was the Patterson file.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

99.    Such files obtained by the City Solicitor contained early drafts of the Cummings Motion which lacked any accusations of prosecutorial misconduct and in fact were focused instead on "ineffective assistance of defense counsel."

100.    Beth knew that the complete Patterson file contained no evidence of misconduct by either prosecutor, which is why Cummings' early draft of the Cummings Motion focused instead on assessing the performance of Patterson's defense counsel.

101.    Nor did the Patterson file contain any "strong evidence" pointing to a likely alternative perpetrator. In fact, while drafting the motion and reviewing the file -- ten days before the motion was filed -- Cummings emailed Homicide Chief Anthony Voci asking, *"Who do you think was the shooter _____?"* **(Ex. 4,** *May 6, 2018 email from Cummings to Voci*)

102.    It became clear to Beth and the City Solicitor that the Patterson file produced by the District Attorney was incomplete.

103.    Nonetheless, even the incomplete Patterson file included evidence undermining the accusations of prosecutorial misconduct in the Cummings Motion.

104.    The files produced by the District Attorney's office contained copies of documents that had unquestionably been disclosed to Patterson's lawyer. These documents detailed the exact alternative suspect and drug gang information that the Cummings Motion falsely claimed had been withheld by prosecutors.

105.    When filing the Cummings Motion, Krasner and Cummings had redacted the names of the alternative suspects and gang information from a police intelligence report. This redaction was intended to create confusion about whether the alternative suspect information that had been disclosed to the defense matched the details in the police intelligence document.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

106.    Beth was confident that this confusion could be resolved if she could access the complete trial file including the memoranda she prepared while prosecuting the *Patterson* case.

107.    Such memoranda would provide a detailed record of the exculpatory information she had disclosed to the defense, definitively disproving the misconduct allegations made against her in the Cummings Motion.

108.    Beth's hope that the contents of the case file would swiftly disprove the attack on her reputation was soon shattered when she was informed by the City Solicitor that the copy of the *Patterson* file provided to the Solicitor's Office contained none of the notes or memoranda she had authored.

109.    This was shocking, given Beth's well-documented and long-standing practice of typing and signing her own memoranda to formally record the disclosure of exculpatory information to the defense. In addition, her personal notes meticulously tracked her trial preparation, including communications with defense counsel about trial matters—particularly the handling of exculpatory evidence. Beth also routinely faxed these memoranda without a cover sheet, ensuring that the exact image of the memo appeared on the fax confirmation page, creating indisputable proof of transmission.

110.    Beth estimated that, in the *Patterson* case, she would have drafted, signed, and faxed more than a dozen memoranda documenting the transmission of exculpatory information to defense counsel. Additionally, Beth would have compiled over 40 pages of handwritten notes detailing her trial preparation, which were also suspiciously missing.

111.    Cummings was the last person with access to the Patterson file before it before it was shared with the City Solicitor.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

112.    The Patterson file intact and undisturbed would have rebutted all of the false accusations in the Cumming's motion.

113.    Despite the shock of discovering that the file was now missing key evidence that would have directly rebutted Cummings' malicious accusations, Beth remained hopeful that the civil litigation would offer a path to expose the truth and restore her reputation.

114.    Then in 2020, —after nearly two years of working closely with the City Solicitor to defend against Patterson's claims—Beth learned that the City of Philadelphia had agreed to settle the lawsuit, paying Patterson $1.6 million, despite objections from both the investigators and the attorneys assigned to the case.

115.    Following the settlement of Patterson's claims, Beth began exploring other avenues to prove her innocence. In December 2020, through counsel, she submitted a Right-to-Know request to the Philadelphia District Attorney's Office. The request sought:

*"...a full copy of the District Attorney's trial file, all intra-office emails regarding any stage of the above-captioned case, including emails with third parties, and any and all memoranda, notes, emails, facsimiles, or facsimile confirmations related to the above-captioned case and containing any of the following terms: 'McCaffery,' 'ADA McCaffery,' 'Beth McCaffery,' or 'ADA Beth McCaffery.' Also requested were all files related to the appeal of the above-captioned case."*

116.    It would take another four years and three months of obstruction and resistance from the District Attorney's Office before the Right-to-Know litigation was finally resolved—and the full extent of Cummings' misconduct began to come to light.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

***NYU and NYU Law Hire Cummings as "Research Scholar," Despite Obvious Reasons to Doubt Her Credibility***

117.    Shortly before Beth filed her Right-to-Know request—and around the same time the City settled with Dontia Patterson in the summer of 2020—Cummings began a fellowship at New York University's Zimroth Center for the Administration of Criminal Law, serving as a "Research Scholar," separate and apart from her official role as Chief of the Conviction Integrity Unit at the Philadelphia District Attorney's Office.

118.    Upon information and belief, as of the date this Complaint is filed, Cummings remains on the Zimroth website under the "Team" banner, with a bio stating she is "currently a Research Scholar with the Zimroth Center."

119.    In her capacity at NYU, Cummings was authorized to act on behalf of the University to review and obtain confidential and sensitive trial and criminal investigative documentation from the files in the Philadelphia District Attorney's Office as part of a research project and report on alleged "prosecutorial misconduct".

120.    In this regard, NYU, NYU Law, Cummings and others conspired to review, copy and possess law enforcement investigative files for inclusion in the report, *Prosecutorial Misconduct in the Philadelphia District Attorney's Office* ("The Zimroth Report").

121.    For over four years, the District Attorney's Office actively cooperated in efforts to share trial files with NYU, even as it simultaneously denied Beth access to documents she had personally created while prosecuting the *Patterson* case.

122.    Accessing such criminal trial files is a crime under Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S.A. §9106(c)(4)(". . .investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency.") 18

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

Pa.C.S.A. § 9106(g)("Any person, including any agency or organization, who violates the provisions of this section shall be subject to . . . criminal penalty provided by law.")

123.    Nevertheless, Cummings shared and caused to be shared the confidential investigative and trial files with NYU and non-members of any law enforcement agency while simultaneously holding an academic fellowship at NYU.

124.    During this time, Cummings operated in dual roles—serving as a prosecutor in the Philadelphia District Attorney's Office's so-called Conviction Integrity Unit while also working as a Fellow at NYU.

125.    When NYU and NYU Law engaged Cummings in 2020 for the specific purpose of exploiting her access to criminal investigative materials she - - and they - - were engaging in criminal conduct in violation of CHRIA.

126.    Indeed, there were ample public records then available to easily demonstrate Cummings' lack of integrity and serial violations of her ethical obligations.

127.    In addition to the legally problematic nature of Cummings' dual employment arrangement, there were other clear and compelling reasons why selecting her as the "researcher" for this project was beyond reckless. NYU and NYU Law knew that Cummings had a well-documented and public history of submitting false and unreliable statements to courts, as well as engaging in conduct contrary to both the law and established ethical rules.

128.    For example, in December 2017, a year and a half *before* Cummings was hired as a Research Fellow, Judge Donna King, a District Judge in Williamson County, Texas, found that Cummings had provided multiple "unreliable" statements in a sworn affidavit regarding her representation in a high-profile criminal case.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

129.    The Texas Court determined Cummings' claims about thoroughly advising her client and investigating alternative defense strategies were contradicted by multiple witnesses, including co-counsel and the defendant.

130.    Judge King specifically noted Cummings' assertions about appellate options and trial strategy were inconsistent with the testimony of others involved in the case, leading the Court to reject her account as not credible.

131.    Additionally, Judge King found Cummings ignored multiple "red flags" indicating she had a serious, undisclosed conflict of interest.

132.    In this regard, despite having previously represented members of a key family involved in the case, including in a juvenile sex crime matter, Cummings failed to disclose the full extent of her prior legal work to her co-counsel, the defendant, or his family.

133.    The Court determined that such lack of disclosure compromised Cummings' ability to effectively represent her client and influenced her decision not to pursue an alternative suspect defense, even when presented with clear evidence that misidentification was viable.

134.    Ultimately, the Texas Court concluded Cummings' prior relationship with individuals connected to the case "colored" her legal strategy, preventing a full and impartial defense.

135.    Cummings' failure to acknowledge or act on the evident conflict of interest was a central factor in the Texas Court's finding that her representation was deficient and had denied her client effective assistance of counsel.

136.    The ethical and credibility concerns surrounding Cummings were not confined to her prior work in Texas. During her tenure as head of the Conviction Integrity Unit in Philadelphia,

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

she developed a similarly well-earned reputation for dishonesty, unreliability, and a disregard for basic standards.

137.    *In February 2021—two years and ten months before NYU published* its report—Federal Judge Mitchell Goldberg issued an opinion explicitly questioning Cummings' practice of making broad allegations of prosecutorial misconduct without first obtaining testimony from the former prosecutors involved (conduct strikingly similar to the behavior that led to the false accusation of prosecutorial misconduct in the in the *Patterson* case).

138.    Goldberg, himself a former prosecutor in the Philadelphia DA's Office in the 1980s, said he found it "disconcerting" that Cummings was alleging a "*veteran former*" ADA "*had knowingly and intentionally withheld substantial evidence pointing to another suspect,*" and "*prosecuted a potentially innocent person, obtained a first-degree murder conviction, and stood silent as a life sentence was imposed.*"

139.    Judge Goldberg issued a sharply worded opinion criticizing Patricia Cummings for "ma[king] no effort to obtain any type of explanation" from the original prosecutors before leveling serious allegations of misconduct. Judge Goldberg emphasized that he had "pressing questions" that "were about to be explored" with the trial ADA at an evidentiary hearing scheduled for November 10, 2020, and he described the prosecutor's testimony as "indispensable."

140.    In *March of 2021, two years and eleven months years before NYU published* its report ("the Zimroth Report"), only three months after Cummings commenced her work for NYU, and Zimroth, Philadelphia Common Pleas Judge Rosemary Defino-Nastasi, a former Public Defender, condemned Cummings' conduct in another case, again raising concerns about her lack of candor and failure to act in good faith.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

141.    Judge Defino-Nastasi questioned whether Cummings – as the Commonwealth's attorney – had violated her duty of candor to the Court and duty to act in good faith on behalf of the public.

142.    Judge Defino-Nastasi also pointed out that Cummings made several unsubstantiated claims, including conclusions without interviewing a key witness—a failure she deemed *"entirely inappropriate."* (Once again, the same conduct that led to the false accusation of prosecutorial misconduct in the Patterson case. )

143.    Judge Defino-Nastasi elaborated on Cummings apparent breach of her ethical obligations:

> *"As to Counsel's duty of candor toward a tribunal, frankly, it is indiscernible to this Court whether Counsel was willfully deceitful or just inadvertently so, because the Commonwealth's pleadings have created a confusing web of contradictions for this Court to have to sift through."*

144.    Judge Defino-Nastasi further emphasized that Cummings should have supported her claims with evidence, stating: *"A prosecutor has an absolute duty to support their claims with evidence, plain and simple. A hunch or assumption will not stand up in a court of law."*

145.    Judge Defino-Nastasi concluded by expressing doubt about whether Cummings had conducted a full and forthright investigation, stating: *"This Court is left wondering whether the Commonwealth has acted in good faith and been forthright in its investigation into this case and whether or not they have truly turned over every stone for our citizens."*

146.    In October of 2022, in another case involving Cummings, Krasner's office was again chastised by a trial court judge for a lack of candor and abusing the court process in the case of Ryan Pownell.

