## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETH ANN MCCAFFERY | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | 2:25-cv-02429-JFM |
| v. | : | |
| | : | |
| NEW YORK UNIVERSITY | : | |
| SCHOOL OF LAW, *et al.* | : | **JURY TRIAL DEMANDED** |
| | : | |
| *Defendants.* | : | |
| | : | |

## ORDER

AND NOW, this ___ day of _____, 2025, upon consideration of Plaintiff's Motion for Leave to File a Supplemental Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Supplemental Brief, attached to her Motion, is deemed FILED as of the date of this Order.

IT IS SO ORDERED.

BY THE COURT:

_____,
HONORABLE JOHN F. MURPHY
U.S. District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BETH ANN MCCAFFERY | : | |
| | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | 2:25-cv-02429-JFM |
| v. | : | |
| | : | |
| NEW YORK UNIVERSITY | : | |
| SCHOOL OF LAW, *et al.* | : | **JURY TRIAL DEMANDED** |
| | : | |
| *Defendants*. | : | |
| | : | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITTION TO DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiffs, Beth Ann McCaffery ("Plaintiff"), by and through her undersigned counsel, Bochetto & Lentz, P.C., hereby files this Motion for Leave to File A Supplemental Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint.

I.    **INTRODUCTION**

1.    Plaintiff seeks leave to file the accompanying Supplemental Brief, which serves to directly answer two novel inquiries presented by the Court.

2.    The Court raised two interrelated issues that had not been specifically addressed in the parties' previous briefing.

3.    First, when analyzing New York's *Williams* exception to the fair-report privilege, the Court asked how Defendant Cummings' malicious purpose in drafting the 2018 Motion to Nolle Pros impacts her later republication of that same malicious document within the Zimroth Report, when she was acting as an employee and author on behalf of NYU.

4.      Relatedly, the Court also inquired how the answer to that question informs whether a conflict exists between New York and Pennsylvania law, thereby requiring a choice-of-law analysis.

5.      The Court raised these specific issues *sua sponte*, as they were not squarely addressed by the parties' briefing.

6.      Accordingly, Plaintiff respectfully submits the instant Motion for Leave to File A Supplemental Memorandum of Law to answer the Court's inquiries.

II.    **ARGUMENT**

7.      "[a] party is not prejudiced by new arguments raised in a reply brief if the court allows the party an opportunity to respond to the newly raised issues in a sur-reply brief." *Cornerstone Residence, Inc. v. City of Clairton*, 2018 WL 306670, at *4 (W.D. Pa Jan. 5, 2018)."

8.      The United States District Court for the Eastern District of Pennsylvania local rules do not specifically permit either Replies, Sur-replies, or Supplemental Briefs.

9.      However, Plaintiff seeks leave to provide this Court with a short brief that directly answers the novel issues raised by the Court during oral argument.

10.     The proposed Supplemental Brief is attached hereto as Exhibit 1.

11.     Plaintiff has no objection to allowing a Response to Plaintiff's Supplemental Brief, thereby curing any claim of prejudice.

12.     The proposed Supplemental Brief provides this Court with guidance on many of the inquiries that were raised for the first time during oral argument.

13.     First, even if the Court draws a distinction between Cummings and NYU for purposes of assessing the *Williams* exception to the fair report privilege under New York law, that distinction does not entitle NYU to dismissal.

14.    Regardless of the *Williams* exception, NYU must establish that it fairly and accurately reported on the entirety of the *Patterson* prosecution—not merely the malicious Motion to Nolle Pros—in order to invoke the protections of the fair-report privilege.

15.    The Amended Complaint expressly alleges that: (1) the Zimroth Report purports to recount the full prosecution of Donte Patterson, and (2) the Zimroth Report in fact is directly contradicted by the record from the *Patterson* case.

