**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BETH ANN MCCAFFERY | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  25-2429 |
| | : | |
| NEW YORK UNIVERSITY SCHOOL | : | |
| OF LAW, NEW YORK UNIVERSITY, | : | |
| PATRICIA CUMMINGS | : | |

**<u>MEMORANDUM</u>**

**MURPHY, J.**                                                          **March 16, 2026**

This is a defamation case.  The challenged statements are recent, but they describe an earlier legal proceeding.  The story begins in 2007, when Dontia Patterson was arrested and charged with murder in Philadelphia.  His first trial, prosecuted by Assistant District Attorney Beth McCaffery, ended in a hung jury.  His second jury trial, prosecuted by Assistant District Attorney Richard Sax, resulted in his conviction.  Years later, Mr. Patterson's convictions and related charges were vacated and he got a new trial.  At this point, the Philadelphia District Attorney's Office (DAO) assessed whether to try Mr. Patterson a third time and the DAO charged its Conviction Integrity Unit (CIU) with investigating the case.

The DAO determined that Mr. Patterson was probably innocent, so it sought to drop the case against him.  As part of these proceedings, Patricia Cummings — then-Chief of the CIU — drafted a motion that alleged prosecutorial misconduct, asserting that the original prosecutors hid exculpatory evidence from the defense.  The motion succeeded.  Six years later, New York University and NYU School of Law — where Ms. Cummings was serving as a Research Scholar — published a report focused on prosecutorial misconduct in the Philadelphia DAO. The report included 55 case studies — one of which focused on Mr. Patterson's case.  The report's case study on Mr. Patterson included specific allegations from the Nol Pros Motion, and

it named Ms. McCaffery and Mr. Sax as the prosecutors involved.  Ms. McCaffery ardently

rejects, as defamatory, the allegations made against her in the Nol Pros Motion and later

published in the report, and she seeks relief for defamation and related torts.  Defendants filed a

motion to dismiss Ms. McCaffery's claims, asserting that they are barred by New York's fair

report privilege.  We grant defendants' motion to dismiss because the allegations leave no escape

from New York's absolute fair report privilege.

## I.    FACTUAL BACKGROUND

On May 8, 2025, in Pennsylvania state court, Beth McCaffery sued New York University

School of Law, New York University, and Patricia Cummings for defamation, false light,

intentional infliction of emotional distress, and civil conspiracy to commit such torts.  DI 1-5 at

41-47.  Five days later, Ms. Cummings removed the matter to this court pursuant to 28 U.S.C.

§§ 1332, 1441, and 1446.  DI 1.  Following defendants' joint motion to dismiss (DI 21), Ms.

McCaffery filed the operative amended complaint, which advances the same causes of action.

DI 26 at ¶¶ 336-77.

Ms. McCaffery's case against defendants revolves around a report published by NYU in

March 2024 — titled "Prosecutorial Misconduct in the Philadelphia District Attorney's Office"

(the Zimroth Report) — and specifically a two-page section of that report's appendix, which

summarizes certain criminal proceedings involving Dontia Patterson.  In 2020, NYU and NYU

Law engaged Ms. Cummings — who at the time was the Chief of the Philadelphia DAO's CIU

— as a Research Scholar.  *Id.* at ¶¶ 147-54.  Between 2020 and 2024, and while she continued

serving as Chief of the CIU, Ms. Cummings contributed to the development of the Zimroth

Report in a research, drafting, and records-gathering capacity.  *Id*. at ¶¶ 147-54, 236.  The two-

page summary of the criminal proceedings against Mr. Patterson, featured in the report's

appendix, included information about Mr. Patterson's investigation, arrest, two jury trials, and

exoneration following a *nolle prosequi*[1] motion brought by the Philadelphia DAO.  *Id.* at ¶¶ 14,

18, 251.  This report was presented at the Peter L. Zimroth Center on the Administration of

Criminal Law's Annual Conference, a conference that Ms. McCaffery claims "was attended by

hundreds of lawyers and extensively promoted online by NYU."  *Id.* at ¶ 21.  Ms. McCaffery

alleges that both Ms. Cummings (who was a panelist at the event) and Philadelphia District

Attorney Larry Krasner (who was a keynote speaker at the event) "praised the report for

exposing allegedly unethical and corrupt prosecutors."  *Id.* at ¶ 22.

Ms. McCaffery prosecuted the first murder trial against Mr. Patterson in 2008, which

ended in a hung jury.  *Id.* at ¶ 51.  He was again tried in 2009, this time by prosecutor Richard

Sax, and ultimately convicted of first-degree murder.  *Id.*  In 2018, Mr. Patterson's convictions

and all related charges were vacated due to ineffective assistance of counsel and he was granted a

new trial.  DI 26-1 at 6.  The Commonwealth agreed that post-conviction relief for Mr. Patterson

was warranted.  *Id.*  Then, in May 2018, Ms. Cummings drafted, and the Philadelphia DAO filed,

a motion for *nolle prosequi* (Nol Pros Motion) of the murder charges against Mr. Patterson.  DI

26 at ¶ 14.

Though the Nol Pros Motion did not name Ms. McCaffery or Mr. Sax, it accused both of

Mr. Patterson's prosecutors of "egregious . . . prosecutorial misconduct," "hiding evidence," and

---

[1] Often shortened, as in this opinion, to "nol pros[,]" "[a] *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of proceedings on a particular bill or information, which can at any[ ]time be retracted to permit a revival of proceedings on the original bill or information." *United States v. Simmons*, 69 F.4th 91, 93 n.1 (3d Cir. 2023) (citing *Commonwealth v. Whiting*, 500 A.2d 806, 807 (Pa. 1985)).