147.    Judge Barbara McDermott (a former criminal defense lawyer) said:

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

> *"This Court believes that the Commonwealth (Krasner's office) misrepresented to Judge -- the supervising judge -- -- about whether or not after the presentment was approved, whether or not he was entitled to a preliminary hearing."*

148.   In addition to Cummings' uniquely compromised credibility, there were numerous readily available public sources that, at a minimum, cast serious doubt on the reliability of the claims advanced by Krasner's Office in court filings.

149.   In another case before Judge Goldberg, the Judge ordered a hearing before accepting the DA's concession in a death penalty case because he "*preliminarily conclude[d] that on two critical issues in the case, ... the District Attorney was less than candid.*"

150.   In 1984, Robert Wharton and an accomplice forced their way into the Harts' home at knifepoint. They bound, robbed, strangled, and drowned Bradley and Ferne Hart, then turned off the heat, leaving the couple's seven-month-old daughter, Lisa, to freeze. Against all odds, she survived. A jury convicted Wharton of these crimes and sentenced him to death.

151.   Wharton later filed a federal appeal, and the Philadelphia District Attorney's Office, under Larry Krasner, chose to concede rather than challenge it.

152.   In September of 2022 – ***18 months before*** NYU published the Zimroff Report – Judge Goldberg issued a published opinion concluding that:

> *"The Office (Krasner's office) had made representations to th[e] Court that lacked evidentiary support and were not in any way formed after 'an inquiry reasonable under the circumstances.'"*

153.   Judge Goldberg called the misrepresentations "*egregious*" and "*exceptional*,"

154.   The Judge also ordered Krasner to personally apologize to Lisa for excluding her from the appeal process.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

155.    In March of 2024 – *weeks before NYU published the Zimroff Report* – the 3rd Circuit Court of Appeals upheld the sanctions, emphasizing:

> *"Courts rely on lawyers' honesty; lawyers may not mislead them. But the Philadelphia District Attorney's Office did just that. It conceded that a court should vacate Robert Wharton's death sentence. Yet in doing so, it did not comply with this Court's instruction to investigate evidence cutting against Wharton's habeas claim."*

156.    This ruling was publicized in the Philadelphia Inquirer under the headline:

> *Philly DA Larry Krasner's office misled court while trying to free a man from death row, federal appeals court rules*

157.    The subheading noted that;

> *"The ruling is the latest instance in which courts have questioned one of the primary accomplishments Krasner has touted during his tenure: his office's efforts to exonerate dozens of defendants."*

158.    NYU had every opportunity—and indeed the responsibility—to examine the publicly available information that directly challenged the reliability of the court filings and other claims advanced by Krasner's Office.

159.    NYU also had both the opportunity and the responsibility to conduct an independent analysis of the practices of the Philadelphia District Attorney's Office under Larry Krasner, particularly as they related to the CIU's review and dismissal of convictions secured by prior prosecutors.

160.    Had NYU fulfilled that responsibility; it would have readily discovered that the methodology employed by the CIU—like the approach taken in the *Patterson* case and the cases cited for criticism by multiple courts described herein—was deeply flawed and systematically biased. That process was marked by shortcuts, misrepresentation of facts, and a willful refusal to

interview witnesses or examine evidence that might contradict predetermined conclusions favoring convicted offenders.

161.     Under Cummings' direction the CIU failed to follow basic investigative protocols, ignored key evidence, misled Judges, and ultimately secured dismissals in high-profile cases without a legally or factually sound basis.

162.     The fact that such grave misconduct could have been uncovered by NYU through an honest examination of just a single case underscores the magnitude of the Defendants' failure to conduct any independent investigation. Instead, NYU chose to rely exclusively on the unverified assertions of three deeply compromised sources—Patricia Cummings, Larry Krasner, and Krasner's Conviction Integrity Unit.

163.     Despite these many red flags and numerous substantive reasons to question the credibility of Patricia Cummings and any work product originating from the Philadelphia District Attorney's Conviction Integrity Unit, NYU and NYU Law never undertook even a minimal effort to verify the accuracy of the accusations lodged against Beth or the veracity of any part of the Cummings Motion.

164.     Instead, over a period of years, NYU and NYU Law empowered Cummings to unlawfully access criminal history information and allowed her to participate in drafting and publishing a scathing and demonstrably false report that defamed Beth and republished the entirety of the defamatory Cummings Motion was itself profoundly false, unethical, and the product of illegal access to criminal history files.

165.     A report whose stated purpose was to "out" prosecutors who had engaged in unethical or illegal conduct.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

166.    NYU and Zimroth knowingly participated in a process violating the Pennsylvania CHRIA by facilitating Cummings' sharing statutorily confidential criminal investigative and trial files with non-DOA staff including at NYU.

***Beth Pursues the Right-to-Know Request***

167.    When Beth submitted her Right-to-Know request in December 2020, the District Attorney's Office was legally obligated to review the requested files and determine whether they were subject to disclosure.

168.    During that review, junior attorneys assigned to the matter discovered that a substantial portion of the trial file—including the very notes and memoranda authored by Beth—was missing.

169.    Cummings was working at the District Attorney's office and for NYU when the Right to Know request was received.

170.    When the junior attorneys assigned to the Right to Know matter went to review the file they discovered that a substantial portion of the trial file—including the very notes and memoranda authored by Beth—was missing.

171.    In an effort to locate the missing files, the attorney questioned all personnel within the District Attorney's Office who had access to the file, including Patricia Cummings. The missing files were never located.

172.    Rather than disclosing this critical fact to Beth or her counsel, the District Attorney's Office instead issued a formal denial stating cryptically that "all available files" had been reviewed and that none of its contents were subject to disclosure under the Right-to-Know Law.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

173.    Ironically, the denial relied in part on the Criminal History Record Information Act (CHRIA), invoking its restrictions on the circulation of law enforcement investigative materials—despite the fact that the very records sought had, by that point, already been selectively shared with NYU.

174.    Beth vigorously contested the District Attorney's denial of her Right-to-Know request for four years and three months through Philadelphia's administrative and judicial systems, including an appeal. In doing so, she incurred substantial legal fees and other costs in her ongoing effort to obtain records she had personally created and which were critical to defending her reputation.

175.    The resistance by Krasner and Cummings persisted until the spring of 2025, when Judge Ann Marie Coyle of the Philadelphia Court of Common Pleas ordered an evidentiary hearing on Beth's Right-to-Know request.

176.    On February 21, 2025, Judge Coyle convened an evidentiary hearing in the Right to Know matter, to determine: (a) whether Krasner and Cummings' office had acted in bad faith by concealing Beth's memoranda in the *Patterson* case; and (b) whether the Philadelphia DAO waived any objection to granting Beth access to the trial file by previously sharing such file with NYU and the Zimroth Center.

177.    The second witness in the case was Anthony Voci, the former head of Homicide in the Philadelphia DAO, who signed a verification under oath attesting to the "facts" in the Cummings Motion, testified under oath that he had signed the Cummings Motion WITHOUT reading it.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

178.    Vocci admitted to doing *"virtually nothing"* to verify the accuracy or truthfulness of the assertions of the Cummings Motion and further stated that he did NOT believe Beth had engaged in prosecutorial misconduct.

179.    Vocci's testimony was particularly poignant since he swore under oath to the contrary by verifying the Cummings Motion and making on-the-record false statements to the Nol Pros Judge.

180.    Voci further testified at the Coyle trial that the Cummings Motion was written by Cummings, that she worked closely with Krasner and that therefore he was ORDERED TO SIGN THE MOTION.

181.    Later, in the same trial, Larry Krasner denied ordering Voci to sign but testified that, as the District Attorney, he was the only person who could have given such an order to Voci.

182.    Cummings was scheduled to testify at the evidentiary hearing before Judge Coyle regarding the missing memoranda notes and disclosure documentation in the *Patterson* file.

183.    But shortly before the February hearing, Cummings informed the Philadelphia District Attorney's Office she was unwilling to testify, explaining she was in communication with NYU regarding her potential testimony, and that her attorney advised her against testifying.

184.    At the conclusion of the Right to Know Hearing, Judge Coyle made several significant factual findings exonerating Beth and condemning the members of the DAO (including Cummings) involved in falsely accusing her of prosecutorial misconduct. In this regard, Judge Coyle:

- exonerated Beth of the accusations of prosecutorial misconduct, which Judge Coyle found had no factual basis, were maliciously intended, and stemmed from political motives.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

- acknowledged Beth's integrity and courage, affirming that her testimony was credible and supported by independent corroboration.

- determined that crucial case documents were deliberately removed and/or destroyed by the DAO.

- determined the Cummings Motion contained numerous false and misleading statements.

- noted a lack of transparency and candor during legal proceedings, particularly in representations made to Judges who presided over post-conviction proceedings in the *Patterson* case.

- determined the DAO failed in its duty to present accurate and complete information, leading to a disturbing pattern of misrepresentations.

- determined that the requested records under the Pennsylvania Right-to-Know Law should be disclosed, as the DAO did not justify their exemption, and the DAO had already provided similar records to public entities, including to NYU's Peter Zimroth Center.

- determined that the DAO engaged in bad faith conduct and abuse of authority, which also warranted the release of records in redacted form.

- imposed severe sanctions on the DAO, including financial penalties and mandatory training on ethical and professional responsibilities. The DAO was ordered to pay fines to Beth and Sax and a separate fine to the Court of Common Pleas.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

- ordered an audit of DAO files related to cases mentioned in the NYU Zimroth Report, to determine if similar misconduct occurred in those matters.

- directed the DAO to implement standard operating procedures to improve file management and prevent future misconduct.

185.     Ultimately, Judge Coyle emphasized that the actions of the District Attorney's Office reflected systemic ethical lapses and abuses of power requiring immediate correction.

186.     The next day, the *Philadelphia Inquirer*, the same publication that had previously named Beth in an article headlined *"Ex-Prosecutors Committed Egregious Misconduct in 2007 Murder Case,"* published a new article that included Judge Coyle's finding that the accusations against Beth "*had no good faith basis*" and were "*maliciously intended*."

187.     Despite the public exposure of the falsity of the Cummings Motion, NYU still refuses to remove or amend the Zimroth Report from publication.

188.     Upon information and belief, it is highly likely that Defendant Cummings personally removed and/or destroyed critical case documents, including Beth's memoranda and handwritten notes – records that would have disproven the false allegations later repeated in the Zimroth Report.

189.     Indeed, even Judge Coyle, when addressing her final findings of facts, unequivocally stated that:

> "*I don't believe for one millisecond that the documents at issue weren't intentionally misplaced. I believe they were intentionally misplaced. I believe at this point in time there are certain documents that are -- that have been destroyed, omitted, moved, misplaced, what have you.*"

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

190.     Even if she was not directly responsible for their destruction, Cummings had ample notice and access to information prior to publication establishing that the allegations were false or, at minimum, seriously disputed.