16.    Thus, the well-plead facts in the Amended Complaint establish that the Zimroth Report was not a "fair report."

17.    Under New York Law, where, as here, there are questions as to the fairness and accuracy of the alleged "fair report" of a judicial proceeding, those questions are inherently <u>factual</u> and cannot be decided at the pleading stage. *See, e.g., George v. Time, Inc.*, 259 A.D. 324, 326, 19 N.Y.S.2d 385, 386 (App. Div. 1940), *aff'd*, 287 N.Y. 742, 39 N.E.2d 941 (1942) ("If there were any question as to the fairness of the report that would be an issue for the jury under proper instructions."); *Gottwald v. Sebert,* 40 N.Y.3d 240, 255, 220 N.E.3d 621, 630 (2023) ("Regarding the 19 statements purportedly covered by the statutory [fair report] privilege, that is a question appropriately left for the jury.")

18.    Secondly, because the Court raised the possibility of a "true conflict" between the laws of New York and Pennsylvania, Plaintiff's proposed Supplemental Brief addresses that issue directly.

19.    In sum, Pennsylvania law applies to a multistate defamation cases where, as here, the plaintiff is a Pennsylvania resident and the reputational injury occurred primarily in Pennsylvania.

20.     This is the case even where, as here, the defendant publisher is from New York and the so-called "reporting" occurred in New York. *See, e.g., Wilson v. Slatalla,* 970 F. Supp. 405 (E.D. Pa. 1997) (Pennsylvania's fair report privilege applied to defamatory book which was published, researched and written in New York by New York residents because "Pennsylvania [where plaintiff resided] has the greater interest in protecting the reputation of its domiciliary.") *See also*, Restatement (Second) of Conflict of Laws § 150 (1971).

21.     As detailed in Plaintiff's proposed Supplemental Brief, the relief sought by Defendants would require a three-for-three finding in their favor that (1) New York Law Applies (even though it doesn't), (2) the *Williams* exception is not satisfied (even though it is), and (3) the Zimroth Report is a "fair report" (despite Plaintiff's well plead facts that the Defendants' purpose was to defame, and that the Zimroth Report outright falsifies the *Patterson* proceedings.)

22.     Losing any of these issues dooms Defendants' Motion for both Cummings and NYU.

23.     The Court, after careful consideration, should deny the Motion as to both Defendants and set this case on track for discovery, dispositive motion practice, and trial.

**III.    <u>CONCLUSION</u>**

24.     Accordingly, Plaintiff respectfully submits the instant Motion for Leave along with the accompanying Supplemental Brief to further assist this Court in addressing the novel inquiries raised at oral argument.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Dated:  November 26, 2025          By:     */s/ George Bochetto*
                                              George Bochetto, Esquire (27783)
                                              gbochetto@bochettoandlentz.com

4

David P. Heim, Esquire (84323)
dheim@bochettoandlentz.com
Bryan R. Lentz, Esquire (71383)
blentz@bochettoandlentz.com
Kean C. Maynard, Esquire (327794)
kmaynard@bochettoandlentz.com
Kiersty DeGroote, Esquire (326081)
kdegroote@bochettoandlentz.com
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

*Attorneys for Plaintiff*

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BETH ANN MCCAFFERY | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | 2:25-cv-02429-JFM |
| v. | : | |
| | : | |
| NEW YORK UNIVERSITY | : | |
| SCHOOL OF LAW, *et al.* | : | **JURY TRIAL DEMANDED** |
| | : | |
| *Defendants.* | : | |
| | : | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITTION TO
DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT**

Plaintiff, Beth Ann McCaffery ("Plaintiff"), by and through her undersigned counsel, Bochetto & Lentz, P.C., hereby files this Supplemental Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint:

## I.    INTRODUCTION

During oral argument, the Court raised two interrelated issues that had not been specifically addressed in the parties' briefing. First, when analyzing New York's *Williams* exception to the fair-report privilege, the Court asked how Defendant Cummings' malicious purpose in drafting the 2018 Motion to Nolle Pros impacts her later republication of that same malicious document within the Zimroth Report, when she was acting as an employee and author on behalf of NYU. Relatedly, the Court inquired how the answer to that question informs whether a conflict exists between New York and Pennsylvania law, thereby requiring a choice-of-law analysis. The Court raised these specific issues *sua sponte*, as they were not squarely addressed by the parties' briefing. Accordingly, Plaintiff respectfully submits the instant Supplemental Memorandum of Law to answer the Court's inquiries.