"violati[ng] [ ] the law." *Id.* at ¶¶ 15-16; DI 26-1 at 4.  Characterizing Mr. Patterson as "a man who is probably innocent . . . whose case is so lacking in integrity[,]" the Nol Pros Motion accused both prosecutors of concealing exculpatory evidence from the defense, such as evidence that a different person was the actual shooter, and pursuing a weak and illogical case against Mr. Patterson.  DI 26-1 at 3-5.  Ms. McCaffery claims that this motion and the nol pros proceedings generated media coverage that "vilified her" and "dragg[ed] her name through the mud."  DI 26 at ¶ 15.  In her amended complaint, Ms. McCaffery alleges that the motion (1) presented "a convenient opportunity for a high-profile first exoneration . . . early in [DA] Krasner's first term"; (2) afforded "a chance not only to reverse a conviction but to publicly attack and discredit someone [DA] Krasner (and therefore Cummings) had long sought to exact revenge upon" — because Richard Sax "was a longtime nemesis of [DA] Krasner"; (3) had the "specific purpose . . . to defame Beth McCaffery and Richard Sax"; (4) was filed with the "only purpose . . . to defame and ruin Beth McCaffery and Richard Sax"; and (5) had "[t]he sole purpose . . . to create a public record defaming the prosecutors who handled the case." *Id.* at ¶¶ 52-53, 65, 67, 209.  According to Ms. McCaffery, the Zimroth Report's section on the Patterson case was defamatory *per se* as applied to her because the section entirely originated from false claims contained in the Nol Pros Motion and included Ms. Cummings's "purposely false descriptions of the Patterson prosecutions." *Id.* at ¶ 23.  And Ms. McCaffery claims that NYU republished these defamatory statements despite knowing "based on [Ms.] Cummings's own personal knowledge [] that the allegations lacked any factual basis." *Id.* at ¶ 24.  She asserts that the underlying filings from Mr. Patterson's prosecutions, appeals, and post-conviction relief proceeding "materially contradict[]" the claims in the Nol Pros Motion and the Zimroth Report's

4

"broader narrative." *Id.* at ¶ 25. In her view, the Zimroth Report's "admitted intent and purpose . . . was to inflict reputational damage and defame [her] and a former prosecutor and to diminish her professional prospects" by creating "a fictionalized narrative" regarding Mr. Patterson's prosecution. *Id.* at ¶¶ 241, 259. As a result of the Zimroth Report, Ms. McCaffery alleges that she has suffered significant damage to her professional and personal reputation. *Id.* at ¶¶ 30-31. She now seeks relief for such harms.

## II.    MOTION AT ISSUE

Defendants jointly move to dismiss Ms. McCaffery's complaint, asserting that she fails to state a claim for relief because the fair report privilege under both New York and Pennsylvania law bars her claims. DI 29-1 at 21-43. First, defendants argue that Pennsylvania's choice-of-law rule compels us to apply New York's fair report privilege[2] — which is absolute — because (1) there is a true conflict between the laws regarding the fair reporting privilege (the New York privilege is absolute, while the Pennsylvania privilege is qualified); (2) New York has the most significant relationship with the fair report privilege of a New-York-based author and publisher; (3) NYU has a strong policy interest in its absolute fair report privilege applying to conduct by a speaker that emanated from New York; (4) New York speakers would justifiably expect their statements emanating from New York to be subject to New York's fair report privilege; (5) certainty, predictability, and uniformity require New York's privilege to apply given the alleged tortious conduct occurred in New York and the injury occurred nationwide; and (6) New York is

---

[2] To the extent Ms. McCaffery attempts to belatedly raise arguments in her supplemental reply regarding choice of law, beyond her assertion that there is no true conflict between the New York and Pennsylvania laws, defendants insist these arguments are waived. DI 44 at 7 (citing *Dreibelbis v. Scholton*, 274 Fed. App'x 183, 185 (3d Cir. 2008)).

the place of the conduct allegedly causing the injury, NYU is located in New York, and Ms. Cummings was an NYU employee when she allegedly contributed to the report. *Id.* at 22-28. Moreover, defendants underscore that the most significant interest involved here is the fair report privilege, not the defamation claim, such that New York law must apply. DI 44 at ¶¶ 7-8 (citations omitted). Defendants explain that New York's privilege, codified at N.Y. Civ. Rights Law § 74, provides that "[a] civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding[.]" DI 29-1 at 28 (citation omitted). In their view, Section 74 requires dismissal because the fair report privilege contained therein must be construed liberally to ensure it broadly protects accounts of judicial proceedings. *Id.* (citing *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021)).

Defendants insist that the Zimroth Report's two-page appendix section on the *Patterson* matter focused on the Nol Pros Motion — rather than the entire prosecution of Mr. Patterson — and that it was an accurate account of that motion (noting that, in many places, the report quoted *verbatim* from the Nol Pros Motion). DI 44 at 9-12 (citations omitted); DI 29-1 at 29-38. They thus reject Ms. McCaffery's assertion that the fair report privilege applies only if the summary constituted "a fair and true report of the 'entirety' of the *Patterson* prosecution, as opposed to just the Nol Pros Motion" because the report clearly was focused on prosecutorial misconduct, not the *Patterson* case itself. DI 44 at 10. Analogizing to a university's report on a Supreme Court decision, defendants reason that the fair report privilege entitles the university to include background information on the case's history in the lower court but does not require them "to include every piece of trial court evidence that might run counter to the Supreme Court's decision." *Id.* at 11 n.5. Because they believe the summary accurately restated information

6

regarding the *Patterson* trials[3] that was described in the Nol Pros Motion, and any background information outside of the motion did not contain the most damaging alleged defamatory statements against Ms. McCaffery, defendants maintain that we need only focus on the Nol Pros Motion.  *Id.* at 11.

Defendants further argue that the *Williams* exception to the fair report privilege does not defeat the privilege.  DI 29-1 at 35-38; DI 37 at 15-17; *Williams v. Williams*, 246 N.E.2d 333 (N.Y. 1969).  They argue that (1) none of the defendants brought the *Patterson* proceedings because the DAO charged Mr. Patterson and that office, represented by Anthony Voci (not Ms. Cummings), filed the Nol Pros Motion; (2) the nol pros proceeding could not plausibly have been brought for the sole purpose of later disseminating false allegations to the public six years later in the Zimroth Report; and (3) the state court's decision to grant the Nol Pros Motion renders *Williams* inapplicable because it could only grant this relief if the DAO's proffered reasons were "valid and reasonable."  DI 37 at 15-17 (citations omitted).  And defendants insist that, even if *Williams* applied to Ms. Cummings, it cannot apply to NYU or NYU Law because, as framed at oral argument, "NYU had nothing to do with the original proceeding" and NYU lacked any "intent to bring the *Patterson* proceeding solely to later defame[.]"  DI 44 at 6 (citing DI 40 at 7:1-6, 24:10-12) (other citations omitted).[4]

Alternatively, defendants argue that dismissal is required under Pennsylvania's fair

---

[3] Defendants also observe that nothing in the trial record contradicts the assertion in the Nol Pros Motion that Ms. McCaffery illegally hid evidence in the *Patterson* case.  DI 44 at 12.