191.     As early as 2018, immediately following the filing of the Cummings Motion, experienced members of the Homicide Unit raised urgent concerns, describing the motion as riddled with "*serious mistakes and misstatements.*"

192.     Cummings was further aware that neither she nor anyone in the District Attorney's Office had contacted the victim's family to verify core claims of the motion.

193.     She also knew that the assertions of prosecutorial misconduct had never been tested or affirmed in any judicial proceeding and were directly rebutted by public statements from Richard Sax, the trial prosecutor who obtained the conviction.

194.     Moreover, before the time the Zimroff Report was published, Cummings was fully aware that files were missing and that a formal Right-to-Know Law request had been filed on Beth's behalf seeking the very documents Cummings had either concealed or failed to preserve.

195.     Cummings' decision to nonetheless endorse and repeat the defamatory claims about Beth reflects actual malice and a reckless disregard for and or purposeful avoidance of the truth.

***The Zimroth Report Is Published***

196.     In April 2024, while Beth's Right-to-Know appeal was still pending in the Philadelphia court system, NYU Law, through the Zimroth Center, published the 180-page report titled *Prosecutorial Misconduct in the Philadelphia District Attorney's Office.* The report accused over 40 former prosecutors—including Beth—of prosecutorial misconduct. (The "*Zimroth Report.*")

34

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

197.    The Zimroth Report acknowledged and thanked "Research Scholar Patricia Cummings" for her *"assistance with research and drafting the report."*

198.    The Zimroth Report characterized the Philadelphia District Attorney's Office before Larry Krasner's tenure as a place where *"prosecutors viewed trial as 'a game to win,'* and *"they adopted a distorted view of their constitutional and ethical obligations because of their collective focus on pursuing and defending convictions at all costs"*

199.    Under the heading *Case Research: Scope and Methodology*, the Zimroth Report states it would *"whenever possible identify the trial and post-conviction prosecutors who worked on these cases. .....their names have been bolded throughout the Report."*

200.    According to the Zimroth Report and Larry Krasner's office, the reasoning behind this approach was straightforward: *"First, prosecutors are rarely identified in judicial opinions or legal filings, which makes it difficult for the public to assess whether the Office is upholding its ethical and constitutional obligations. Second, the failure to identify prosecutors involved in misconduct contributes to the public perception that prosecutors are not held accountable for their actions, and this in turn erodes community trust in the Office's work. Third, identifying the prosecutors who are failing to uphold their constitutional and ethical obligations will help the Office determine what policy solutions are necessary to improve its work, including whether to audit or scrutinize cases handled by these prosecutors."*

201.    The name "Beth McCaffery" appears in bold print on page 73 of the Zimroth Report.

202.    Under the heading *Dontia Patterson (2018)*—the year of his alleged exoneration— the Zimroth Report states in part: *"While awaiting a decision as to whether he would be tried for a third time, the CIU and the Homicide Unit agreed to investigate his claim of actual innocence.*

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

*The investigation focused on whether the Office should re-file charges against him, and during the investigation, **they discovered that homicide prosecutors did not disclose favorable impeachment information relating to a key prosecution witness**. Based on these findings, the Office dismissed the charges against Patterson."*

203.    The Zimroth Report goes on to extensively quote the false claims made in the Cummings Motion:

> *\*"Based on the CIU's findings, ADA Anthony Voci, then-Chief of Homicide, filed a motion to dismiss the charges against Patterson. **In the motion, ADA Voci noted that two different prosecutors failed to find and disclose this favorable information**, even though homicide prosecutors were 'trained to review the police homicide file and ask questions' about the investigation.  The motion also described Patterson's two trials as **'egregious example[s] of police and prosecutorial misconduct,'** and it further noted that some of the information should have caught prosecutors' attention because it was obviously favorable to the defense. For instance, the Informant Memo and related witness interviews did not mention Patterson as a suspect, and police created two different photo arrays that did not contain Patterson's photograph, which ostensibly should have raised questions for the prosecution.*
>
> *Separately, the motion criticized the prosecution's case as 'illogical,' given that Patterson returned to the crime scene, where witnesses saw him distraught and crying on the street immediately after the murder. **It also raised the possibility that, without suppressing the favorable information, 'the prosecution could not win' the case against Patterson, and it noted that favorable information tends to be suppressed in 'weak cases.'***
>
> *Finally, **it criticized the prosecution for being unduly influenced by the 'pressure to win' 'serious cases,' and observed that '[s]ome [prosecutors] feel the end justifies the means.'"\*[1]***

204.    The footnote to the Dontia Patterson section linked to a full copy of the Cummings Motion, including all the false and defamatory accusations against Beth.

205.    On April 16, 2024, the Zimroth Center held its annual conference, titled **"Prosecutorial Misconduct in the Philadelphia District Attorney's Office."**

---

[1]www.law.nyu.edu/sites/default/files/Prosecutorial%20Misconduct%20in%20the%20Philadelphia%20District%20Attorney%E2%80%99s%20Office_508_0.pdf

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

206.    The conference announcement included: *"This year's conference focuses on the Zimroth Center's report on prosecutorial misconduct in the Philadelphia District Attorney's Office, which results from a research partnership with the Office. Philadelphia District Attorney Larry Krasner will give the keynote address, speaking about the report, its findings, and the importance of transparency and rebuilding the community's trust in the work of the Office."*[2]

207.    Among the featured panelist was "*Patricia Cummings, Zimroth Center research scholar and former CIU Supervisor at the Philadelphia, DA*."

208.    The panel discussion promised a review of "*the report's findings regarding prosecutorial misconduct...*"

209.    Attendees at the panel discussion were offered New York State Continuing Legal Education credits.

210.    The event was advertised online and drew a capacity crowd of over 300 people.

211.    Despite the *Inquirer* and Judge Coyle's resounding vindication, the Zimroth Report is also known to have been distributed nationally and internationally and remains easily available on-line to this day.

212.    Despite the obvious reasons to doubt the allegations in the Cummings Motion, at no time did Cummings or anyone else at NYU or NYU Law School:

        a.    Ever attempt to interview Beth or Sax to learn of their version of events;

        b.    Ever attempt to interview Homicide Chief Voci, who himself signed and submitted to the Court the Cummings Motion;

        c.    Ever attempt to interview the surviving family of the victim in the Patterson murder case to understand their version of events;

---

[2] https://docket.law.nyu.edu/centers/zimroth-center-annual-conference-prosecutorial-misconduct-in-the-philadelphia-district-attorneys-office/56336/

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

    d.   Ever conduct any independent investigation of the Patterson murder and subsequent trials;

    e.   Ever take any steps to conduct a background check or ethical analysis of Cummings.

    f.   Ever conduct any independent assessment of the claims against Beth and more generally the many publicly available sources of information demonstrating that Cummings and Krasner's CIU were not reliable and were known to make unfounded allegations and purposely avoid the truth in order to protect pre-determined narratives designed specifically to attack and defame former prosecutors.

    g.   Ever take any other steps to verify the facts or conclusions it published stating Beth was guilty of prosecutorial misconduct; or

213.    Even after Judge Coyle's rulings – as outlined above – and even after the coverage of such rulings in various newspapers – including the Philadelphia Inquirer – and even after the the many public reports of corrupt and dishonest post-conviction investigation conducted by Cummings and Krasner's office NYU or NYU Law School:

    a)   Never issued an amendment to the Zimroth Report, or even seek to clarify its accusations as to Beth;

    b)   Never contacted Beth or Sax to interview them or further understand other views of the Patterson prosecutors;

    c)   Never withdrew the Zimroth Report from the internet or elsewhere; and

    d)   Never issued any form of apology or retraction to Beth or Sax.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

214.    Directly as a result of Defendants' actions and inactions as described above, Beth's reputation continues to be permanently tarnished by the Zimroth Report, particularly since the Zimroth Report represents the product of a "prestigious university" and "nationally acclaimed" law school.

215.    The Zimroth Report is easily accessible to residents throughout the Philadelphia region, including in Bucks County, where Beth grew up, attended school, and where her parents still reside.

216.    Now that Beth's children are older and attending school full-time, any ability of Beth returning to her professional passion of being a prosecutor has been utterly foreclosed directly as a result of the conduct of Defendants herein and the widespread ongoing defamation of Beth's character and reputation.

217.    Beth's earning capacity as a lawyer has been completely eliminated directly as a result of the malicious and outrageous conduct of the Defendants.

218.    The Zimroth Report defaming Beth is not only still available online it has been cited dozens of times in other publications around the world.

219.    The conduct – and failures to act – of NYU and NYU Law as detailed herein represent a shocking and outrageous deliberate and reckless disregard for the truth.

220.    Despite having obvious reasons to doubt the truth of Cummings' allegations about Beth, Defendants purposely avoided the truth by refusing to contact known and readily available sources of information which would have directly contradicted the false allegations.

221.    The aforementioned misconduct is particularly egregious given the nature of the NYU defendants, that is, as so-called "elite" institutions responsible for the propagation and reinforcement of the rule of law and the importance of due process.

39

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

## COUNT I
### Defamation
### (Plaintiff v. All Defendants)

222.    Plaintiff incorporates by reference all other paragraphs of the Complaint as though set forth fully herein.

223.    The Defamatory Statements described above, alone or in combination, have defamatory character and are *per se* defamatory for the following reasons, among others:

    a.  they ascribe to Plaintiff conduct, character, or a condition that adversely reflects upon, and have and will adversely reflect upon, her fitness and/or perceived fitness to be in any position of trust, including as an attorney.

    b.  they ascribe to Plaintiff acts and failures to act that are improper and unlawful and impugn her integrity and blacken her personal and professional reputation;

    c.  they expose Plaintiff to hatred, contempt, or ridicule, and injure her in her business and/or profession; and

    d.  they lower Plaintiff in the estimation of the recipients of the statements and deter third persons including potential employers, clients, and co-workers from associating with and/or engaging with her or employing her in any capacity.

224.    The accusation that Beth was guilty of "hiding evidence" is an explicit accusation of criminal conduct.

225.    Any and all persons who have read or heard, or will read or hear the above Defamatory Statements understood, and will understand, the same as having a defamatory meaning.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

226.    Any and all persons who have learned, or will learn, about the above Defamatory Statements from another, understood, and will understand, the same as having defamatory meaning.

227.    Any and all persons who have read or heard or will read or hear the above Defamatory Statements will understand that the same applies to Plaintiff.

228.    Any and all persons who have learned, or will learn, about the above Defamatory Statements from another understood, and will understand, that the same applies to Plaintiff.

229.    The above Defamatory Statements are false.

230.    Defendant Cummings was at all material times acting within the course and scope of her employment and/or agency with NYU and/or NYU Law in preparing the false and defamatory Zimroth Report.

231.    NYU and/or NYU Law are vicariously liable for the conduct of Cummings, who, at all times material hereto, was an employee and/or authorized agent of NYU and NYU Law, which describes Cummings as an NYU "Research Scholar."