First, even if the Court draws a distinction between Cummings and NYU for purposes of assessing the *Williams* exception to the fair report privilege under New York law, that distinction does not entitle NYU to dismissal. Regardless of the *Williams* exception, NYU must establish that it fairly and accurately reported on the entirety of the *Patterson* prosecution—not merely the malicious Motion to Nolle Pros—in order to invoke the protections of the fair-report privilege. The Amended Complaint expressly alleges that: (1) the Zimroth Report purports to recount the full prosecution of Donte Patterson, and (2) the Zimroth Report in fact is directly contradicted by the record from the *Patterson* case.

Thus, the well-plead facts in the Amended Complaint establish that the Zimroth Report was not a "fair report."  Under New York Law, where, as here, there are questions as to the fairness and accuracy of the alleged "fair report" of a judicial proceeding, those questions are inherently <u>factual</u> and cannot be decided at the pleading stage.  *See, e.g., George v. Time, Inc.*, 259 A.D. 324, 326, 19 N.Y.S.2d 385, 386 (App. Div. 1940), *aff'd*, 287 N.Y. 742, 39 N.E.2d 941 (1942) ("If there were any question as to the fairness of the report that would be an issue for the jury under proper instructions."); *Gottwald v. Sebert,* 40 N.Y.3d 240, 255, 220 N.E.3d 621, 630 (2023) ("Regarding the 19 statements purportedly covered by the statutory [fair report] privilege, that is a question appropriately left for the jury.")

Secondly, because the Court raised the possibility of a "true conflict" between the laws of New York and Pennsylvania, Plaintiff addresses that issue below. In sum, Pennsylvania law applies to a multistate defamation cases where, as here, the plaintiff is a Pennsylvania resident and the reputational injury occurred primarily in Pennsylvania.  This is the case even where, as here, the defendant publisher is from New York and the so-called "reporting" occurred in New York. *See, e.g., Wilson v. Slatalla,* 970 F. Supp. 405 (E.D. Pa. 1997) (Pennsylvania's fair report privilege

applied to defamatory book which was published, researched and written in New York by New York residents because "Pennsylvania [where plaintiff resided] has the greater interest in protecting the reputation of its domiciliary." *See also*, Restatement (Second) of Conflict of Laws § 150 (1971).

In the end, Defendants' attempt to dismiss at the pleading stage is improper.  As detailed below, the relief sought by Defendants would require a three-for-three finding in their favor that (1) New York Law Applies (even though it doesn't), (2) the *Williams* exception is not satisfied (even though it is), and (3) the Zimroth Report is a "fair report" (despite Plaintiff's well plead facts that the Defendants' purpose was to defame, and that the Zimroth Report outright falsifies the *Patterson* proceedings.)   Losing any of these issues dooms Defendants' Motion for both Cummings and NYU.  The Court, after careful consideration, should deny the Motion as to both Defendants and set this case on track for discovery, dispositive motion practice, and trial.

## II.    SUPPLEMENTAL ARGUMENT

### A. Even If New York law applies and the Court Distinguishes Between Cummings and NYU in Applying the *Williams* exception, NYU Cannot Be Dismissed at the Pleading Stage.

During oral argument, the Court raised a thoughtful question under New York's *Williams* exception to the fair report privilege: can NYU be imputed with Cummings' state of mind if Cummings was not employed by NYU when she allegedly filed the underlying judicial pleading with "the purpose of later defaming Plaintiff?"

The *Williams* exception denies the fair reporting privilege to those who "maliciously institute a judicial proceeding alleging false and defamatory charges, and then circulate a press release or other communication based thereon." *Williams v. Williams*, 246 N.E.2d 333, 337 (N.Y. 1969). Specifically, this Court took note of a line of cases following *Williams* that purport to apply

3

the exception to cases where the underlying judicial filing was filed "maliciously and solely for the purpose of later defaming the plaintiff." *Branca v. Mayesh*, 476 N.Y.S.2d 187, 188 (App. Div. 1984). Although Defendants' Joint Motion to Dismiss did not raise this issue, the Court questioned whether, under New York law, NYU could be implicated for Cummings' malicious court filing that occurred before her employment with NYU.