[4] In defendants' view, Ms. McCaffery's "[s]upplemental [b]rief implicitly concedes that NYU cannot be held liable under the *Williams* exception" because she "does not try to argue otherwise, and instead argues that inaccuracy (rather than *Williams*) renders NYU liable."  DI 44

reporting privilege because (1) the Zimroth Report's account of the nol pros proceeding was substantially accurate; and (2) the Zimroth Report was not published "solely for the purpose of causing harm to the person defamed." DI 29-1 at 38-41. As for Ms. McCaffery's false light, intentional infliction of emotional distress, and civil conspiracy claims, defendants assert those fail under either the New York or Pennsylvania fair report privileges because, when a defendant is protected by those privileges, a civil action cannot be maintained based on those privileged statements regardless of whether it is defamation, false light, or intentional infliction of emotional distress. *Id.* at 41-43. Thus, because the underlying torts must be dismissed, defendants contend that Ms. McCaffery cannot state a civil conspiracy claim. *Id.*

Finally, defendants declare that they are entitled to attorneys' fees under Pennsylvania's anti-SLAPP law because (1) the report relates to government officials' misconduct, which falls within the statute's ambit; and (2) a defendant who prevails on a 12(b)(6) motion is entitled to recover fees under 42 Pa.C.S. §§ 8340.18(a)(1), 8340.15(1)(ii). DI 29-1 at 43-44.[5]

Plaintiff opposes defendants' motion, asserting the fair report privilege does not apply because (1) the Zimroth Report selectively omitted portions of the referenced judicial proceedings which contradict the report's defamatory statements; and (2) the alleged defamer

---

at 15 (footnote omitted). Defendants insist that *Williams* does not apply because "there is no evidence or allegations that the reporter [NYU] participated in drafting the sham complaint." *Id.* (citing *Schnur v. Balestriere*, 208 A.D.3d 1117, 1119 (1st Dep't 2022)). And to the extent that NYU could be held liable under vicarious liability, which defendants note Ms. McCaffery mentioned at oral argument but does not raise in her supplemental briefing, such liability would not apply because Ms. Cummings was not NYU's agent nor employee when the Nol Pros Motion was filed. DI 44 at 15 n.12 (citations omitted).

[5] In response to Ms. McCaffery's argument that the anti-SLAPP provision for attorneys' fees is not yet in effect, defendants note that the only sections upon which they rely for their fees argument, sections 8340.15 and 8340.18, were effective as of July 17, 2024. DI 37 at 18.

8

(Ms. Cummings) is the author of the underlying statements in the judicial proceeding.  DI 33-1 at 2.  Ms. McCaffery thus insists that the Zimroth Report is not a fair summary of the judicial proceedings nor substantially accurate with respect to those proceedings.  *Id.* at 3.  Though Ms. McCaffery proposes that the Pennsylvania, rather than New York, fair report privilege applies, she urges that neither privilege may be invoked by the author of the underlying judicial proceeding when the purpose of the defamatory statement was to defame.  *Id.* at 9-10.  Thus, she maintains that the only difference between the two privileges is that the New York privilege focuses on the defamatory intent of the original filing in the judicial proceeding, while the Pennsylvania privilege focuses on the defamatory intent of the republication thereof.  *Id.*  So construed, Ms. McCaffery believes there is no true conflict between the laws because, under either, the privilege is inapplicable or waived if the report is not fair and accurate.  *Id.*  She further contends that Pennsylvania law applies where, as here, a plaintiff in a multistate defamation case resides in Pennsylvania and suffers reputational injury primarily in Pennsylvania, despite the conduct emanating from a New York publisher reporting in New York. DI 42 at ¶¶ 19-20 (citations omitted).

Under Pennsylvania law, Ms. McCaffery argues that defendants' abuse of the fair report privilege bars them from relying upon it even if the sole purpose of the statement was not to defame her.  DI 33-1 at 16.  Regardless, she asserts that she sufficiently alleged that (1) the sole purpose of the Zimroth Report was to defame her; and (2) the report was neither a fair nor neutral account of the judicial proceedings, but instead was a document crafted and published for the purpose of shaming.  *Id.* at 16-17.  According to Ms. McCaffery, she has sufficiently alleged abuse of the privilege by defendants because she has shown that the motivation of the Nol Pros

Motion was to falsely accuse her of imprisoning an innocent man to advance her career, and Ms. Cummings' publication of the Zimroth Report was solely for the purpose of "crucifying" her.  *Id.* at 18.

Addressing defendants' argument that the New York fair report privilege applies, Ms. McCaffery insists that, under *Williams*, the privilege does not shield the defamer when she self-reports her own defamatory conduct.  *Id.* at 10.  Ms. McCaffery avers that the *Williams* exception "applies and prevents early dismissal of a defamation claim where there are nonconclusory allegations that raise a question of fact as to whether the underlying litigation was maliciously instituted for the purpose of defaming [the Plaintiff.]"  *Id.* at 11 (citation omitted).  Here, she contends that her amended complaint provides specific and plausible allegations that (1) the purpose of the nol pros proceeding was to defame her; and (2) the purpose of the Zimroth Report was to disseminate that defamation and to out and shame prosecutors.  *Id.* at 14.  As to whether the Zimroth Report constituted a fair report of the *Patterson* proceedings, Ms. McCaffery urges that this is an inherently factual question, not subject to decision at the pleadings stage.  DI 42 at ¶ 17 (citations omitted).  In any event, Ms. McCaffery argues that the Nol Pros Motion went far beyond the bounds of "fair summary" such that the fair report privilege does not apply.[6]  DI 33-1 at 31.  Thus, though Ms. McCaffery insists that we need not litigate the merits of the entire