232.    Defendants knew, when they published the above Defamatory Statements, that they were false or at a minimum Defendants had serious doubts that the statements as to Beth were false and purposely avoided any information that undermined their defamatory claims.

233.    By way of example only, despite having serious reasons to doubt the truth of the defamatory statements as to Beth, Defendants refused:

   a.   to interview or even contact Beth to determine whether she had disclosed exculpatory information to the defense in the *Patterson* case;

   b.   to interview or even contact Sax to determine what information he had about Beth or Sax disclosing exculpatory information to the defense in the *Patterson* case;

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

    c.   to interview or even contact other relevant witnesses in the *Patterson* case.

234.    Instead of seeking truth, Defendants tried to conceal the unreliability of their false statements by cherry-picking documents in order to give their false claims the veneer of credibility.

235.    Cummings knew that the statements about Beth in the Cummings Motion were false, yet she nonetheless included them in the Zimroth Report.

236.    Defendants through their agent Cummings delivered and published the Defamatory Statements with actual malice and/or a reckless disregard for the truth of the statements expressed therein.

237.    As a direct and proximate result of the delivery and publication of the Defamatory Statements, Plaintiff has suffered injury, including, but not limited to:

    a.   The Defamatory Statements ascribe to Plaintiff conduct, character, or a condition that adversely reflects upon, and have and will adversely reflect upon, her fitness and/or perceived fitness to be in any position of trust, including as an attorney;

    b.   the Defamatory Statements ascribe to Plaintiff acts and failures to act that are improper and unlawful and impugn her integrity and blacken her personal and professional reputation;

    c.   the Defamatory Statements expose Plaintiff to hatred, contempt, or ridicule, and injure her in her business and/or profession;

    d.   the Defamatory Statements lower Plaintiff in the estimation of the recipients of the statements and deter third persons including potential employers, clients, and co-workers from associating with and/or engaging with her or employing her in any capacity;

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

   e.   Devasting, sustained mental suffering; and

   f.   Elimination of any remaining earning capacity as a lawyer or judge.

**WHEREFORE**, Plaintiff requests judgment in her favor against Defendants, jointly and severally, in an amount in excess of $50,000 sufficient to fully compensate her, together with punitive damages, interest, costs of suit, and such further relief deemed equitable and just.

<u>**COUNT II**</u>
**False Light**
**(Plaintiff v. All Defendants)**

238.   Plaintiff incorporates by reference all other paragraphs of the complaint as though set forth fully herein.

239.   All the above statements were false and Defendants maliciously disregarded the falsity of such statements.

240.   Defendants made these statements with the intent of harming Plaintiff's reputation in the eyes of her peers and members of her community so that Beth would be deemed dishonest and regarded as a person of low moral character who would violate the constitution in order to convict an innocent man.

241.   This conduct is among the most reprehensible behavior that could be ascribed to an attorney and is borderline criminal.

242.   As a direct and proximate cause of said false statements, Beth's reputation has been damaged and her earning capacity has been greatly diminished.

243.   The statements were made with the intent that Beth's peers and community would receive it in particular.

244.   Defendants intentionally cast Beth in a false light by falsely stating that she committed egregious prosecutorial misconduct and knowingly and/or recklessly disregarded the constitutional rights of a criminal defendant.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

245.    Defendants' false statements described above casting Beth in a false light would be highly offensive to a reasonable person.

246.    The false statements were published to a wide public audience, including on NYU's website, and promotions for the NYU conference in April 2024.

247.    As a direct and proximate result of Defendants casting Beth in a false light, Beth has suffered severe and permanent damage as set forth above.

**WHEREFORE**, Plaintiff requests judgment in her favor against Defendants, jointly and severally, in an amount in excess of $50,000 sufficient to fully compensate her, together with punitive damages, interest, costs of suit, and such further relief deemed equitable and just.

### COUNT III
### Intentional Infliction of Emotional Distress
### (Plaintiff v. All Defendants)

248.    Plaintiff incorporates by reference all other paragraphs of the complaint as though set forth fully herein.

249.    The conduct of the Defendants – knowingly disseminating lies about Beth, falsely accusing her of unethical and criminal conduct with the intent of convicting an innocent man -- was extreme and outrageous.

250.    Defendants intended to cause Beth emotional distress or acted recklessly to the likelihood that their actions would cause emotional distress.

251.    As a direct and proximate result of Defendants' conduct, Beth suffered severe and permanent emotional distress, as well as physical harm, including suffering from insomnia, headaches, nightmares, nervousness and anxiety.

**WHEREFORE**, Plaintiff requests judgment in her favor against Defendants, jointly and severally, in an amount in excess of $50,000 sufficient to fully compensate her, together with punitive damages, interest, costs of suit, and such further relief deemed equitable and just.

**COUNT IV**
**Civil Conspiracy**
**(Plaintiff v. All Defendants)**

252.    Plaintiff incorporates by reference all other paragraphs of the complaint as though set forth fully herein.

253.    In the event NYU and/or NYU Law disclaim vicarious liability for Cummings as their agent or employee, all Defendants are nevertheless liable as civil conspirators.

254.    All Defendants had a common purpose of unlawfully authoring, publishing, promoting, and distributing false and defamatory statements of and concerning Plaintiff with actual malice.

255.    As set forth fully above, all Defendants knew or should have known that the statements about Plaintiff and the characteristics attributed to Plaintiff were false, and took overt acts in furtherance of their common goals and purposes.

256.    However, in an effort to author, publish, promote, and distribute such false defamatory statements, Defendants ignored and purposely avoided the truth and/or purposely made false statements about Plaintiff with malice and without legal justification.

257.    Defendant NYU Law had the express purposes of outing prosecutors to accuse them of misconduct.

258.    NYU and NYU Law allowed Cummings to act with impunity despite clear public evidence that she was unreliable, unethical and lacking in credibility.

259.    All Defendants each benefitted from the publication of the false defamatory statements.

45

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

260.    As a direct and proximate result of Defendants' unlawful acts and conspiracy to defame and cast Plaintiff in a false light, she has suffered substantial harm and damage to her reputation.

261.    As a further direct and proximate cause of Defendants' actions, Plaintiff has suffered and will continue to suffer severe emotional and psychological harm, as well as loss of standing within her chosen profession.

262.    Defendants' conduct as described herein was clearly outrageous, shocking, intentional, and done with actual malice, justifying punitive damages.

**WHEREFORE**, Plaintiff requests judgment in her favor against Defendants, jointly and severally, in an amount in excess of $50,000 sufficient to fully compensate her, together with punitive damages, interest, costs of suit, and such further relief deemed equitable and just.

**BOCHETTO & LENTZ, P.C.**

Dated: May 8, 2025          By:      */s/ George Bochetto*
                                     GEORGE BOCHETTO, ESQUIRE
                                     DAVID P. HEIM, ESQUIRE
                                     BRYAN R. LENTZ, ESQUIRE
                                     KEAN C. MAYNARD, ESQUIRE
                                     *Attorneys for Plaintiff*

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

## <u>VERIFICATION</u>

I,  Beth Ann McCaffery, verify that the statements made in the foregoing Complaint, to the best of my knowledge, are true and correct.  I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities.

Dated: _5/8/2025_

*Beth McCaffery*
ID mzDtbocAJlNcESdrT2psk2Q3

_____
BETH ANN McCAFFERY

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

## CERTIFICATE OF SERVICE

I, *George Bochetto, Esquire*, hereby certify that a true and correct copy of the forgoing was filed electronically through this Court's ECF System and is available for viewing and downloading from this Court's ECF System. I further certify that an electronic copy of the foregoing was served upon all parties of record through this Court's ECF System.

**BOCHETTO & LENTZ, P.C.**

Dated:  May 8, 2025              By:     */s/ George Bochetto*
                                        GEORGE BOCHETTO, ESQUIRE

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

# Exhibit 1

FILED

2010 MAY 15 PM 2:43

OFFICE OF JUDICIAL RECORDS
CRIMI... DIVISION
FIRST JU... DISTRICT
OF PE... VANIA

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CRIMINAL SECTION TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    CP-51-CR-0012287-2007
                                :
                v.              :
                                :
DONTIA PATTERSON                :
                                :
                                :

## ORDER

Upon consideration of the Commonwealth's Motion to Enter Nolle Prosequi, it is by the

Court this        day of              , 2018, ORDERED and DECREED that the said Motion to

Enter Nolle Prosequi is hereby GRANTED.

BY THE COURT:

_____

Hon. Streeter Lewis

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

OFFICE OF THE DISTRICT ATTORNEY
CITY AND COUNTY OF PHILADELPHIA
By: Anthony Voci
Assistant District Attorney
Supervisor, Homicide Unit
Three South Penn Square
Philadelphia, PA 19107
215-686-8040

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CRIMINAL SECTION TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0012287-2007 |
| | : | |
| v. | : | |
| | : | |
| DONTIA PATTERSON | : | |
| | : | |

## MOTION TO ENTER NOLLE PROSEQUI

The Commonwealth through its attorney, LAWRENCE S. KRASNER, District Attorney, and his assistant, ANTHONY VOCI, requests the Court order nolle prosequi of all charges in the above-captioned matter and in support thereof states:

The sworn duty of a prosecutor is to seek justice, to speak truth, and to exercise power with restraint. This Philadelphia District Attorney's Office will abide by that duty. That duty is not always easy, but it is what the prosecutor's oath, the law and the public require.

After almost 11 years in custody, Dontia Patterson comes before the Court facing the possibility of a new (and third) trial for a crime he did not commit, in all likelihood. The Commonwealth will not re-try a case against a man who is probably innocent and whose case is so lacking in integrity.

1

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

The crime was the killing of Antwine Jackson, Patterson's friend. The identities of the likely perpetrators of Jackson's murder are known, however, the apparent shooter was murdered just a few months after Jackson's murder (and only a few blocks away from the location of Jackson's killing). The apparent shooter's identity (and the identities of his confederates) have been known to law enforcement since shortly after Jackson's murder. Those identities are not included in this motion and are redacted from all exculpatory documentary exhibits attached to this motion *in order to avoid potential future violence related to this matter* (attached as Exhibit A). However, those names and the un-redacted exhibits *are included in a separate and identical motion filed under seal and of record with the Court*. A more detailed summary of the facts along with a summary of the evidence that was withheld from the defense is included below in Part III of this motion.

Patterson's conviction is an egregious example of police and prosecutorial misconduct in hiding evidence helpful to the defense that the U.S. Constitution and the Pennsylvania Constitution require to be revealed to the defense before trial. This concealment occurred over two trials – before a jury reached an impasse and was declared "hung" in Patterson's first trial and again before a jury convicted Patterson in the second trial. The constitutional requirements police and prosecution ignored in Patterson's case are crucial. They protect the innocent and re-direct the entire criminal justice system to investigate further to pursue the guilty, all of which protects the public. Prosecution that deliberately violates these constitutional rights is not law enforcement in any sense – it is a violation of the law.