Plaintiff respectfully submits that this inquiry need not be determined at the pleading stage because even if New York law applies, and the *Williams* exception needs to be considered, this issue cannot be resolved on a motion to dismiss. Indeed, even if the New York fair report privilege applies, the resolution of that defense still depends on hotly contested facts not properly determined at the pleading stage. As discussed above, the *Williams* exception need only be analyzed if this Court applies New York law, which is inapplicable here. Notwithstanding, even if this Court were to apply New York law, the *Williams* exception would not come into play unless and until NYU first establishes entitlement to the fair report privilege. That threshold issue – whether the Zimroth Report was fair and accurate – presents a fact-intensive inquiry that cannot be resolved on the pleadings. *George*, 259 A.D. at 326, 19 N.Y.S.2d at 386 ("If there were any question as to the fairness of the report that would be an issue for the jury under proper instructions."); *Gottwald,* 40 N.Y.3d at 255, 220 N.E.3d at 630 ("Regarding the 19 statements purportedly covered by the statutory [fair report] privilege, that is a question appropriately left for the jury.")

Importantly, Defendants freely admit that the Zimroth Report purports to cover the entire *Patterson* case, including both trials. *See* Defendants' Joint Motion to Dismiss at Pg. 23 Section III(B)(2) (acknowledging that the Zimroth Report's facts are drawn from both trial transcripts, among other sources). Therefore, to invoke the fair report privilege, Defendants must establish that the Zimroth Report is a fair and accurate recounting of <u>the entire Patterson prosecution</u>. To do so

requires an intense factual analysis, especially in light of Plaintiff's well-pled allegations establishing glaring contradictions and material omissions in the Zimroth Report.

In *Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526 (E.D. Pa. 1999), the court—applying New York law—squarely held that where there are contradictory facts over whether the defamatory statements constituted a "fair and true" report of a judicial proceeding, the issue is a question of fact inappropriate for summary judgment, much less for dismissal at the Rule 12(b)(6) stage. There, as here, the defendants asserted that their statements made in a press release regarding a judicial filing were privileged under New York Civil Rights Law § 74, but the court denied summary judgment, reasoning that a jury could find the publication "grossly overstated both the nature and severity of the lawsuit" and thus was not a fair report of the underlying pleading. *Id*. at 534–35. *See also Gottwald*, 40 N.Y.3d at 255, 220 N.E.3d at 630  (holding that legitimate questions over fairness and accuracy of the defamatory statements purportedly covered by the fair report privilege is a question appropriately left for the jury to resolve).[1]

Therefore, even assuming New York law applies, and even assuming NYU's "purpose" is distinct from Cummings', NYU still bears the burden of showing that the privilege applies on the face of the pleadings. It cannot meet that burden because Plaintiff's allegations overwhelming substantiate that the Zimroth Report:

1.  Omitted the exculpatory fact that prosecutors did, in fact, disclose potential alternative suspects in the *Patterson* case

---

[1] The Third Circuit, in *Schiavone Constr. Co. v. Time, Inc.*, 735 F.2d 94 (3d Cir. 1984), similarly held that whether a defamatory article was a "fair summarization" of an FBI Memorandum was "a question of fact."  735 F.2d at 97. Although *Schiavone* was decided under New Jersey law, the Third Circuit's decision is nevertheless instructive since, like this case, the court found the defendant (Time, Inc.) omitted "exculpatory language" from the FBI reports, which "more than sufficiently creates a question of fact as to the fairness of Time's summarization of the Webster memorandum so as to preclude a determination by the district court that publication of the article was privileged as a matter of law."  *Id*.  The Zimroth Report omitted many exculpatory facts, the most significant of which was that the so-called "alternative suspects," which were allegedly not disclosed and constituted the grounds for the purported *Brady* violation, were in fact disclosed by the prosecutors in the *Patterson* case.

2.  Misrepresented that eyewitnesses to the murder recanted testimony when they never did;

3.  Misrepresented that an identification eyewitness was unreliable because he did not know Patterson when the trial transcript demonstrated the witness had seen Patterson multiple times prior to the shooting; and

4.  Misrepresented the prosecution as having no motive evidence explaining Patterson's conduct, while excluding the evidence that explained otherwise.