---

[6] Ms. McCaffery points to four main examples of inaccuracies in the Zimroth Report: (1) the report's false claim that the Informant Memo allegedly withheld from the defense did not name Mr. Patterson as a suspect; (2) the report's altered commentary on the eyewitnesses' testimony (*i.e.*, its statement that the witnesses only "briefly saw" the shooter, compared to the Nol Pros Motion's claim that the witnesses did not know Mr. Patterson); (3) the report's false statement about both witnesses seeing Mr. Patterson at the scene and their admission on cross-examination that he was wearing different clothing than the shooter; and (4) the report's inaccurate summary of Mr. Patterson's sister's alibi testimony.  DI 33-1 at 32-34.

underlying criminal proceedings against Mr. Patterson at the pleadings stage, if we did pursue

such an undertaking, there are clear, "material conflicts" between the Nol Pros Motion and

Zimroth Report and the trial record.  DI 33-1 at 23.

Finally, as for defendants' request for fees and dismissal under Pennsylvania's anti-

SLAPP statute, Ms. McCaffery contends that the provision providing for attorneys' fees is not

effective yet.  *Id.* at 35 n.1 (citing *Salaam v. Trump*, 350 F.R.D. 14, 18 n.3 (E.D. Pa. 2025)).

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6) challenges

Parties may jointly move to dismiss a complaint against them by asserting the complaint

failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When

reviewing a Rule 12(b)(6) motion, we must only consider "the complaint, exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents."  *Davis v. Wells Fargo*, 824 F.3d 333,

341 (3d Cir. 2016) (citation omitted).  We also shall "accept as true all allegations in the

complaint and all reasonable inferences that can be drawn from them after construing them in the

light most favorable to the nonmovant."  *Id.* (citation omitted).  Conclusory allegations do not

receive the same presumption of truth.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789-790

(3d Cir. 2016).  Nor will a "formulaic recitation of the elements of a cause of action" survive a

motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### B.    Choice of law

In an action based on diversity jurisdiction, we must apply the substantive law of the state

in which the district court sits, including its choice of law rules.  *Oldham v. Pa. State Univ.*, 138

11

F.4th 731, 748-49 (3d Cir. 2025); *Klaxon Co. v. Stentor Elec[tric Manufacturing] Co.*, 313 U.S. 487, 496 (1941).  Pennsylvania law uses a two-step true-conflict rule for substantive tort law: first, we examine whether there is a "true conflict" between the two states' laws; if there is no such conflict because both states laws lead to the same result or one state has no policy interest in the litigation's outcome, then Pennsylvania law applies; if there is a true conflict, then we assess which state has the most significant relationship to the events and the parties and apply that state's substantive laws to the matter.  *Oldham*, 138 F.4th at 751 (citations omitted).  For the "most significant relationship" inquiry, Pennsylvania uses "a flexible rule, that permits analysis of the policies and interests underlying the particular issue before the court" whereby we "use the Second Restatement of Conflict of Laws as a starting point, and then flesh out the issue using an interest analysis."  *Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 463 (3d Cir. 2006) (citation modified) (citations omitted).

Turning to the Restatement, when there is no statutory directive from the state regarding choice of law, we examine the following factors for determining the applicable rule of law: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  Restatement (Second) of Conflict of Laws § 6 (1971).  Section 145 provides the general principle respecting the conflict of laws for torts, and states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are
> determined by the local law of the state which, with respect to that issue, has the

12

most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). Comment E to Section 145 further provides that "the place of injury will not play an important role in the selection of the state of the applicable law . . . when, such as in the case of multistate defamation . . . injury has occurred in two or more states." Comment E, Restatement (Second) of Conflict of Laws § 145 (1971).

The Restatement describes privileged conduct and states that "[t]he law selected by application of the rule of § 145 determines whether a person is excused from liability by reason of the fact that his action was required or privileged by the local law of the state where he acted." Restatement (Second) of Conflict of Laws § 163 (1971). Comment A recognizes that "[c]omplexities may arise" when conduct occurs in one state (where it is privileged or required) and injury occurs in another state (where the conduct is not privileged or required, and where the courts of the state of injury would have disregarded the state of conduct's nonliability rule and applied its own liability rule). Comment A, Restatement (Second) of Conflict of Laws § 163 (1971). This comment notes the conflicting interests: the state of injury has "an obvious interest in providing compensation for injuries suffered within its territory" and therefore applying its liability rule, while the state of conduct has "an interest in having its rule of non-liability applied

13

to conduct that took place within its territory." *Id.* In such a case, the comment states that we typically should apply the rule of liability of the state of injury "unless the policy underlying the rule of non-liability of the state of conduct is a strong one[.]" *Id.*

**C.    Fair report privilege under New York and Pennsylvania law**

The New York fair report privilege, established under New York Civil Rights Law Section 74, creates a privilege "for the publication of a fair and true report of any judicial proceeding" that "is absolute and is not defeated by allegations of malice or bad faith." *Kinsey*, 991 F.3d at 176 (citation modified) (citations omitted). In *Kinsey*, the Court determined there was an actual conflict between the fair report privileges of New York and the District of Columbia, where the District of Columbia privilege was "qualified" and could be "waived if the report was published with actual malice." *Id.* (citation modified). The fair report privilege covers a statement if the statement "is substantially accurate[,]" meaning that, "despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id.* at 178 (citation omitted).

In assessing whether the New York fair report privilege applies to a given report, courts examine "whether the ordinary viewer or reader can determine from the publication itself that the publication is reporting on [a judicial] proceeding[.]" *Id.* at 178-79 (citation modified). New York courts liberally interpret Section 74's fair report standard "so as to provide broad protection to news accounts of judicial proceedings." *Id.* at 179 (citation omitted). We should "consider the allegations and statements in the court records in order to determine whether the [publication] provides a fair and true report of those allegations and statements, but will not consider the documents to be evidence of any of the facts stated therein." *Biro v. Condé Nast*, 883 F. Supp.