Although the prosecutor in the first trial was far less experienced than the prosecutor in the second trial, it is inconceivable that both trial prosecutors involved in the

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

case were unaware of the exculpatory documents contained in the police homicide file. Two different photo arrays containing a photograph of the apparent shooter who was not Patterson must have alerted the trial prosecutors to the fact that other exculpatory information was either never documented or was lost or destroyed after being documented. Homicide prosecutors are and were trained to review the police homicide file and ask questions. There were two trials and two periods of preparation. Yet, both trial prosecutors did not provide the exculpatory information they knew to the defense.

Violations of *Brady* often occur in weak cases. The case against Patterson was weak. Without concealment of exculpatory evidence, the prosecution could not win. And in all serious cases, prosecutors feel pressure to win. Some feel the end justifies the means.

The case against Patterson was illogical. Patterson was Jackson's friend. Patterson had no motive to kill Jackson, but others did. Jackson was embroiled in a drug turf war with a rival group. Patterson was not a member of that rival group.

The prosecution's theory regarding Patterson's actions was also illogical if he was the killer. Within minutes of the killing, Patterson was seen in the street near his friend, Jackson. Patterson was distraught. Killers do not usually remain or return to the scene of the crime. They do not usually cry out for their victims while possible witnesses and police approach. Even the two identification witnesses who observed the shooting from far away oddly claimed that Patterson must have left after the shooting, then changed his clothes before returning to the crime scene because the killer was wearing different clothing than at the time of the shooting.

Although Patterson was tried twice, neither jury heard the truth. Both the defense and the prosecution failed in their respective obligations. The prosecution and police did

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

not turn over strong evidence in their possession that identified the likely perpetrator and his confederates by name. The prosecution also presented new evidence during the second trial that was highly suspect – a supposed eyewitness whose personal animus towards Patterson was withheld from the defense. Although clearly handicapped by the prosecution's actions, the defense was ineffective. In two separate trials, the defense did not present a strong, credible witness who witnessed the killing and specifically told the police the killer was not Patterson.

## I. PROCEDURAL HISTORY

On February 16, 2018, Patterson's convictions for first degree murder and all related charges were vacated and a new trial was granted. The convictions were vacated when the Commonwealth agreed his PCRA petition should be granted based on ineffective assistance of counsel. In short, Patterson's trial counsel was found to be ineffective for several reasons, the most significant being trial counsel's failure to call Gregorio Mercado to testify during Patterson's second trial (the witness also was not called to testify during the first trial which resulted in a hung jury). Mercado was a store owner in the neighborhood where the crime occurred and he was an eyewitness to the events leading up to the crime and the crime itself. Mercado informed police on multiple occasions that he knew Patterson from the neighborhood (he had a negative encounter with Patterson as a store customer) and Patterson was not the person he saw shoot Jackson.

### A. Patterson's Two Trials

1. On August 13, 2008, a mistrial was declared because the jury was unable to reach a unanimous verdict.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

2. The Commonwealth elected to retry Patterson and on July 13, 2009, a jury convicted Patterson of first degree murder, Possession of Instrument of Crime and numerous violations of the Uniform Firearms Act, 18Pa. C.S. § 6101, et al. Patterson was sentenced to life without the possibility of parole.

3. Mercado was not called as a witness in either trial.

4. Although not called as a witness in the first trial, during the second trial, the Commonwealth called Eyvette Chandler, the off-duty police officer who heard the gunshots and went to the scene. She testified that Patterson was the person seen in an extremely poor quality videotape of the Mercado's store surveillance video taken immediately prior to the shooting. However, during the original investigation of the case, Chandler was asked to watch the same surveillance video and Chandler did not identify Patterson; instead she told police simply that a person in the video reminded her of Patterson.

## B. Case Currently Pending Before this Court

Since Patterson's convictions were vacated, the Commonwealth has extensively reviewed the file and investigated the case to determine whether Patterson should stand trial for a third time. The Commonwealth has concluded that Patterson's prior convictions for the instant offenses lack integrity for reasons beyond the ineffective assistance of counsel he previously received at trial, and therefore, seeks to nolle prosequi or withdraw the case.

## II. *Brady v. Maryland*

In *Brady v. Maryland*, 373 U. S. 83, 87 (1963), the United States Supreme Court held that due process requires the prosecution to turn over evidence favorable to the

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

accused and material to his guilt or punishment. That obligation was dishonored in this case; and as a consequence, significantly contributed to Patterson spending nearly 11 years in prison before the truth came to light. Patterson's two previous trials, by government design, were fundamentally unfair. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995).

Subjecting Patterson to yet a third trial would be a grave injustice because this office, like every other prosecutorial agency, has an obligation to victims of crime, its own prosecutors and to the public to get it right – that is to prevent wrongful convictions and not condone government misconduct. Prosecutors, as servants of the law, are subject to constraints and responsibilities that do not apply to other lawyers; they must serve truth and justice first. *United States v. Lopez-Avila*, 678 F.3d 955 (9th Cir. 2012); *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993). Their job is not just to win, but to win fairly, staying within the rules. *Berger v. United States*, 295 U.S. 78, 88 (1935).

Due to the nature of *Brady* violations, it is highly unlikely wrongdoing will ever come to light in the first place, so when it does come to light we must acknowledge it and learn from it. Failure to do so creates a serious moral hazard for those prosecutors who are more interested in winning a conviction than serving justice. In the rare event that the withheld evidence does surface, the consequences usually leave the prosecution no worse than had it complied with *Brady* from the outset. *Connick v. Thompson*, 131 S. Ct. 1350, 1366 (2011). This case, however, is different.

In this case, since the withheld evidence has surfaced, justice requires finally disclosing all relevant facts regarding the murder of Jackson and how both the investigation and prosecution of that murder were mishandled.

### III. FACTS IN SUPPORT OF NOLLE PROSEQUI

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

## A. Evidence Disclosed to Trial Counsel for the Defense

1. Jackson was shot and killed on January 11, 2007. Homicide Detective George Fetters was assigned to lead the criminal investigation into the shooting.

2. Chandler, an off-duty police officer and neighbor of both Patterson and Jackson, was at home when she heard the gunshots. When she left her house to investigate, she saw Patterson on the sidewalk out in front of his house.

3. As Chandler initially described, Patterson (who was 17 years old) was at home near the crime scene when the crime occurred. When Patterson heard gunfire, he immediately went to the scene. Once at the scene, Patterson called for help and asked other witnesses what happened and if they knew who shot Jackson.

4. On the day of the crime, no physical evidence was collected linking Patterson to the crime and none was ever discovered during the subsequent homicide investigation.

5. Patterson gave a statement to the police hours after the crime informing them Jackson sold drugs in the area and that Jackson had recently been threatened by one of the witnesses at the scene.

6. Jackson and Patterson were friends and Patterson had no motive to kill Jackson.

7. Several named and identified suspects had a motive to kill Jackson as a result of an ongoing turf battle regarding the sale of drugs in the neighborhood where the crime occurred and numerous witnesses reported that at least one of the suspects threatened them to "keep quiet about the crime."

8. Before Patterson was arrested, Mercado told the police he not only witnessed the events leading up to the murder but he saw the shooter firing at Jackson and

7

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

he was positive the shooter was not Patterson because he had known Patterson for several years due to interactions he had with Patterson as a customer in Mercado's store.

9. Two eyewitnesses to the shooting identified Patterson as the shooter. Neither knew Patterson and both were located approximately 40 yards away from where the shooting occurred. Both immediately went to the scene to help and shortly thereafter saw who they thought was the shooter arrive back at the scene wearing different clothes saying, "who did this, who the fuck did this, this was a set up."

10. Patterson was arrested on April 25, 2007 and charged with the murder of his friend Jackson based solely on the two eyewitness statements.

## B. Evidence Withheld from the Defense & Post Conviction Investigation

1. A review of both the Commonwealth's file and discovery provided to counsel for Patterson prior to both trials has revealed the Commonwealth withheld exculpatory and impeaching evidence from the defense.

2. The withheld evidence is newly-discovered, material evidence.

3. The Commonwealth received a detailed "white paper" written the day after the murder, which contained information from a confidential source that Jackson's murder was the "result of an ongoing battle over the drug corner located at Granite and Summerdale Avenue." Two groups involved in the feud were identified. An unnamed witness also identified three people who were involved in the crime, specifically identifying the actual shooter. Details included the

8

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

location of where the shooter lived, how the shooting was set up and how it occurred, as well as the location of where the shooter fled immediately after the crime.

4. Detective Fetters' homicide file also contains notes regarding unrecorded witness interviews that occurred on February 5, 2007 and February 7, 2007, that were never formalized into written statements. Information obtained from the interviews corroborates and/or supplements the "white paper." More specifically, at least two witnesses identified an undisclosed alternate suspect as the shooter, and they provided information as to where this suspect was living at the time.

5. The undisclosed alternate suspect was a known drug dealer and member of one of the groups identified in the "white paper" and was a known associate of at least one of the individuals specifically named as a suspect involved in the crime.

6. On February 7, 2007, Detective Fetters created two photo arrays containing a photograph of the undisclosed alternate suspect. There is no documentation in the homicide file evidencing how and when these photo arrays were used. Both photo arrays were not disclosed to defense counsel.

7. On February 13, 2007, a lieutenant with the homicide unit also wrote a memorandum that corroborates the "white paper" and the unrecorded witness statements. This memorandum reported that unidentified males from the Oxford Village Apartment Complex (the same neighborhood identified by the

9

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

two witnesses referenced in paragraph 4, above) may have taken steps and been responsible for "the demise" of Jackson.

8. The apparent shooter, who was specifically named during the unrecorded witness statements was murdered on June 6, 2007, approximately five months after Jackson was murdered and just five blocks from where the crime occurred.

9. In addition to discovering this withheld exculpatory evidence, the homicide unit in the DA's Office (DAO) recently interviewed Mercado and determined his account of the crime is credible. Patterson was not the shooter and he was not involved in the crime.

10. The DAO also recently interviewed another witnesses interviewed by Detective Fetters. Although no witness statement was ever formalized by Detective Fetters, the witness provided him with material evidence concerning the crime that was corroborated by Chandler and other witnesses. The DAO has determined this witness is credible.

11. The homicide unit of the DAO repeatedly tried to interview Chandler, the off duty officer who testified during the second trial, but Chandler has failed and/or refused to cooperate.

12. While trying to find an explanation and/or motive for the significant incriminating evolution in Chandler's many statements to the police regarding the crime, the DAO discovered Chandler may have harbored a deep animosity towards Patterson due to his innocent connection to a March 2006 event that led to the arson murder of Chandler's son and the criminal prosecution of her juvenile granddaughter for that crime.

10

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

13. Although Chandler's granddaughter was being prosecuted by the DAO at the same time Patterson's case was being prosecuted, no impeachment disclosure of possible motive or bias was made to the defense.