To illustrate these factual points, attached hereto as **<u>Exhibit A</u>** is a demonstrative chart showing the comparison of the statements made in the Zimroth Report as contradicted by the actual trial records from the Patterson prosecution. The chart cites to the specific paragraphs in the Amended Complaint that demonstrate these material contradictions. Because these factual contradictions are well plead in the Amended Complaint (and fully supported by the *Patterson* record), NYU's invocation of the privilege fails and cannot be decided on a motion to dismiss. NYU can try and justify their fair report defense, but it must do so before a jury regardless of the application of the *Williams* exception.

### B.  If the Court Finds a Conflict Between New York and Pennsylvania Law, Pennsylvania Law Governs

Plaintiff maintains that New York and Pennsylvania law lead to the same outcome, as Plaintiff's allegations survive a Motion to Dismiss under either jurisdiction. However, at oral argument, the Court observed that applying the New York *Williams* exception to the fair report privilege may, in theory, give rise to an actual conflict requiring a choice-of-law analysis as it applies to Defendant NYU. As discussed, dismissal of NYU on these grounds would still be improper at the pleading stage. However, should the Court determine a true conflict exists, under longstanding precedent in this Circuit, Pennsylvania law applies in any event.

6

Pennsylvania follows the Restatement (Second) of Conflict of Laws § 150 for multistate defamation cases. That section provides that "when a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state." Restatement (Second) of Conflict of Laws § 150 (1971). Judges in this Circuit, applying the Restatement, have found that the plaintiff's domiciled state is controlling when analyzing a multi-state defamatory publication. "If Plaintiff is found to have been domiciled in Pennsylvania during the operative time period, then the Restatement militates in favor of applying Pennsylvania law." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 471 (E.D. Pa. 2010).

Indeed, it is well settled law that when facing a choice of law analysis on defamation matters, the Plaintiff's domicile and place of injury is the most significant factor to be considered. In *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997), the court held that Pennsylvania's defamation law applied even though the defendant authors and publisher were located in New York and the challenged publication had nationwide circulation. The court reasoned that the "the state of plaintiff's domicile generally has the greatest concern in vindicating plaintiff's good name and providing compensation for harm caused by the defamatory publication. Furthermore, in a defamation suit where the defamatory statements were published in more than one jurisdiction, the state with the significant interest is the domicile of the plaintiff." *Id*. (citing *Fitzpatrick v. Milky Way Productions*, Inc., 537 F.Supp. 165, 171 (E.D.Pa.1982) and *Rome v. Glanton*, 958 F.Supp. 1026, 1034 n. 5 (E.D.Pa. 1997)).

Here, the Amended Complaint establishes that:

1. The NYU's Zimroth Report was published in multiple jurisdictions over the internet (FAC ¶ 21, "extensively promoted online by NYU" and FN 1 citing URL website for Zimroth Report);

2. Plaintiff Beth McCaffery is a Pennsylvania resident (FAC ¶32);

3. She built her career as a Pennsylvania prosecutor representing the Commonwealth (FAC ¶¶6–11);

4. She prosecuted the *Patterson* case in Pennsylvania (FAC ¶¶49–51); and

5. She suffered reputational and emotional harm in Pennsylvania, where Defendants intentionally directed their defamatory conduct (FAC ¶¶37, 89–100).

In sum, Plaintiff's residence, career, and injuries are all centered in Pennsylvania. Accordingly, Pennsylvania law and the Restatement govern, even if Defendants reside elsewhere or the publication was distributed nationwide. This is the case even for Defendants' "fair report" defense. Indeed, in *Wilson*, the court applied the Pennsylvania fair report privilege, even though defamatory book at issue was published by a New York publisher and the defendants, who were New York residents, researched and wrote the book in New York. *Wilson*, 970 F.Supp. at 414 (finding Pennsylvania law governed), at 420 (applying Pennsylvania law concerning the fair report privilege, holding, in part "[t]he record contains sufficient evidence for a jury to conclude that the authors inaccurately related the number of occasions that the MOD members used the telephone calling card numbers obtained from the Eye Center's computer system.")