14

2d 441, 460 (S.D.N.Y. 2012) (citation modified) (citation omitted).  "Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within [S]ection 74's privilege[]" and there is "no requirement that the publication report the plaintiff's side of the controversy." *Id.* at 478 (citations omitted).[7]  And the publication's mere omission of certain information contained in the document from the underlying proceeding will not disqualify it from the fair report privilege's protection if the omission "did not alter the substantially accurate character of the [publication]." *Saleh v. N.Y. Post*, 78 A.D.3d 1149, 1152 (2d Dep't 2010) (citations omitted).  Additionally, information that does not necessarily come from the underlying proceedings, but is included in the publication, generally will not destroy the application of the privilege to the reporting if those statements, in context, do not "suggest[] conduct more serious than the conduct alleged in the underlying court cases." *Ctr. for Med. Progress v. Planned Parenthood Fedn. of Am.*, 551 F. Supp. 3d 320, 331 (S.D.N.Y. 2021).  "Background" facts to the misconduct attributed to the party in the proceedings are thus covered by the privilege.  *Id.* at 330-31 (citation modified); *see also El Greco Leather Prods. Co. v. Shoe World, Inc.*, 623 F. Supp. 1038, 1043 (E.D.N.Y. 1985).  New York's fair report privilege even applies to "reporting on charges and allegations made in proceedings regardless of whether the underlying allegations are in fact true." *Cummings v. City of New York*, 2020 WL 882335, at *16 (S.D.N.Y. Feb. 24, 2020) (citation omitted).

---

[7] In *Biro*, the Court observed that the publication nearly directly quoted from an affidavit filed in the proceedings at issue, and the Court stated that "[t]he fact that [plaintiff] disagrees with the allegations contained in the affidavit does not affect whether the statement is a fair and true report of the allegations it paraphrases." *Id.* at 479.

15

At issue in this case is the so-called *Williams* exception[8] to New York's fair report privilege: the fair report privilege does not apply to shield a defendant from defamation-related liability when the defendant initiated a judicial action "maliciously and solely for the purpose of later defaming the plaintiff" via a publication of that proceeding.[9]  *Branca v. Mayesh*, 101 A.D.2d 872, 873 (2d Dep't 1984), *aff'd by* 473 N.E.2d 261 (N.Y. 1984); *see also WA Rte. 9, LLC v. PAF Capital LLC*, 194 A.D.3d 508, 509 (1st Dep't 2021) (concluding that defendants failed "as a matter of law" to show that the action brought by them against plaintiff "was not a sham filed solely to defame [plaintiff]" such that the documents were protected by New York's fair report privilege) (citing *Williams*, 246 N.E.2d 333)); *Reszka v Collins*, 136 A.D.3d 1299, 1301 (4th Dep't 2016) (concluding the court properly refused to dismiss a counterclaim because it adequately pled that plaintiff's action lacked a factual basis and was brought "solely to defame defendant") (citations omitted); *Casa de Meadows Inc. (Cayman Islands) v. Zaman*, 76 A.D.3d 917, 920 (1st Dep't 2010) (describing the *Williams* exception consistent with the interpretation in

---

[8] *Williams* involved a defendant who instituted a proceeding against the plaintiff, in which the defendant defamed the plaintiff, after which the defendant very quickly published press releases to impugn the plaintiff's reputation.  *Williams*, 246 N.E.2d at 334-35.  The Court concluded that New York's fair report privilege did not shield a defendant who "maliciously institute[d] a judicial proceeding alleging false and defamatory charges . . . and . . . then circulate[d] a press release or other communication based thereon[.]"  *Id.* at 337.

[9] Though the *Williams* Court did not explicitly hold that this exception to the fair report privilege applies only when the alleged defamer instituted a judicial action maliciously and solely for the purpose of later defaming someone implicated in that judicial action, the Court of Appeals of New York — the highest state court authority in New York — affirmed this interpretation in *Branca v. Mayesh*, 473 N.E.2d 261 (N.Y. 1984) (affirming based on the lower court's reasoning, which interpreted *Williams* as applying only when the "action was brought maliciously and solely for the purpose of later defaming the plaintiff") (citing *Branca*, 101 A.D.2d at 873).  Based on our review, state and federal courts in New York understand *Williams* to apply only in those circumstances.

16

*Branca*); *Emergency Enclosures, Inc. v. National Fire Adj Co., Inc.*, 68 A.D.3d 1658, 1662-63 (4th Dep't 2009) (same); *Soumayah v. Minnelli*, 19 A.D.3d 337, 337 (1st Dep't 2005) (same); *Ulrich v. Hausfeld*, 269 A.D.2d 526, 526 (2nd Dep't 2000) (same); *Hughes Training Inc., Link Div. v. Pegasus Real-Time Inc.*, 255 A.D.2d 729, 730 (3rd Dep't 1998); *Goolden v. Wardak*, 2024 WL 3794413, at *2 (S.D.N.Y. Aug. 13, 2024) (same); *Sheindlin v. Brady*, 2022 WL 2222913, at *3 (S.D.N.Y. June 21, 2022) (same); *Capsolas v. Pasta Res., Inc.*, 2013 WL 703670, at *2 (S.D.N.Y. Feb. 26, 2013) (same); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (same); *Riel v. Morgan Stanley*, 2007 WL 541955, at *12 (S.D.N.Y. Feb. 16, 2007), *aff'd sub nom. by* 299 Fed. App'x 91 (2d Cir. 2008) (same).

Pennsylvania has a qualified or conditional — not absolute — fair report privilege that protects publications that are "fair, accurate and complete, and not published solely for the purpose of causing harm to the person defamed" even if the "information contained therein is false or inaccurate." *Sciandra v. Lynett*, 187 A.2d 586, 588-89 (Pa. 1963) (citations omitted). The publication need not set forth, *verbatim*, the governmental proceedings or official report of which it is publishing, as "[a] summary of substantial accuracy is all that is required." *Id.* at 600 (citations omitted). However, the privilege "is forfeited if the publisher steps out of the scope of the privilege or abuses the occasion" by making "exaggerated additions, or embellishments to the account" or "if the defamatory material is published solely for the purpose of causing harm to the person defamed." *Id.* (citation modified) (citations omitted).