## IV. CONCLUSION

It is the Commonwealth's belief that if Mercado testified and the newly discovered evidence had not been withheld, "it is more likely than not that no reasonable juror would have found [Patterson] guilty beyond a reasonable doubt." The Commonwealth cannot re-try Patterson on a case so completely lacking in integrity without violating the prosecution's duty to seek justice, to speak truth, and to exercise power with restraint. Jackson's family was not well served by the false "closure" this unjust prosecution provided. The public was not well served by the failure to apprehend the likely main perpetrator in this matter, who was killed himself a few months later.

Thus, pursuant to Pennsylvania Rule of Criminal Procedure 585(A), "[u]pon motion for the attorney for the Commonwealth, the court may...order a nolle prosequi of one or more charges...."

WHEREFORE, for the foregoing reasons, the Commonwealth respectfully requests the Court order nolle prosequi of all charges against the defendant in the above-captioned matter.

Respectfully submitted,
LAWRENCE S. KRASNER
DISTRICT ATTORNEY

ANTHONY VOCI
ASSISTANT DISTRICT ATTORNEY

11

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

## VERIFICATION

The undersigned hereby verifies that the facts set forth in the foregoing motion are true and correct to the best of my knowledge, information and belief. This verification is made subject to penalties for unsworn falsification to the authorities under 18 Pa. C.S. Section 4904.

ANTHONY VOCI
Assistant District Attorney

Date: 5/15/18

12

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

## CERTIFICATION OF SERVICE

I hereby certify that today, *May 5, 2018* I sent, via first class mail, fax or hand delivery, a copy of the foregoing MOTION to the following parties:

Nilam A. Sanghvi
Attorney No. 209989
PENNSYLVANIA INNOCENCE PROJECT
at Temple University Beasley School of Law
1515 Market Street, Suite 300
Philadelphia, PA 19102
215-204-3146

ANTHONY VOCI
Assistant District Attorney

Date: 5/15/18

13

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

# EXHIBIT A

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

## WHITE PAPER

D.C. # 07-02-002562
HOMICIDE# M-07-17

Police Officers Curtis Younger#5211 and Kenyatta Lee#9357 received information from a confidential source regarding the shooting/homicide, which occurred at 898 Granite St., on January 11, 2007.

The shooting of Antwine Jackson was the result of an on-going battle over the drug corner located at Granite and Summerdale Ave. Two groups are involved in the feud: #1. The Village or Vill and #2. The Dale or the Ave.

A Black male known as ▮▮ set up the descendant, Antwine Jackson and another male known as ▮▮▮▮, to be shot. The offender is allegedly a Black male known as ▮▮▮ *(Shooter)* who lives in the Oxford Village Apartments. When ▮▮ shot Antwine, ▮▮▮ fled the scene. ▮▮ then shot Antwine two additional times in the head while he was lying on the ground. A Black male known as Donte was present during the shooting and was detained by arriving uniformed police officers. When ▮▮ fled, he went to the rear of ▮▮ house, which is located at either ▮ or ▮ Granite St. ▮▮ stayed at that location for several hours.

▮▮ allegedly lives at ▮ Granite St., but frequents the Germantown area where he has family ties.

**CRIMINAL INTELLIGENCE UNIT**
**GANG CONTROL UNIT**
**3 PLATOON**
**JANUARY 12, 2007**

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

# MEMORANDUM

POLICE
CITY OF PHILADELPHIA
DATE: 2/13/07

TO : Commanding Officer ,Homicide Division

FROM : Lt. Mark Deegan # 218, Homicide Division,SIU

SUBJECT : <u>M07-17</u>

1. The Homicide carried under control # M07-17 is assigned to SIU, Det G. Fetters . There was an ongoing investigation, into this murder wherein information based on this investigation was entered onto a S&R report that was being carried in the SIU computer.

2. There are Activity Sheets in the folder showing the actions taken on the dates subsequent to the date of the incident, including days when overtime was earned, however they were maintained in the case folder . see attached for same.

3. The investigation leads us to an ongoing problem between the victim, Antwine Jackson PPN # 985131(4 priors 2 for narcotics) and other males from the area of Summerdale Ave. who were involved in a turf dispute over who is going to sell drugs where. Apparently Jackson was involved in a physical altercation with (2) brothers from Bridge Street, 1-2 weeks prior to the murder. Information is being developed that show males from the Oxford Village Apartment Complex may have taken steps in the demise of Antwine Jackson on 1-11-07 @ 898 Granite Street.

Lt. Mark Deegan # 218
Homicide Unit     218
SIU

82-S-1 (Rev  3/59)   RESPONSE  TO  THIS  MEMORANDUM  MAY BE MADE HEREON  IN  LONGHAND

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

| INVESTIGATION INTERVIEW RECORD | CITY OF PHILADELPHIA |
|---|---|
| *CONTINUATION SHEET* | POLICE DEPARTMENT |

Q. Describe ▮ to me, and what he was wearing?
A. He's a B/M dark skinned, about 19-20 yrs old, a little taller than me, he was wearing a black fitted baseball cap, and ear piece phone jaunt, that they wear today, he had on a long sleeved black shirt, black denims, then new ones called True Religion.

Q. Where did the black male that was wearing the one piece dickie outfit go, if you know?
A. I don't know where he went I couldn't tell ya.

Q. After you came back outside to the corner of Granite & Summerdale Sts who was outside there where Antwine was laying at?
A. I saw a friend of Antwine's Dontaie out there, he was yelling who did this! stuff like that, I saw the correction officer that lives on Granite Street across the street from my crib, I saw the boy with the dreads from the barber shop at Bridge & Summerdale. I saw the cop lady that lives on the 900 block of Granite she was coming up, and she was calling the cops I think too. I saw a bunch of people come walking up and stuff, after that.

Q. Did you wait at the corner until the Police Arrived at this scene?
A. Ya till the cops pulled up, I saw (2) cops pull up, that's when I walked off.

Q. Where did you go after this?
A. I left, I got a cab, and went to see my baby's momma.

Q. Did you tell anyone what you saw happen to Antwine?
A. I told people that I was standing there but I didn't tell anyone like I'm telling you today. I just got outta there.

Q. Would you recognize the boy in the one piece dickie outfit if you saw him again?
A. If I seen him, I probably would.

Q. Was there anything unusual about this guy, like the way he talked, or walked anything like that?
A. No not really that I saw.

Q. Are you aware of any problems that Antwine was having with anyone that would result in this murder?
A. I know that he had a problem with these boys from Bridge Street that he had a fight with like (2) weeks before this happened, he was being told that he shouldn't be in front of their house , I guess he was selling out there.

Q. What was Antwine selling out there?
A. He was probably selling some weed, that's all that I know of. He didn't sell nothing else that I know about.

Q. Who was he selling weed for, if you know?     A. He was only selling for himself, no one else.

Q. Sir I will ask P/O Cruz to read this (3) page interview over with you, if there is anything that is not the truth as you have stated here, tell one of us and we will fix it for you OK?
A. Yes.

1-15-07
6:55 PM

CAME IN AND SAID He DID This

He sTays with his Babies Mom          ☆

Lovatt Ter
OXFord Village

Girl Foces:                      B/E 18 H
Her Mother's SisTer

= 21 yrs Tall - Dark has
A SCAR on SIDE of Face, on cheeK 2-3 Long
Summers/5 During summer 06
was Driving Dark Blue Expedition
Hange up at Oxford Village Projects

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



1-12

[redacted] 6007

Saw [redacted] Tony at Oxford
Village Apts.

Saw a weight [redacted] Driving
His Gray Bonnville saw 3-4 Ppl
Get out (1) of which was [redacted]
Blk Hat  Blk Hoodie

Then [redacted] went To A Blk car
That was Badius center Apt Area
He went Into/ Inside Ppls, Fixing The
car

Then [redacted] & [redacted] Drove off
Light Skins Facial Hair Fx/Tro Apts. 5'9"

— A Family Member Cousin [redacted]
Who lives in Oxford Village Heard
[redacted] Talking About How He Just hit The
Nigger

Neighbor [redacted] Possibly saw This

12-18

Case# 2025-01954-13 - JUDGE 41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the ... information and document ... (except that non-confidential information and documents ...



INCIDENT

Fem [redacted]

Another Neighbor states that He/she
saw [redacted] short Airline nurse to be
Coulter

Francis Ruark Dove                    ☆

[redacted]

[redacted]          14 YRS

Home [Bus] [redacted] & [redacted] [Sprung to Kill]
Airline Thru (2) Girls were looking out Those Twins
They Live on Bridge Street pass The
Chinese Inn [redacted] (Black)

INCIDENT 952

CONTACTED
    FRED SHONE FROM Phila
School Police He Work WITH INTEL
AT ARSENAL    5-11-16
ALONG W SGT DeGiuseppe

ASKED HIM TO IDY WHO FILM WITH THE STUDENT
WAS, THAT TWAS BRAGGING ABOUT HIS BOY THAT
SHOT AND KILLED ANTWINE ON SUNNCANE

                                    2-5
    CONTACTED [              ]    WHO STATED
A NEIGHBOR  [              ]    HAS INFORMATION
BOUT ANTOINE'S MURDER  SPOKE TO [        ] HE
AGREED TO COME TO HOMICIDE UNIT
    PICKED UP AT [    ] GRANITE REX DRIVEWAY

    STATES HE HEARD [         ] FRIEND OF [     ]
DID THE SHOOTING HE DESCRIBED

    KNOWS/FROM AREA.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed with Bucks County Prothonotary

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.



Case# 2025-01954-13 - JUDGE 41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.



P/o Valerie Felici        2nd District
215 651 8957

working w/ P/o Sweeny    was Assigned Narcotics Unit

who STATES THAT a male he knows

is afraid For His Life [____]

That This male [____] Nharcotic
               322

And says [__] is after [_____] For

Drug Money.