### III. CONCLUSION

The supplemental authorities and arguments herein further reinforce that Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Dated:  <u>November 26, 2025</u>     By:     <u>/s/ George Bochetto</u>
George Bochetto, Esquire (27783)
gbochetto@bochettoandlentz.com
David P. Heim, Esquire (84323)
dheim@bochettoandlentz.com
Bryan R. Lentz, Esquire (71383)
blentz@bochettoandlentz.com
Kean C. Maynard, Esquire (327794)
kmaynard@bochettoandlentz.com
Kiersty DeGroote, Esquire (326081)
kdegroote@bochettoandlentz.com
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

*Attorneys for Plaintiff*

9

# Exhibit "A"

**Zimroth Report:  A Gross Distortion, Not a "Fair and Inaccurate Report"**

| No. | How Zimroth Report is Inaccurate or Unfair Summary of Patterson Case | Summary of Amended Complaint | Paragraph(s) in Amended Complaint |
|---|---|---|---|
| 1 | **Misrepresentation of Eyewitness Testimony**<br><br>The Report asserts the eyewitnesses briefly saw the shooter and implied the identifications were otherwise unreliable. | Public transcripts demonstrate both eyewitnesses knew Patterson prior to the incident and gave repeated, unequivocal identifications in court. Their testimony was specific, consistent, and included corroborating details which were omitted or misrepresented in the Report. | ¶¶ 261-268 (Allan Brunache saw him 10x.  Pierre Laventure gave clear id testimony, photo array.) |
| 2 | **Misrepresentation of Eyewitnesses "recanting testimony"**<br><br>The Zimroth Report fabricates additional facts, such as eyewitnesses allegedly recanting identification on cross-examination or that Beth advanced a specific "return to the scene to change clothes" theory at trial, not supported by testimony. | These details do not appear in any trial transcript or the Cummings Motion; rather, the trial record shows both eyewitnesses' identifications were reinforced, not weakened, with the testimony about changing clothes used to explain Patterson's actions—not to undermine identification. The claim about Beth's arguments is a false addition created by the Report.  Kareema Patterson, Dontia's sister, testified she saw her brother change clothes, and her ability to provide an alibi was destroyed by evidence that Dontia conspired with her from jail. | ¶¶ 291-300 |
| 3 | **Distortion of Alternative Suspect/Informant Memo Evidence**<br><br>The Report asserts prosecutors withheld key alternative suspect information and that the "Informant Memo" did not mention Patterson. | The unredacted Informant Memo explicitly mentions Patterson ("Donte") and the defense was provided all names and relevant evidence before trial. The Report's assertion is stated as a material falsehood designed to fabricate a Brady violation.  The actual record proves otherwise. The trial transcripts, the appeal filings and PCRA filings demonstrate that the so-called alternative suspect names were all turned over to the defense. Both witnesses were listed as | ¶¶275-290<br><br>¶¶129-132 (files produced by DA had copies of documents disclosed to Patterson's defense counsel that disclosed the alleged alternative suspects) |

| No. | How Zimroth Report is Inaccurate or Unfair Summary of Patterson Case | Summary of Amended Complaint | Paragraph(s) in Amended Complaint |
|---|---|---|---|
| | | potential trial witnesses in both trials and court subpoenas were issued for them | |
| 4 | **Misrepresentation of Prosecution without Motive**<br><br>The Report suggests prosecutors pursued conviction of Patterson without motive evidence and with no explanation for why Patterson would come back to the scene | The actual trial arguments and public record show that Beth did present a motive at trial, referencing the drug trade and other trial evidence. The omission of this discussion in the Zimroth Report incorrectly paints the prosecution as illogical and unfounded when there was motive evidence explaining why Patterson would have come back to the scene – to intimidate witnesses and cover up his involvement. | ¶¶303—307, Beth closing arguments explaining motive and why Patterson would come back to the scene, to cover up and give himself an alibi and to intimidate eyewitnesses |

## <u>CERTIFICATE OF SERVICE</u>

I, *George Bochetto, Esquire*, hereby certify that a true and correct copy of the forgoing was filed electronically through this Court's ECF System and is available for viewing and downloading from this Court's ECF System. I further certify that an electronic copy of the foregoing was served upon all parties of record through this Court's ECF System.

**BOCHETTO & LENTZ, P.C.**

Dated:  <u>November 26, 2025</u>             By:     <u>*/s/ George Bochetto*             </u>
                                                      GEORGE BOCHETTO, ESQUIRE