The question of whether a publication constitutes a fair report, under both New York and Pennsylvania law, is generally a question of law amenable to resolution upon a motion to dismiss. *See, e.g.*, *Holy Spirit Asso. for Unification of World Christianity v. New York Times*

17

*Co.*, 399 N.E.2d 1185, 1187 (N.Y. 1979) (at the summary judgment stage, concluding "as a matter of law" that the publications constituted fair and true reports under New York's fair report privilege); *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 312 (S.D.N.Y. 2019) (at the motion to dismiss stage, explaining that "[i]t is for the Court to determine as a matter of law if a publication is a 'fair and true' report under [S]ection 74, unless the Court determines that an issue of fact remains"); *Abkco Music, Inc. v. William Sagan, Norton LLC*, 2016 WL 2642224, at *4 (S.D.N.Y. May 6, 2016) (explaining that the court may resolve the question of whether a publication constitutes a fair report upon a motion to dismiss if there are no issues of fact) (citation omitted); *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 524 (S.D.N.Y. 2013) (dismissing plaintiff's defamation claim after concluding that the fair and true report privilege applied to a press conference statement describing a lawsuit); *Test Masters Educ. Servs., Inc. v. 1VYP Holdings, Inc.*, 2007 WL 4820968, at *5 (S.D.N.Y. Sept. 18, 2007) (explaining it is the Court's role to determine "in the first instance" under New York law whether the publication constitutes a fair and true report); *King v. Philadelphia Inquirer*, 2007 WL 9813083, at *5-6 (E.D. Pa. Nov. 28, 2007) (applying the Pennsylvania fair report privilege at the motion to dismiss stage and concluding that the fair report privilege barred a defamation claim as a matter of law); *Hudak v. Times Publ'g Co.*, 534 F. Supp. 546, 560 (W.D. Pa. 2008) (concluding, as a matter of law, that plaintiff did not raise a genuine factual issue regarding whether the Pennsylvania fair report privilege was abused); *Medico v. Time, Inc.*, 643 F.2d 134, 146-47 (3d Cir. 1981) (determining that the district court did not err when it concluded that nothing in the record suggested the article constituted an unfair or inaccurate report on the FBI materials at issue).

**D.    Attorneys' fees**

When sitting in diversity, we apply state rules regarding attorneys' fees.  *Sec. Mut. Life Ins. Co. of N.Y. v. Contemp. Real Est. Assocs.*, 979 F.2d 329, 331-32 (3d Cir. 1992) (citation omitted).  "State rules concerning the award of attorneys' fees are to be applied in diversity cases whether these rules provide for an award or deny it, provided such rules do not run counter to federal statutes or policy considerations."  *Montgomery Ward & Co. v. Pacific Indem. Co.*, 557 F.2d 51, 56 (3d Cir. 1977) (citation omitted).  Pennsylvania's anti-SLAPP law, passed in 2024, provides protections for public expression.  42 Pa. C.S. § 8340.11 et seq.  Section 8340.15 grants immunity to an individual from civil liability regarding a cause of action predicated on protected public expression if either (1) the party bringing the cause of action fails to (a) establish a *prima facie* case or (b) state a cause of action upon which relief may be granted; or (2) if there is no genuine issue of material fact and the person against whom the cause of action is brought is entitled to partial or full judgment as a matter of law.  42 Pa. C.S. § 8340.15.  If a party is immune under section 8340.15, then the court shall award them attorneys' fees, court costs, and litigation expenses jointly and severally against each adverse party asserting the cause of action.  42 Pa. C.S. § 8340.18(a)(1).

**IV.    DISCUSSION**

**A.    Under Pennsylvania's choice of law framework, the New York fair report privilege applies**

This action is based on diversity jurisdiction, so Pennsylvania choice of law rules apply.  *Oldham*, 138 U.S. at 748-49.  Applying those rules, we conclude that the New York fair report privilege under Section 74 applies because (1) there is a true conflict between the New York and Pennsylvania fair report privileges; and (2) New York has a more significant relationship to the

19

events and parties at issue. *See id.* at 751 (describing Pennsylvania's two-step true-conflict test for substantive tort law).

First, there is a true conflict between the New York and Pennsylvania fair report privileges because applying one privilege instead of the other could lead to a different result: New York's privilege is absolute and applies despite allegations of malice or bad faith by the alleged defamer who publishes the allegedly defamatory statements from the underlying proceeding, whereas Pennsylvania's privilege is qualified and is waived if the alleged defamer publishes the defamatory material solely for the purpose of causing harm to the person defamed (in other words, if she publishes the material in bad faith or with malice). *See Kinsey*, 991 F.3d at 176; *Sciandra*, 187 A.2d at 588-89. Here, defendants would be shielded by the New York privilege if they published a fair and true report of the *Patterson* proceeding, with the sole purpose of publishing the material to harm the targets of the reporting (*i.e.*, Ms. McCaffery and Mr. Sax). But under such circumstances, defendants would not be shielded by the Pennsylvania privilege. Indeed, the only situation in which the New York fair report privilege would not apply is if the underlying proceeding was brought maliciously and solely for the purpose of later defaming the plaintiff. *See Branca*, 473 N.E.2d 261 (affirming *Branca*, 101 A.D.2d 872, based on its reasoning, which interpreted *Williams*, 246 N.E.2d at 337, as establishing this narrow exception). Analogously, the conflict between the New York and Pennsylvania fair report privileges resembles the conflict between the New York and Washington, D.C. fair report privileges — a conflict recognized by the Second Circuit in *Kinsey*. In that case, the Court determined there was an actual conflict between the two fair report privileges because the D.C. privilege was "qualified" and could be "waived if the report was published with actual

malice" — *Kinsey*, 991 F.3d at 176 — just like the Pennsylvania privilege.