[_____] 20Y/o [_____] states he's

Hearing That [__] Did/or was involved

Case # 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

# Philadelphia Police Department



170772225  220195779  170771996  161215712

34055408  30482191  34269840  31939488

120854392  161216162  131184018  181816152

26150621  29564191  30095251  32582079

Printed Philadelphia PD:  2/7/2007  9:27 P.M.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

# Philadelphia Police Department





170772606

31329434

120707268

170773396

26077311

120954644

34284130

131184206

25339991

181815585

29836213

161214964

32626840

151367727

29906581

Printed Philadelphia PD:   2/7/2007  9:39  P.M.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

# Case #2007-15-048498

**Face Sheet Printed:** 5/8/2018 8:47:53 AM
**Case Open Date:** 5/9/2007 12:28:33 AM
**Case Close Date:** 5/10/2007
**Case Subject:** Narcotics Offense at 1300 PRATT ST on 05/08/2007
**Agency:** PPD - Police



**Status:**
# CLOSED

---

**Case Classification Code**     1827 - NARCOTIC DRUG POSSESSION CRACK COCAINE

---

## Case Entities

| Case Report Number | Entity Type | Entity Name | Offense |
|---|---|---|---|
| 2007-15-048498.1 | Arrestee | ▬▬▬▬ | NARCOTIC DRUG POSSESSION CRACK COCAINE |
| 2007-15-048498.1 | One of Other Type | PALMA JR, DAVID J | |
| 2007-15-048498.1 | Victim | Society/Public | NARCOTIC DRUG POSSESSION CRACK COCAINE |
| 2007-15-048498.1 | Witness | ▬▬▬▬ | |

---

## Case Property

| Property Description | Property Status | Case Report Number | Receipt # | Stolen Value | Recovered Value |
|---|---|---|---|---|---|
| CRACK COCAINE | Seized (to impound drugs / gambling devices) | 2007-15-048498.1 | 2715930 | $0 | $0 |

**Total Approved Stolen Property:** $0

**Total Approved Recovered Property:** $0

---

## Case Documents

| Call for | Date | Location | Disposition | Reported Offense | Officers |
|---|---|---|---|---|---|

---

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

**Service Number**

| 35570686 | 5/8/2007 11:43:00 PM | 1300 PRATT ST PHILADELPHIA | Active | 1807 - NARCOTIC DRUGS SELLER CRACK COCAINE | 247438 - MCDONALD, MARTIN 247392 - PALMA JR, DAVID |
|---|---|---|---|---|---|

| Case Report Number | Unit Control Number | Submitted By |
|---|---|---|
| 2007-15-048498.1 | 2007-6400-006263-0 | 158232 - RALPH CAROLE A, |

| Interview Number | Interview Date/Time | Location | Entity Interviewed | Interviewed By |
|---|---|---|---|---|

**Attached Interview Records**

| Interview Number | Interview Date/Time | Location | Entity Interviewed | Interviewed By |
|---|---|---|---|---|

| Attachment Name | Date |
|---|---|

**Case Assignments**

| Unit | Date Assigned | Date Unassigned |
|---|---|---|
| 6400 - Northeast Detective Division | 5/9/2007 12:28:33 AM | N/A |

| Officer | Date Assigned | Date Unassigned |
|---|---|---|
| 158232 - RALPH CAROLE A, | 5/9/2007 12:44:39 AM | N/A |

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

## *Philadelphia Police Department Arrest Report*

Page 1 of 1 *PARS*

Defendant:    first name: ▮    middle initial: ▮   Sex: ▮   Race ▮   DOB: ▮

Birth Place: ▮

Address: ▮     Phone #: ▮

Year: ▮    DC# ▮    Sector ▮   Ctrl# ▮

PID: ▮   SID: ▮   OTN ▮    Even ▮   CBN: ▮

Crime Class: ▮   Desc: ▮    Authority: ▮

DFJ: ▮    FBI / FID: ▮

Arrest Name: ▮

### ARREST INFORMATION:

District ▮   Inside/Outside ▮    Arrest Type ▮

### OCCURRENCE:

Date / Time: 06/06/2007 10:39PM    Date reported: 06/06/2007 10:39PM

1021 VAN KIRK ST   Philadelphia PA 19199-

### CHARGES:

| Code | OC | Description | Grade | Counts |
|------|----|-------------|-------|--------|
| CC2502 | | MURDER | H | 001 |
| CC6106 | | VUFA-NO LICENSE | F3 | 001 |
| CC0907 | | PIC | M1 | 001 |
| CC6108 | | VUFA-ON STREETS | M1 | 001 |

### COMPLAINANTS AND WITNESSES:

*Complainant(s)*

Age: 19 ▮

### ARREST REPORT BY:

Badge   Description     Unit Id   Platoon   Squad   Group Id

### ARREST REPORT APPROVED BY:

Supervisor- payroll no:     Approval Code:

### POLICE PERSONNEL:

| Employee Name | Payroll Number | Badge | Dist/Unit | Platoon/Group | Vacation Dates | Vacation Description | Needed At Hearing Police/Sup | Arrest OFC. |
|---|---|---|---|---|---|---|---|---|
| ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |

### ADDITIONAL INFORMATION:

Hits:    Statement?:    Lab User Fees Requested?    ADA Concerns?:

### EMPLOYER INFORMATION:

Occupation: ▮    Employer: ▮

### DESCRIPTIVE DATA:

Complexion       Eye Characteristics
Eye Color        Facial Hair
Glasses (Y=Yes)    Hair Color
Hair Length      Hair Style
Tooth

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

was asked to discuss the incidents related to her father's death

She stated he was mad at her because she had traded her cell phone with a teen-aged neighbor.

stated she was mad when she got to her father's house. She stated she was crying and had slammed the door. She stated her father told her she was on "punishment" because of her trading her cell phone. This meant that he would not permit her to make calls with her phone for a while. She stated she was mad because she was on punishment and because her father had taken her phone.

Page 5

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

| INVESTIGATION INTERVIEW RECORD | PHILADELPHIA POLICE DEPARTMENT HOMICIDE DIVISION | CASE NO: INTERVIEWER: |
|---|---|---|

| NAME Police Officer Chandler #1620 | AGE | RACE | DOB |
|---|---|---|---|

| ADDRESS | APARTMENT NO. | PHONE NO. |
|---|---|---|

| NAME OF EMPLOYMENT/SCHOOL | | SOC. SEC. NO. |
|---|---|---|

| ADDRESS OF EMPLOYMENT/SCHOOL | DEPARTMENT | PHONE NO. |
|---|---|---|

| DATES OF PLANNED VACATIONS |
|---|

| DATES OF PLANNED BUSINESS TRIPS |
|---|

| NAME OF CLOSE RELATIVE |
|---|

| ADDRESS | PHONE NO. |
|---|---|

| PLACE OF INTERVIEW | DATE 03-19-06 | TIME 9:13AM |
|---|---|---|

| BROUGHT IN BY | DATE | TIME |
|---|---|---|

WE ARE QUESTIONING YOU CONCERNING
The local / fire at the home _____ of your son _____ on 03-18-06 that resulted in his death.

| WARNINGS GIVEN BY | DATE | TIME |
|---|---|---|

| ANSWERS | (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|---|---|---|---|---|---|---|---|

Q. Who notified you of the fire?
A. My 13 year old granddaughter

Q. How would you describe the relationship between your granddaughter and your son?
A. No problems as far as I know. He picks her up to and from school. Nothing out of the ordinary. There was one incident where she had traded a cell phone with a boy that lived across the street. My son took her over to the boy and made her exchange the phones back.

*Eyretta L Chandler*
3/19/06   2:04 pm

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.



**Sent:** 08/17/2009

**Subject: Officer Eyvette Chandler**

I just wanted to put in writing what I know to be the facts about Officer Chandler's involvement in the murder case of Commonwealth v. Dontia Patterson and the ugly aftermath.

Officer Chandler was a crucial eyewitness in the case. In fact, the difference between a hung jury (which was the result the first time, tried by a different ADA and during which Officer Chandler did not testify) and the first degree murder conviction obtained last month, was probably the direct result of Chandler's testimony. From outside of her home, she actually saw the murder occur, described the shooter (with a description that matched the defendant) and identified the defendant from an extremely poor quality videotape obtained from inside the store at Summerdale and Granite. The murder occurred just outside the little corner grocery and immediately after the person identified as the defendant by Officer Chandler left.

So she was critical and testified and cooperated fully, despite the incredibly sketchy circumstance of continuing to live directly across the small street from the defendant,

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

# Exhibit 2

Case 2:25-cv-02420-JHS Document 1-5 Filed 05/13/25 Page 85 of 98

Case# 2025-01954-13 - JUDGE-41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents
E-Filed by: GEORGE BOCHETTO, ESQ.

**CRIME & JUSTICE**



# Philly DA's Office: Ex-prosecutors committed 'egregious' misconduct in 2007 murder case

### In an extraordinary court motion, the Philadelphia District Attorney's Office said police and prosecutors a decade ago deliberately withheld exculpatory evidence to tip the scales against a man accused of murder.



Dontia Patterson (center) with his daughter Samarah, now 11, and her mother, Shanell Allen.
Pennsylvania Innocence Project

by Chris Palmer
Published May 15, 2018, 6:55 p.m. ET

2/25/25, 6:38 PM
Case 2:25-cv-02429-JFM Document 1-5 Filed 05/13/25 Page 86 of 98
Philly DA's Office: Ex-prosecutors committed egregious misconduct in 2007 murder case

In an extraordinary step, the Philadelphia District Attorney's Office on Tuesday pointed an accusatory finger at onetime members of its own office, asserting in a court motion that police and prosecutors helped to convict a city man of murder a decade ago by "hiding" evidence that suggested he was innocent, possibly breaking the law in the process.

For the first time, prosecutors say they believe Dontia Patterson is innocent, something Patterson had maintained for 11 years behind bars. Calling Patterson's conviction "an egregious example of police and prosecutorial misconduct," the motion, signed by Anthony Voci, the office's chief of homicide, suggests that two former prosecutors may have acted in bad faith because they knew they couldn't otherwise win the case.

It also says that Patterson's case file contained information that pointed to a more likely shooter, a man murdered about two months after his arrest and just blocks from the shooting Patterson was accused of committing.

The document is likely to lead to the exoneration of Patterson, 29, and could resonate beyond his case as the most stinging rebuke yet of Philadelphia's criminal justice system by its current top prosecutor, Larry Krasner.

ADVERTISEMENT



Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents
E-Filed by: GEORGE BOCHETTO, ESQ.

2/25/25, 6:38 PM
Case 2:25-cv-02429-JFM  Document 1-5  Filed 05/13/25  Page 87 of 98
Philly DA's Office says prosecutors committed egregious misconduct in 2007 murder case

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents
E-Filed by: GEORGE BOCHETTO, ESQ.

One of the targets of the motion's allegations, former homicide prosecutor Richard Sax, in an interview Tuesday night slammed the decision to back Patterson's exoneration as "a horrific travesty of justice." Jurors had decided he was guilty beyond a reasonable doubt, Sax said, and an appeal effort was denied.

Sax, a vocal critic of Krasner since the campaign trail, said he had not withheld information that could have been helpful to Patterson. He said he thought the case was being overturned in part because of bad blood between himself and the district attorney.

"To have a political [dismissal] because the district attorney really doesn't like the second of two prosecutors who tried the case is horrific," Sax said.

Krasner, a self-described reformer who took office in January, made no secret as a candidate of his disdain for what he considered a win-at-all-costs mentality among Philadelphia prosecutors. And the motion — filed by his office in Patterson's still-pending case — does not hold back in its assessment of Sax and former Assistant District Attorney Beth McCaffery, although neither is named in the document.

ADVERTISEMENT

Patterson's prosecution, the motion says, was "illogical" and "completely lacking in integrity." Not only was Patterson improperly imprisoned, it says, but the victim's family was given a false sense of closure and the public was ill-served when the likely shooter remained on the streets until he was killed.

🔍 **The Philadelphia Inquirer** 👤

identified him and a jury voted to convict him. He said Krasner's office was looking at the case "in the light most favorable to the defense," rather than applying the law properly.

"It seems like they took this opportunity to argue as hard as they could for everything that could possibly be said on behalf of the defendant," he said. "And that's not what prosecutors are supposed to do."