Second, compared to Pennsylvania, New York has a more significant relationship to the events and parties involved. The allegedly defamatory statements regarding Ms. McCaffery in the Zimroth Report originated in New York and were made by a New York-based publisher (NYU) and an individual (Ms. Cummings) who was then employed by NYU to assist with the report. The fair report privilege shares a closer nexus with the speaker that it protects than the allegedly defamed party. And the speakers in this case were in New York when they published the allegedly defamatory statements. Because the privilege protects the speaker, the absolute nature of the New York privilege suggests that New York's policy interest in broadly protecting the speaker outweighs Pennsylvania's policy interest in providing more limited, qualified, speaker protections. Further, the alleged defamation was national in scope, thus decreasing the relevance of the state of the plaintiff's injury (Pennsylvania) to determining which substantive law to apply. Finally, applying New York's fair report privilege to alleged defamation from New York publishers promotes certainty, predictability, and uniformity. Courts like those in *Goguen* and *Wilkow* have weighed similar considerations when making a choice of law determination and concluded that the New York privilege applied. *See Goguen v. NYP Holdings, Inc.*, 544 P.3d 868, 881 (Mont. 2024) (concluding New York had the stronger interest in the determination of the fair report privilege issue because, in part, "the privilege protects the speaker, New York's privilege provides more protection to the press than Montana's, and the conduct occurred in New York"); *Wilkow v. Forbes, Inc.*, 2000 WL 631344, at *7 (N.D. Ill. May 15, 2000) (finding that the New York fair privilege applied over the Illinois fair report privilege because of New York's strong interest in promoting unfettered speech within its state and

21

cabining the scope of the privilege respecting conduct occurring within its borders). Neither plaintiff, nor we, could identify any contrary authority.

Accordingly, because there is a true conflict between the fair report privileges under New York and Pennsylvania law, and because New York has a more significant relationship to the parties and events underlying this case, New York's fair report privilege applies.

**B.      Ms. McCaffery's claims against defendants must be dismissed because they are barred by New York's fair report privilege under Section 74**

The brighter line of the New York privilege renders the record before us ripe for determination as to whether the fair report privilege (Section 74) applies because we discern no issue of fact respecting the fair and true nature of the Zimroth Report section summarizing the *Patterson* proceedings. *Holy Spirit*, 399 N.E.2d at 1187; *Wexler*, 374 F. Supp. 3d at 312; *Abkco Music*, 2016 WL 2642224 at *4; *Test Masters*, 2007 WL 4820968 at *5. On the face of the pleadings, the Zimroth Report's summary of the *Patterson* proceedings constitutes a fair report. And because the *Williams* exception does not apply to these circumstances, we conclude that the report is shielded by Section 74, such that Ms. McCaffery's claims must be dismissed.

The record before us is more substantial than a typical motion to dismiss. The parties agree that it includes many exhibits from both parties, including the Zimroth Report, Nol Pros Motion, transcripts from the nol pros proceedings and two jury trials, copies of the documentary evidence allegedly withheld from the defense during Mr. Patterson's jury trials, and media coverage regarding the *Patterson* proceedings. We have reviewed all these documents carefully. Additionally, the Zimroth Report's section on the *Patterson* proceedings specifically lists the sources from which it derived the information in the summary, which consists of the nol pros proceeding transcript from May 15, 2018, as well as various media articles on Mr. Patterson's

22

nol pros and criminal trial proceedings.  DI 29-9 at 76 (see footnote 218 of the Zimroth Report).

We likewise have studied these documents.

Based upon our review of these documents, we conclude that the Zimroth Report's summary of the *Patterson* proceedings constitutes a "fair and true" report under Section 74. *Wexler*, 374 F. Supp. 3d at 312.  The report very closely summarized the contents of the Nol Pros Motion — in many places, it did so verbatim — and it clearly cites to this motion as a source for the summary.  Given the citations and context of the Zimroth Report's summary of the *Patterson* case, the ordinary reader must know that this section was reporting on Mr. Patterson's judicial proceedings.  *Kinsey*, 991 F.3d at 178-79.  Additionally, the most damaging allegations against Ms. McCaffery are found in the Nol Pros Motion itself, some of which the Zimroth Report directly quotes: that she, as well as Mr. Sax, committed "egregious . . . prosecutorial misconduct" by "hiding evidence" and "violating the law" with respect to the government's *Brady* obligations in their prosecution of "a man who is probably innocent and whose case is so lacking in integrity."  DI 26 at ¶¶ 15-16; DI 26-1 at 4.  Such summaries or restatements of the Nol Pros Motion's allegations against Ms. McCaffery and Mr. Sax "are the type of statements that fall within [S]ection 74's privilege[.]"  *Biro*, 883 F. Supp. 2d at 478.  As for the information included in the Zimroth Report's discussion of the *Patterson* proceedings that did not facially derive from the Nol Pros Motion — which describes the background of the shooting, the two jury trials, the post-conviction proceedings, and the nol pros proceedings — that information is derived fairly from the sources cited in the report.  There really is no white space here: the sources cited by the report say what the report says.  And the publication was not required to "report the plaintiff's side of the controversy" or include specific information from the

23

underlying proceedings so long as the publication was "substantially accurate[.]" *Saleh*, 78 A.D.3d at 1152; *Biro*, 883 F. Supp. 2d at 478-79. To recapitulate, the information about the *Patterson* proceedings contained in the Zimroth Report is substantially accurate *vis-à-vis* the documents it cites as its sources, and that is what matters for purposes of the fair report privilege. That Ms. McCaffery disagrees with, and finds scandalous, the allegations in the Nol Pros Motion, and those reported on in the various media articles, cannot change the result. Her disagreement, even accepted as true, "does not affect whether the statement is a fair and true report of the allegations it paraphrases." *Biro*, 883 F. Supp. 2d at 479.

Having concluded that the Zimroth Report's section on the *Patterson* proceedings constitutes a fair and true report of those proceedings, we must address Ms. McCaffery's argument that the *Williams* exception nonetheless bars defendants from invoking the fair report privilege. We are not persuaded by her argument. In our view, Ms. McCaffery misunderstands the *Williams* exception when she claims that it stands for the proposition that Section 74 does not apply when the author of the defamation self-reports her own defamatory conduct. DI 33-1 at 10. *Williams* does not say this, nor does any authority applying *Williams* that plaintiff (or we) could identify. Rather, *Williams* concluded that the same person could not "maliciously institute a judicial proceeding alleging false and defamatory charges" and subsequently "circulate a press release or other communication based thereon" yet escape liability under the fair report privilege. *Williams*, 246 N.E.2d at 337. As described above, the *Williams* exception is narrow — and for good reason, given New York's strong policy interests in promoting expression, which the absolute privilege protects. To invoke this privilege, Ms. McCaffery would have to plausibly allege that the nol pros proceeding regarding Mr. Patterson was "to maliciously institute a

24

judicial proceeding alleging false and defamatory charges" against Ms. McCaffery and then "circulate a press release or other communication based thereon." *Id.*; *Branca*, 101 A.D.2d at 873; *Riel*, 2007 WL 541955 at *12.