Patterson's conviction was vacated in February after prosecutors agreed his defense attorney was ineffective. He has been on house arrest since last month and is due back in court Wednesday, when prosecutors will ask a judge to sign off on Voci's decision to drop all remaining charges.

Patterson was accused of fatally shooting his friend Antwine Jackson, 18, on Jan. 11, 2007, outside a corner store on the 800 block of Granite Street. His first trial, in 2008 — handled by McCaffery — ended in a hung jury. He was retried the following year by Sax and convicted of first-degree murder.

Attempts to reach McCaffery for comment Tuesday night were unsuccessful.

No motive for the killing was ever determined, Voci's motion says, and no physical evidence connected Patterson to the crime. The case rested largely on two eyewitnesses about 40 yards from the store, the motion says.

Voci said that information about alternate suspects was not turned over to the defense before either trial, and that prosecutors at the time also failed to disclose potentially damning information against another witness who testified at Patterson's second trial.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents
E-Filed by: GEORGE BOCHETTO, ESQ.

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents
E-Filed by: GEORGE BOCHETTO, ESQ.

Deliberately withholding evidence from a defendant, the motion says, "is not law enforcement in any sense — it is a violation of the law." Courts have held that prosecutors must share all relevant evidence, even if it may be favorable to a defendant.

Although the motion does not explicitly accuse either McCaffery or Sax of intentional misconduct, it does say it was "inconceivable" that either was unaware of the exculpatory evidence, and later says, "Without concealment of exculpatory evidence, the prosecution could not win."

Sax said: "Everything that was either exculpatory or arguably exculpatory was turned over. That's without any question." He also said he felt "horrible" for Jackson's relatives. Attempts to reach them for comment Tuesday night were unsuccessful.

Hayes Hunt, Patterson's appellate attorney, said in an email Tuesday that he was grateful that prosecutors were "righting this great wrong." Hunt, of the Center City firm Cozen O'Connor, worked pro bono on the case with the Pennsylvania Innocence Project.

"Mr. Patterson's conviction for murder undermines the credibility of our criminal justice system and is Exhibit A for reform and thoughtful change in

Philadelphia," Hunt said. "His prosecution was an indictment against due process and basic fairness."

Marissa Bluestine, executive director of the Pennsylvania Innocence Project, said in an interview that Patterson was "very emotional, overwhelmed" by Tuesday's news.

"He spent 11 years locked in a cell where everything was dictated for him," Bluestine said, "and he knew that he didn't belong there."

ADVERTISEMENT

## ABOUT US

About The Inquirer
Diversity & Inclusion
Advertise
Contact Us
Licensing & Permissions
Photo Reprints
Newspapers in Education
Jobs & Internships
Inquirer Events
Acel Moore Workshops
Newsroom Staff
Help and Feedback

## MARKETPLACE

Inquirer Store
Job Listings
All Classifieds
Death Notices
Legal Notices
Gift Subscriptions

## NEWS & INFO

News
Sports
Entertainment
Business
Health
Food
Life
Opinion
Philly First
Archives
Special Reports
Site Map

## E-EDITIONS

The Inquirer
The Daily News
Subscriber Services

## MOBILE APPS

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents
E-Filed by: GEORGE BOCHETTO, ESQ.

Apple iOS

Google Android



© 2025 The Philadelphia Inquirer, LLC

Terms of Use  /  Privacy Policy  /  Cancellation Policy  /  California Notice
California residents do not sell my data request

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of
the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents
E-Filed by: GEORGE BOCHETTO, ESQ.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

# Exhibit 3

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

 CITY OF PHILADELPHIA

LAW DEPARTMENT
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

Michael R. Miller
Deputy City Solicitor
Civil Rights Unit
14th Floor
215-683-5433 (phone)
215-683-5397 (fax)
michael.r.miller@phila.gov

September 19, 2018

**VIA ELECTRONIC MAIL**
Peter Carr
Assistant District Attorney
Appeals and Civil Litigation Units
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

RE:    **Litigation Hold Regarding Dontia Patterson**

Dear Peter:

Counsel for Dontia Patterson have notified the City Law Department that they may file a lawsuit against the City and the District Attorney's Office regarding Mr. Patterson's arrest, prosecution, and incarceration. Although the Law Department always hopes that presuit negotiations can avoid the need for actual litigation, there is no guarantee that such negotiations will be successful. You are thus receiving this memorandum because your clients might possess or control documents, electronic data, or other evidence that the City and/or the DAO may have a duty to preserve. **We are requesting that you direct the below-listed persons to preserve and maintain all documents, communications, and data potentially relating to Mr. Patterson's case.**

The "duty to preserve" means that the following persons should make reasonable efforts to search for, locate, collect, and keep intact (unaltered) documents, electronically stored information, and tangible evidence that may have potential relevance or become subject to a discovery request during the course of this Litigation:

- Lawrence Krasner
- Anthony Voci

D2234

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: GEORGE BOCHETTO, ESQ.

CITY OF PHILADELPHIA

LAW DEPARTMENT
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

- Richard Glazer
- Patricia Cummings
- Andrew Wellbrock
- Carrie Wood
- Tracey Kavanagh
- Michael Giampietro
- Ben Waxman
- Edward Cameron
- Laurie Williamson
- Erin Boyle
- Richard Sax
- Beth McCaffery
- Robert Listenbee
- Carolyn Temin
- Arun Prabhakaran
- Cari Mahler
- Samuel Ritterman
- Chelsey Lightsey
- Erica Rebstock
- Ronald Eisenberg
- Elizabeth Graham Rubin
- Mark Gilson
- Ed McCann
- Bob Hopkins
- Jeffrey Lindy

**These persons should ensure that they preserve all potentially relevant documents, including documents such as notes, private memoranda, and emails sent from non-City email addresses.** (We are not asking you at this time to produce all such documents or information to the City's Law Department or anyone else). **Although we realize that not all these persons still work at the DAO, the DAO should nonetheless preserve any documents, ESI, or evidence created or received by them that are in the DAO's possession and potentially relevant to this litigation. To the extent that additional current or former employees of the DAO also were involved in Mr. Patterson's case and/or the decision to release Mr. Patterson, please let me know their names as soon as possible, and please have them preserve their documents and ESI as well.**

D2235

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.



# CITY OF PHILADELPHIA

LAW DEPARTMENT
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

## Definitions

For further guidance, the Law Department offers the following definitions of the terms used above:

**"Documents"** include paper documents, any writings (e.g., notes, memos, letters etc.), drawings, graphs, charts, photographs, sound (audio) recordings, and video recordings and images.

**"ESI"** includes: email messages, texts, instant messaging, voicemails, word processing files (e.g., Microsoft Word), Power Point files, Excel files or worksheets, image files (e.g., pdf, tiff or jpg), web pages or printouts, postings and entries on internal or external websites, and any other electronic or digital information or data stored on: **desktop and laptop computers, hard drives, CDs/DVDs, memory sticks or thumb-drive devices, personal and shared network drives, cloud-based services, smart phones (e.g., iPhones, Blackberries), tablet devices, or any other electronic media.**

Documents, ESI, and evidence are **"in your possession, custody or control"**, and subject to preservation, even if an individual created, received, stored or maintained them on storage or other electronic media or devices off-site or at home or on a personal electronic device. Documents, ESI, and evidence are also in an individual's control if employees or consultants an individual supervises, manages, directs, or otherwise has a right of control possess or have custody of the document, ESI or other evidence.

## What You Should Do to Preserve Evidence

After you and the above-listed persons identify and locate any documents, ESI, or other evidence that are potentially relevant to the Litigation, all persons should ensure that the document, ESI, or evidence is not lost, altered, damaged, or destroyed. Recommended actions with respect to relevant or discoverable documents, ESI, or other tangible evidence include:

- Collecting, setting aside and maintaining any paper documents or other tangible evidence in a folder or other appropriate place that will enable them to be located in the future.

- Preserving ESI in native format by saving it to a server, electronic archives, computer hard drive, thumb drive, disc or other media. No one should delete, overwrite, alter, or destroy ESI.

Case# 2025-01954-13 - JUDGE.41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

 CITY OF PHILADELPHIA

LAW DEPARTMENT
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

- Suspending or otherwise preventing operation of any automated activity which deletes, overwrites, purges or otherwise destroys or alters any ESI. For instance, failure to archive emails relating to the Litigation may lead to the deletion of such emails due to the City's automatic policy of deleting all emails in the inbox older than 50 days.

- Having supervisors ensure that persons reporting to them are aware of their preservation obligations under this memorandum.

- For any person who left DAO employment or from any device, medium or source no longer accessible or subject to disposition, preserve any back-up tapes or media that may contain documents, ESI or evidence, created, received or stored by that person, device or source.

The City's Office of Innovation and Technology ("OIT") has been notified of this Litigation Hold. OIT is working with the Law Department and other departments and agencies to ensure that we implement the Litigation Hold. Please note that OIT has placed a hold on the official DAO email accounts of the above-listed persons.

### How Long Evidence Should Be Preserved

Everyone listed in this letter should keep any documents, ESI or other evidence that they have preserved pursuant to this letter until they or you receive written advice from me that the hold has ended. Also, if you or anyone has uncertainty about the relevance, responsiveness, or retention of any document, ESI, or other evidence, you should preserve it until or unless directed otherwise by the Law Department.

Please contact me if you have any questions about this letter. Additionally, please confirm as soon as possible that you have contacted the above-mentioned employees to ask them to preserve their documents, ESI, and other evidence.

Sincerely,

/s/ Michael R. Miller
Michael R. Miller
Deputy City Solicitor

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

# Exhibit 4

Case# 2025-01954-13 - JUDGE:41 Received at County of Bucks Prothonotary on 05/08/2025 11:43 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: GEORGE BOCHETTO, ESQ.

**From:**              Anthony Voci
**Sent:**               Monday, May 7, 2018 9:51 AM
**To:**                 Patricia Cummings
**Subject:**          RE: Donita Patterson

sorry for the VERY late reply. i just tried to call you in you office. we are meeting at 10:30, correct?

---

**From: Patricia Cummings**
**Sent: Sunday, May 06, 2018 2:23 PM**
**To: Anthony Voci**
**Subject: Donita Patterson**

Sorry to bother you (especially on a Sunday).
Mike gave me the black notebook on the case to review in order to help with any statement we make during the upcoming listing regarding the undisclosed Brady material.
Having reviewed the notebook, I am a little confused. It seems like there was a lot of Brady material in the original investigation. However, my recollection is that what we believe was suppressed was three pages (white paper, memo from Deegan and 2/7/07 police lineup). Is that right? If so, I get that the photo lineup likely means there is a lot of exculpatory stuff missing from the homicide file (or maybe never recorded).
Also, can you give me a short summary of what your investigation revealed? Who do you think was the shooter - Lavar or Scoop?
Thanks,
Patricia


Patricia Cummings, Esq.
Supervisor | Conviction Integrity Unit
**District Attorney's Office**
Three South Penn Square
Philadelphia, PA 19107
(215) 686-8747 (direct)
(215) 686-8024 (fax)

1

D1970