Ms. McCaffery does not make a plausible claim that the nol pros proceeding was brought solely for the purpose of defaming Ms. McCaffery. We need look no further than her amended complaint, which alleges various other purposes for the nol pros proceedings, such that the face of her complaint defeats any allegation that those proceedings had the sole purpose of defaming her. *See* DI 26 at ¶¶ 52-53, 65, 67, 209 (alleging that the motion presented "a convenient opportunity for a high-profile first exoneration" during "[DA] Krasner's first term"; a chance to reverse a conviction and publicly disparage Richard Sax, who was DA Krasner's "longtime nemesis"; an opportunity "to defame and ruin Beth McCaffery and Richard Sax"; and a vehicle for creating "a public record defaming the prosecutors who handled the case."). According to Ms. McCaffery's own pleadings, the nol pros proceedings and motion had multiple purposes. It follows that it plausibly could not have the sole purpose of defaming Ms. McCaffery.

Additional considerations undermine any reliance on the *Williams* exception. For one, the nol pros proceeding was brought by the DAO — not Ms. Cummings, NYU, or NYU Law — distinguishing this case from *Williams*. And unlike *Williams*, the allegations suggest no overarching plan to initiate a sham proceeding for the purpose of later defaming the target of that proceeding through publication of the proceeding. The Zimroth Report was published six years after the nol pros proceedings occurred, and at the time of those proceedings, Ms. Cummings was in no way affiliated with NYU or NYU Law. It would require more than a reasonable inference to understand how proceedings brought six years prior to a university-sponsored

report — when that university had no connection to the proceedings at the time they occurred — could be brought solely for the purpose of defaming an individual or individuals involved in those proceedings.  No one disputes that NYU and NYU Law had nothing to do with the nol pros proceedings, rendering *Williams* clearly, and entirely, inapplicable to them — and Ms. McCaffery has provided no persuasive argument to the contrary.[10]

Finally, because the fair report privilege defeats Ms. McCaffery's defamation claims, it likewise defeats her false light, intentional infliction of emotional distress, and civil conspiracy claims.  "[A] civil action cannot be maintained based on privileged statements" period — it does not matter whether that action is for defamation or another claim.  *Wexler*, 374 F. Supp. 3d at 314 (citation modified); *Misek-Falkoff v. McDonald*, 177 F. Supp. 2d 224, 232 (S.D.N.Y. 2001) (stating that the separate claims arising out of an allegedly defamatory lawsuit, including those for false light and intentional infliction of emotional distress, "merge[d] in the defamation and [did] not give rise to any relief . . . based on separate legal theories."); *Reeves v. Associated Newspapers, Ltd.*, 228 A.D.3d 75, 93-94 (1st Dep't 2024) (affirming dismissal of plaintiff's intentional infliction of emotional distress claims because they were "duplicative of his defamation claims[,]" which was shielded by New York's fair report privilege, and they did not rise to the level of "extreme and outrageous conduct"); *Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 782 (S.D.N.Y. 2025) (dismissing the false light claim for the same reasons as the

---

[10] For the first time during oral argument, and in response to our questions about the liability of NYU and NYU Law for Ms. Cummings's involvement in drafting the Nol Pros Motion, Ms. McCaffery argued that NYU and NYU Law would be vicariously liable for Ms. Cummings's conduct because she was their agent.  N.T. 11/12/2025 at 70:22-73:8.  Ms. McCaffery appears to abandon this argument, as she did not raise it in her supplemental briefing. DI 42.  Accordingly, we find this argument waived, and even if not waived, we may disregard it as unpled and unsupported by the pleadings before us.

defamation claim because it was "based on the same facts as the defamation claim" and because New York Law does not recognize a false light invasion of privacy tort); *Salvatore v. Kumar*, 45 A.D.3d 560, 563-64 (2d Dep't 2007) (explaining New York law "does not recognize civil conspiracy to commit a tort as an independent cause of action" as "[s]uch a claim stands or falls with the underlying tort") (citations omitted).  Ms. McCaffery's defamation, false light, intentional infliction of emotional distress, and civil conspiracy claims share the same factual basis: they all are predicated upon the information contained in the Zimroth Report's summary of the *Patterson* proceedings.  Thus, these claims rise and fall together.  Because the defamation claim must be dismissed, so, too, must we dismiss Ms. McCaffery's remaining claims.

**C.    We decline to award attorneys' fees at this time**

Preliminarily, we note that the anti-SLAPP provisions upon which defendants rely for their attorneys' fees request are effective.  42 Pa. C.S. §§ 8340.15 and 8340.18.  We thus reject Ms. McCaffery's assertion, which points to section 8340.16, that Pennsylvania's anti-SLAPP law "has yet to go into effect."  DI 33-1 at 35 n.1.  However, defendants have not established their entitlement to relief because it is unclear whether the anti-SLAPP law — and particularly its provision providing for attorneys' fees, court costs, and litigation expenses under section 8340.18 to parties found immune from a cause of action under section 8340.15 — applies to this matter.  The parties have not addressed whether these anti-SLAPP provisions conflict with the Federal Rules of Civil Procedure or any other "federal statutes or policy considerations." *Montgomery Ward*, 557 F.2d at 56 (citation omitted).  At least because the presence or absence of a conflict between the anti-SLAPP provisions and federal law would affect our decision regarding the application of the anti-SLAPP provisions to this matter, we are not in a position to

27

provide relief at this time.

## V.    CONCLUSION

We dismiss Ms. McCaffery's claims under Rule 12(b)(6) because her claims clearly are barred by New York's fair report privilege.  Because we lack a sufficient basis, we decline to rule on the request for attorneys' fees and costs at this time.  An appropriate order accompanies this memorandum.