IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

|  |  |  |
|---|---|---|
| | x | |
| BETH ANN McCAFFERY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | No. 2:25-cv-02429-JFM |
| | : | |
| NEW YORK UNIVERSITY SCHOOL OF LAW, | : | |
| NEW YORK UNIVERSITY, PATRICIA | : | |
| CUMMINGS, JOHN DOE, and JANE DOE | : | |
| | : | |
| Defendants. | : | |
| | x | |

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' JOINT MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   ARGUMENT.......................................................................................................... 3

    A.    The Anti-SLAPP Law Entitles Defendants to Their Attorneys' Fees and
        Expenses ....................................................................................................... 3

        1.    The Anti-SLAPP Law Applies to This Action's Rule 12(b)(6)
             Dismissal...................................................................................... 4

        2.    Sections 8340.15(1)(ii) and 8340.18(a)(1) Do Not Conflict with
             Any Federal Rule or Policy.......................................................... 6

        3.    The Attorneys' Fees Provisions Are Substantive ..................................... 10

    B.    The Amount of Fees Requested Is Reasonable........................................................ 12

        1.    Defendants' Hourly Rates Are Reasonable .............................................. 13

             a.    Davis Wright Tremaine.................................................... 14

             b.    Hangley Aronchick Segal Pudlin & Schiller ................................ 18

        2.    The Hours Worked by Defendants' Counsel Are Reasonable.................. 19

        3.    Additional Considerations Support the Reasonableness of the
             Requested Fees........................................................................... 23

III.  CONCLUSION......................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Pol'y Grp., LLC*,
   783 F.3d 1328 (D.C. Cir. 2015) (Kavanaugh, J.)......................................................................7

*Abira Med. Lab'ys, LLC v. UPMC Health Plan Inc.*,
   2025 WL 2109346 (E.D. Pa. July 28, 2025)...................................................................13, 18

*Abrams v. Lightolier Inc.*,
   50 F.3d 1204 (3d Cir. 1995)......................................................................................................8

*Ali v. McClinton*,
   2017 WL 2588425 (E.D. Pa. June 14, 2017).........................................................................11

*Allen v. Beirich*,
   2021 WL 2911736 (4th Cir. July 12, 2021)..............................................................................5

*An v. Despins*,
   2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024) .......................................................................17

*Aston v. Chron.-Progress LLC*,
   2026 WL 900920 (Utah Apr. 2, 2026).....................................................................................24

*Augustyn v. Wall Twp. Bd. of Ed.*,
   139 F.4th 252 (3d Cir. 2025) .................................................................................................13

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
   735 F. App'x 733 (D.C. Cir. 2018).........................................................................................13

*Berk v. Choy*,
   146 S. Ct. 546 (2026).................................................................................................................7

*Bianucci v. Rite Aid Corp.*,
   2025 WL 2166015 (E.D. Pa. July 30, 2025)..........................................................................17

*Bobulinski v. Tarlov*,
   2025 WL 872178 (S.D.N.Y. Mar. 20, 2005) ........................................................................16

*Bobulinski v. Tarlov*,
   758 F. Supp. 3d 166 (S.D.N.Y. 2024).......................................................................................7

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)..................................................................................................................11

*Chin v. Chrysler LLC*,
   538 F.3d 272 (3d Cir. 2008)................................................................................11

*Corsi v. Newsmax Media, Inc.*,
   519 F. Supp. 3d 1110 (S.D. Fla. 2021) ...................................................................7

*DeJohn v. Temple Univ.*,
   537 F.3d 301 (3d Cir. 2008)..................................................................................3

*Dougherty v. Sch. Dist. of Phila.*,
   772 F.3d 979 (3d Cir. 2014)..................................................................................5

*Erie R. Co. v. Tompkins*,
   304 U.S. 64 (1938)............................................................................. *passim*

*Fairfax v. N.Y. Pub. Radio*,
   2023 WL 3303125 (E.D. Va. Apr. 4, 2023),
   *aff'd*, 2024 WL 3935041 (4th Cir. Aug. 26, 2024) ...................................................7

*Farrar v. Hobby*,
   506 U.S. 103 (1992)............................................................................................23

*Feldman v. Phila. Hous. Auth.*,
   43 F.3d 823 (3d Cir. 1994)....................................................................................5

*Goguen v. NYP Holdings, Inc.*,
   544 P.3d 868 (Mont. 2024) .................................................................................17

*Henrich v. Colby's Crew Rescue*,
   2026 WL 839119 (E.D. Pa. Mar. 26, 2026)...........................................................10

*Herring Networks, Inc. v. Maddow*,
   2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ...........................................................16

*Hill v. Heslep*,
   No. 20STCV48797 (Cal. Sup. Ct. 2021) (Chase Decl. Ex. D) ..............................16

*Hinckley v. E.I. Du Pont De Nemours & Co.*,
   583 F. Supp. 11 (E.D. Pa. 1983) ....................................................................13, 15

*Hoben v. Aramark Corp.*,
   No. 154095/2018 (Sup. Ct. N.Y. Cnty.) ...............................................................25

*In re Cohen*,
   349 A.3d 865 (Pa. 2026) .......................................................................................5

*In re Remicade Antitrust Litig.*,
   2023 WL 2530418 (E.D. Pa. Mar. 15, 2023).........................................................17

*Islamic Ctr. of Miss., Inc. v. City of Starkville*,
   876 F.2d 465 (5th Cir. 1989),
   *abrogated on other grounds by Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993)..........13

*Jakes v. Youngblood*,
   782 F. Supp. 3d 210 (W.D. Pa. 2025)..................................................................................9

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021).................................................................................................17

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988)..............................................................................................23

*Miller v. Appadurai*,
   No. 160329/2020 (Sup. Ct. N.Y. Cnty.) .............................................................................25

*Montgomery Ward & Co. v. Pac. Indem. Co.*,
   557 F.2d 51 (3d Cir. 1977)....................................................................................................6

*Myers v. City of Wilkes-Barre*,
   448 F. Supp. 3d 400 (M.D. Pa. 2020) ...................................................................................5

*Oross v. Kutztown Univ.*,
   2025 WL 3644245 (E.D. Pa. Dec. 16, 2025).........................................................................18

*Paucek v. Shaulis*,
   349 F.R.D. 498 (D.N.J. 2025).................................................................................... *passim*

*Pfeifer v. Wawa, Inc.*,
   2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) .......................................................................18

*Pollnow v. Poughkeepsie Newspapers, Inc.*,
   486 N.Y.S.2d 11 (App. Div. 1985), *aff'd*, 492 N.E.2d 125 (N.Y. 1986)................................5

*PPG Indus., Inc. v. Jiangsu Tai Mao Glass Co.*,
   2022 WL 247755 (W.D. Pa. Jan. 27, 2022)....................................................................16, 18

*Project Veritas v. Leland Stanford Junior Univ.*,
   2022 WL 3103827 (W.D. Wash. Aug. 4, 2022) ...................................................................24

*Rapaport v. Epstein*,
   No. 1:24-cv-7439-JGLC (S.D.N.Y.).....................................................................................25

*Rapaport v. Iyer*,
   No. 1:23-cv-6709 (S.D.N.Y.)................................................................................................25

*Rectenwald v. N.Y. Univ.*,
   No. 150387/2018 (Sup. Ct. N.Y. Cnty.) ..............................................................................25

iv

*Richey v. Showtime Networks Inc.*,
  2026 WL 867264 (D. Del. Mar. 30, 2026) (Bibas, J., sitting by designation).................7, 8, 10

*Rode v. Dellarciprete*,
  892 F.2d 1177 (3d Cir. 1990).....................................................................................13

*Salaam v. Trump*,
  350 F.R.D. 14 (E.D. Pa. 2025)...................................................................................9, 10

*Sec. Mut. Life Ins. Co. of N.Y. v. Contemp. Real Est. Assocs.*,
  979 F.2d 329 (3d Cir. 1992).......................................................................................11

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*,
  195 F. App'x 93 (3d Cir. 2006) ..........................................................................23, 24, 25

*Title Tracy Anderson Mind & Body, LLC v. Roup*,
  2023 WL 6890744 (C.D. Cal. Sept. 11, 2023) .......................................................16

*Tomazzoli v. Sheedy*,
  804 F.2d 93 (7th Cir. 1986) .......................................................................................13

*United States ex rel. John Doe I v. Penn. Blue Shield*,
  54 F. Supp. 2d 410 (M.D. Pa. 1999) ...................................................................12, 13

*Vespico v. Kass-Gerji*,
  2026 WL 736463 (M.D. Pa. Mar. 16, 2026)..............................................................4

*Vista Outdoor, Inc. v. Reeves Family Tr.*,
  2018 WL 3104631 (S.D.N.Y. May 24, 2018) .......................................................17

*Washington v. Phil. Cnty. Ct. of Common Pleas*,
  89 F.3d 1031 (3d Cir. 1996)......................................................................................21

*Wells Fargo Tr. Co. v. Fast Colombia S.A.S.*,
  2023 WL 8591953 (S.D.N.Y. Oct. 16, 2023),
  *adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) ..........................................17

*White v. A360 Media, LLC*,
  No. 20STCV49927 (Cal. Sup. Ct. 2021) (Chase Decl. Ex. E) ...............................16

*Whiteley v. Zynerba Pharms, Inc.*,
  2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) .......................................................18

*Wynn v. Chanos*,
  2015 WL 3832561 (N.D. Cal. June 19, 2015),
  *aff'd*, 685 F. App'x 578 (9th Cir. 2017)....................................................................16

**Statutes**

42 Pa. C.S. § 8340.11 .................................................................................................1, 4

42 Pa. C.S. § 8340.12(2) ..................................................................................................4

42 Pa. C.S. § 8340.12(3) ..................................................................................................4

42 Pa. C.S. § 8340.12(4) ..................................................................................................4

42 Pa. C.S. § 8340.13 ............................................................................................1, 5, 11

42 Pa. C.S. § 8340.15 ...........................................................................................4, 8, 9, 10

42 Pa. C.S. § 8340.15(1)(i) ..............................................................................................8

42 Pa. C.S. § 8340.15(1)(ii) ..................................................................................... *passim*

42 Pa. C.S. § 8340.15(2) ................................................................................................10

42 Pa. C.S. § 8340.16 .................................................................................................1, 12

42 Pa. C.S. § 8340.18 .................................................................................................9, 12

42 Pa. C.S. § 8340.18(a)(1) ..................................................................................... *passim*

2024 Pa. Laws 72, § 5 .....................................................................................................7

2024 Pa. Laws 72, § 7(1) ...........................................................................................1, 12

**Rules**

Fed. R. Civ. P. 11 ...........................................................................................................8

Fed. R. Civ. P. 12 .............................................................................................6, 8, 9, 10

Fed. R. Civ. P. 12(b)(6) .......................................................................................... *passim*

Fed. R. Civ. P. 15 ..........................................................................................................10

Fed. R. Civ. P. 54 ............................................................................................................9

Fed. R. Civ. P. 54(d) ........................................................................................................8

Fed. R. Civ. P. 54(d)(2) .......................................................................................... *passim*

Fed. R. Civ. P. 54(d)(2)(B)(ii) ......................................................................................3, 8

Fed. R. Civ. P. 56 ...................................................................................................8, 9, 10

Defendants New York University ("NYU")[1] and Patricia Cummings jointly move for attorneys' fees and litigation expenses pursuant to Fed. R. Civ. P. 54(d)(2) and 42 Pa. C.S. §§ 8340.15(1)(ii) and 8340.18(a)(1).

## I.    PRELIMINARY STATEMENT

The Pennsylvania General Assembly recently enacted the Uniform Public Expression Protection Act, 42 Pa. C.S. §§ 8340.11 *et seq.*, commonly known as the "Anti-SLAPP Law."[2] The Anti-SLAPP Law awards legal fees to prevailing parties who were sued for their "exercise, on a matter of public concern, of the rights of freedom of speech or of the press." 42 Pa. C.S. § 8340.13. The Anti-SLAPP Law contains two different kinds of provisions. The first category is substantive provisions awarding attorneys' fees to parties who succeed in having such lawsuits dismissed before trial. *Id.* §§ 8340.15(1)(ii), 8340.18(a)(1). The other category sets out procedures for a special motion in state court, once those procedures are approved by the Pennsylvania Supreme Court and take effect. *Id.* § 8340.16; 2024 Pa. Laws 72, § 7(1). In this Motion, only certain substantive provisions are at issue.

Defendants move pursuant to Rule 54(d)(2) and the substantive provisions of the Anti-SLAPP Law to recover their legal fees incurred in defense of this lawsuit. Defendants' entitlement to recover fees under the Anti-SLAPP Law is clear. First, Ms. McCaffery based her claims on Defendants' statements in an academic report, "Prosecutorial Misconduct in the Philadelphia District Attorney's Office" (the "Zimroth Report"), concerning matters of the greatest public importance regarding the administration of the Philadelphia District Attorney's Office ("DAO")

---

[1] Putative Defendant New York University School of Law is not a juridical entity separate from NYU. Rather, it is a school within NYU.

[2] "Strategic lawsuits against public participation ('SLAPPs') are lawsuits filed to punish, silence, and intimidate defendants exercising their First Amendment rights." *Paucek v. Shaulis*, 349 F.R.D. 498, 509 (D.N.J. 2025).

1

and wrongful prosecutions brought by the DAO.  There is no question the statements in the Zimroth Report were on a matter of public concern and thus covered by the Anti-SLAPP Law. Second, Defendants prevailed on a Rule 12(b)(6) motion to dismiss, and this Court held that the Amended Complaint failed to state a claim upon which relief can be granted.  That dismissal entitles Defendants to a mandatory award of attorneys' fees under the Anti-SLAPP Law.

In the face of these inescapable conclusions, Ms. McCaffery has argued in correspondence to the Court that the Anti-SLAPP Law does not apply in federal court because it is procedural or conflicts with federal rules.  Dkt. 51.  That argument is wrong.  Principally, it defies the text of the applicable provisions of the Anti-SLAPP Law and misapplies the *Erie* doctrine.  This Rule 54(d)(2) Motion rests on the straightforward application of substantive Anti-SLAPP provisions, which do not conflict with any federal procedural rule.  The district court decisions cited by Ms. McCaffery's counsel have no bearing on this Motion, as the defendants in those cases filed Anti-SLAPP motions relying on procedural aspects of the statute.

Finally, Defendants' requested legal fees are reasonable.  NYU was represented by a New York law firm with deep expertise in defamation law and New York's fair report privilege, which the Court concluded required the dismissal of the Amended Complaint.  Ms. Cummings was represented by a leading Philadelphia law firm with extensive experience in many of the issues underlying the Amended Complaint, including wrongful prosecution and the Philadelphia DAO. The two firms braided together an effective, focused, and efficient defense that complemented their respective areas of expertise.  While Defendants recognize that the fees incurred are substantial, that significant work was required to meet the formidable effort by the noted lawyers representing Ms. McCaffery.  Ms. McCaffery's 377-paragraph Amended Complaint drew on thousands of pages of transcripts and documents from numerous prior proceedings, including

Dontia Patterson's trial, retrial, conviction, appeal, post-conviction relief, and *nolle prosequi*, as well as Ms. McCaffery's multiple Right-to-Know proceedings in state court. Ms. McCaffery's strategy to saturate the Amended Complaint with references to the record in those proceedings required Defendants to incur substantial additional time getting up to speed on those numerous proceedings, in turn causing a greater fee application than would otherwise be the case. Simple complaints lead to simple motions to dismiss; complex ones like Ms. McCaffery's make for more complicated and expensive motions.

In the end, Defendants request only what they are entitled to under the Anti-SLAPP Law: the reasonable fees that Defendants had to incur to defend against Ms. McCaffery's meritless case challenging Defendants' protected speech. Protecting "free speech is of critical importance" in this case "because it is the lifeblood of academic freedom." *DeJohn v. Temple Univ.*, 537 F.3d 301, 314 (3d Cir. 2008). The Court should award Defendants their legal fees to vindicate their rights protected by the Anti-SLAPP Law.

## II.     ARGUMENT

Pursuant to Rule 54(d)(2), Defendants move for their attorneys' fees and expenses. Defendants' request is based on the Court's dismissal of this action with prejudice for failure to state a claim (Dkts. 46, 50) and substantive provisions of the Anti-SLAPP Law, specifically 42 Pa. C.S. §§ 8340.15(1)(ii) and 8340.18(a)(1). *See* Fed. R. Civ. P. 54(d)(2)(B)(ii).

### A.     The Anti-SLAPP Law Entitles Defendants to Their Attorneys' Fees and Expenses

Defendants are entitled to attorneys' fees and litigation expenses because (1) the dismissal of the Amended Complaint triggers a mandatory award of fees under the Anti-SLAPP Law, (2) the applicable Anti-SLAPP provisions do not conflict with any federal rule or policy, and (3) these provisions are substantive.

3

### 1.    The Anti-SLAPP Law Applies to This Action's Rule 12(b)(6) Dismissal

In 2024, "Pennsylvania's Anti-SLAPP statute was enacted to address what the General Assembly found to be 'a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression.'" *Vespico v. Kass-Gerji*, 2026 WL 736463, at \*11 (M.D. Pa. Mar. 16, 2026) (quoting  42 Pa. C.S. § 8340.12(1)).  The Anti-SLAPP Law was based on the Uniform Public Expression Protection Act ("UPEPA") promulgated by the Uniform Law Commission.  42 Pa. C.S. § 8340.11 & unif. l. cmt.  The Anti-SLAPP Law, among other things, "awards attorney fees to parties that are forced to defend against meritless claims arising from the exercise of the rights to protected public expression."  *Vespico*, 2026 WL 736463, at \*11 (quoting 42 Pa. C.S. § 8340.12(3)(ii)).    The General Assembly directed courts to give the statute a "[b]road construction" to further "the public interest to encourage continued participation in matters of public significance," which "should not be chilled" through meritless claims.  42 Pa. C.S. § 8340.12(2)–(4).

The Anti-SLAPP Law's fee-shifting provisions are straightforward.  As relevant here, where a plaintiff (1) brings a cause of action based on the defendant's "protected public expression," and (2) fails to "state a cause of action upon which relief can be granted," the defendant is deemed "immune from civil liability."  *Id.* § 8340.15(1)(ii).[3]  Once a party is deemed "immune" under section 8340.15, "the court *shall* award the party attorney fees . . . and expenses of litigation."  *Id.* § 8340.18(a)(1) (emphasis added).  Defendants easily satisfy both essential elements of the Anti-SLAPP Law's immunity provision, and thus are entitled to their attorneys' fees and expenses.

---

[3] As discussed in greater detail *infra* note 5 and accompanying text, section 8340.15 grants immunity in three circumstances.  Here, only subsection (1)(ii) (failure to state a cause of action) is at issue, so the Court need not address the other two bases for immunity.

***First***, Ms. McCaffery's claims in this lawsuit were plainly based on Defendants' protected public expression. "Protected public expression" is defined to include the "exercise, on a matter of public concern, of the rights of freedom of speech or of the press" guaranteed by the First Amendment and the Pennsylvania Constitution. *Id.* § 8340.13. Speech addresses a matter of public concern "if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *In re Cohen*, 349 A.3d 865, 887 (Pa. 2026) (quoting *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 886 (3d Cir. 1997)). Defendants' Zimroth Report "relat[es] to misconduct by government officials"—namely, prosecutors in the Philadelphia DAO—which "clearly involves matters of public concern." *Myers v. City of Wilkes-Barre*, 448 F. Supp. 3d 400, 414 (M.D. Pa. 2020); *see also*, *e.g.*, *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 987 n.5, 990–91 (3d Cir. 2014) (holding that report of government official's alleged misconduct was a matter of public concern and indeed "is the archetype of speech deserving the highest rung of First Amendment protection"); *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994) ("[I]llegality in a government agency is a matter of significant public concern."); *Pollnow v. Poughkeepsie Newspapers, Inc.*, 486 N.Y.S.2d 11, 16 (App. Div. 1985) ("[A]lleged criminal conduct and the operation of the criminal justice system with respect to the disposition of the charges . . . are matters of legitimate public concern."), *aff'd*, 492 N.E.2d 125 (N.Y. 1986); *Allen v. Beirich*, 2021 WL 2911736, at *5 (4th Cir. July 12, 2021) ("An attorney's [alleged misconduct] while representing the City, particularly in a case involving . . . wrongful conviction and incarceration, plainly is 'fairly considered as relating to any matter of political, social, or other concern to the community' and is 'a subject of general interest and of value and concern to the public.'"). Further, as this Court noted, the Zimroth Report "was presented at the Peter L. Zimroth Center on the Administration of Criminal Law's Annual Conference, a conference that Ms.

McCaffery claims 'was attended by hundreds of lawyers,'" including the sitting Philadelphia District Attorney.  Dkt. 46 at 3.  Accordingly, Ms. McCaffery's claims plainly targeted Defendants' protected public expression.

*Second*, Defendants prevailed on a Rule 12(b)(6) motion for failure to "state a claim upon which relief can be granted." *Id.* at 11 (citing Fed. R. Civ. P. 12(b)(6)).  That standard mirrors section 8340.15(1)(ii), which deems a defendant "immune" where the plaintiff fails to "state a cause of action upon which relief can be granted."  42 Pa. C.S. § 8340.15(1)(ii).  Defendants therefore must be deemed immune, which entitles them to the award of their attorneys' fees and expenses.  42 Pa. C.S. § 8340.18(a)(1); *see Paucek*, 349 F.R.D. at 514 (holding that, under highly similar provisions of New Jersey's anti-SLAPP law, "if a defendant files an ordinary Rule 12 . . . motion and prevails on that motion, he triggers UPEPA's mandate to shift fees and costs").

Accordingly, under the Anti-SLAPP Law, Defendants are entitled to a mandatory award of attorneys' fees and expenses due to the dismissal of this action pursuant to Rule 12(b)(6).

### 2.    Sections 8340.15(1)(ii) and 8340.18(a)(1) Do Not Conflict with Any Federal Rule or Policy

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  As this Court recognized (Dkt. 46 at 19), under the *Erie* doctrine, "state rules concerning the award of attorneys' fees are to be applied in diversity cases . . . provided such rules do not run counter to federal statutes or policy considerations." *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 56 (3d Cir. 1977).

The question is whether the "state law or rule 'answer[s] the same question' *differently* than the federal procedural rule." *Paucek*, 349 F.R.D. at 510 (alteration in original) (emphasis added) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010)).  "That difference matters" when assessing whether a state law "answer[s] the same

6

question" "differently" than a federal rule. *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015) (Kavanaugh, J.); *see also Berk v. Choy*, 146 S. Ct. 546, 554 (2026) (recognizing conflict where state rule and federal rule "give different answers to the question" and "impose[] a different standard").

The relevant inquiry on this Motion is whether 42 Pa. C.S. §§ 8340.15(1)(ii) and 8340.18(a)(1) conflict with any federal rule. They do not. In fact, a federal court recently found that very similar provisions of New Jersey's anti-SLAPP law—also based on UPEPA, like Pennsylvania's Anti-SLAPP Law—do not conflict with federal rules. *Paucek*, 349 F.R.D. at 513–19.[4] *Paucek*'s construction of New Jersey's UPEPA is highly persuasive authority in interpreting Pennsylvania's UPEPA, because the Pennsylvania legislature directed courts to promote uniformity among the states enacting UPEPA. 2024 Pa. Laws 72, § 5 ("In applying and construing this act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.").

Defendants invoke the immunity of section 8340.15(1)(ii), which applies when the plaintiff fails to "state a cause of action upon which relief can be granted." 42 Pa. C.S. § 8340.15(1)(ii). This standard does not conflict with federal law—it mirrors the standard under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Therefore, section 8340.15(1)(ii) is "on all-fours with Federal Rule[] 12" and presents no conflict. *Paucek*, 349 F.R.D. at 514; *see also Richey v. Showtime Networks Inc.*, 2026 WL 867264, at *5 (D. Del. Mar. 30, 2026) (Bibas, J., sitting by designation) (holding that New York's anti-SLAPP fee

---

[4] *See also*, *e.g.*, *Fairfax v. N.Y. Pub. Radio*, 2023 WL 3303125, at *5 n.10 (E.D. Va. Apr. 4, 2023) (Virginia anti-SLAPP law), *aff'd*, 2024 WL 3935041 (4th Cir. Aug. 26, 2024); *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 186 (S.D.N.Y. 2024) (New York anti-SLAPP law); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (Florida anti-SLAPP law).

provision did not "run[] afoul of Rule 12," and contrasting it with California's anti-SLAPP law that required dismissal under a higher standard than Rule 12(b)(6)).[5]

Nor does section 8340.18(a)(1) conflict with any federal rule or policy. That section simply provides for an award of attorneys' fees when section 8340.15 is triggered. Rule 54(d)(2)(B)(ii) expressly provides for an award of fees based on any "statute, rule, or other grounds," including a state statute. Fed. R. Civ. P. 54(d)(2)(B)(ii); *see Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224 (3d Cir. 1995) (explaining that the grounds for an award under Rule 54(d)(2) "need not be federal law" and indeed must be state law in a diversity case); *see also Richey*, 2026 WL 867264, at *6 (inviting prevailing defendant to renew its request for fees under New York's anti-SLAPP law in accordance with Rule 54(d)). Therefore, section 8340.18(a)(1) is in harmony with Rule 54(d)(2).[6]

---

[5] A separate subsection applicable when the plaintiff fails to "establish a prime facie case" is *not* invoked by Defendants and is *not* applicable here. 42 Pa. C.S. § 8340.15(1)(i). As *Paucek* explained:

> A court can award fees under the statute if *either* the plaintiff fails to meet its prima facie trial burden; *or* the defendant meets a Rule 12 motion to dismiss standard; *or* the defendant meets a Rule 56 summary judgment standard. . . . UPEPA's prima facie standard is plainly not on the menu of pre-trial dismissal options from which a federal court could apply in order to shift fees and costs under UPEPA because that provision conflicts with the pre-trial dismissal standards of Rule 12 and Rule 56. But UPEPA's latter two standards, mirroring Rules 12 and 56, do not conflict with the Federal Rules. So, if a defendant files an ordinary Rule 12 or Rule 56 motion and prevails on that motion, he triggers UPEPA's mandate to shift fees and costs.

*Paucek*, 349 F.R.D. at 514. That is precisely the situation here. *See also* Michael Berry & Kaitlin M. Gurney, *Pennsylvania Joins States Enacting Tough Anti-SLAPP Protections: The New Uniform Public Expression Protection Act*, 96 PA. B.A. Q. 1, 23 (2025) ("[Anti-SLAPP fee-shifting] is determined based on the same standards that federal courts employ in deciding motions under Rules 12 and 56."). Even assuming the "prima facie" subsection conflicts with federal rules, courts "permit[] the application of other provisions in the same statute that do not conflict with the Federal Rules." *Paucek*, 349 F.R.D. at 515 (collecting cases).

[6] Nor does Section 8340.18(a)(1) conflict with Rule 11, because it is not a sanctions statute. Rather, it "is simply a 'mandatory award of attorneys' fees to the prevailing defendant,'" and "suggest[s] nowhere that an award of fees for a prevailing defendant is meant as a sanction." *Paucek*, 349 F.R.D. at 518 (quoting *Bobulinski*, 758 F. Supp. 3d at 189 n.24).

In their recent letter (Dkt. 51), Ms. McCaffery's counsel cited two cases to suggest that the Anti-SLAPP Law conflicts with the Federal Rules of Civil Procedure. But neither has any bearing here. Each case (i) involved a party's attempt to take advantage of *procedural* features of the Anti-SLAPP Law, (ii) did *not* address the substantive attorneys' fee provisions, and (iii) did *not* arise from a Rule 54(d)(2) motion following a Rule 12(b)(6) dismissal.

Take *Jakes v. Youngblood*, for example. 782 F. Supp. 3d 210 (W.D. Pa. 2025). In that case, the court did "not reach the issue of whether § 8340.18 is applicable in federal court," and the defendant did not make a Rule 12 or Rule 54 motion. *Id.* at 220–21. Rather, the defendant brought a "Special Motion to Dismiss Pursuant to Pennsylvania's Anti-SLAPP Statute"—a plainly inapplicable state procedural device—relying upon a multitude of affidavits and exhibits. *Id.* at 215–16. The defendant sought to bring in this extrinsic evidence under the guise of section 8340.15, including the subsection addressing plaintiff's "prima facie case" (which is *not* invoked here). *Id.* In that improper procedural context, where the defendant "seemingly require[d] the Court to look outside the pleadings to other evidence and documents submitted by the parties," the court found that the defendant's use of section 8340.15 conflicted with the pretrial dismissal procedures of Rules 12 and 56. *Id.* at 219.

In Ms. McCaffery's other cited case, *Salaam v. Trump*, Chief Judge Beetlestone made clear that "the question of whether [the fee] provisions of the Anti-SLAPP Statute apply in federal court . . . [wa]s not addressed," and again the defendant did not make a Rule 12 or Rule 54 motion. 350 F.R.D. 14, 20 n.6, 21 n.8 (E.D. Pa. 2025). Rather, unlike here, the defendant purported to bring a "Motion solely under Pennsylvania's Anti-SLAPP Statute." *Id.* at 20 n.6. The defendant, somewhat creatively, contended that a prior dismissal without prejudice rendered him permanently "immune" under section 8340.15 and foreclosed the plaintiff's opportunity to amend. *Id.* at 18.

9

The court rejected the defendant's use of section 8340.15 to bar the plaintiff's claims, finding that it conflicted with Rules 12, 15, and 56. *Id.* at 20 & n.7.[7]

The cases cited by Ms. McCaffery's counsel thus get her nowhere in trying to defeat *this* Motion. Defendants' Motion is entirely consistent with the federal rules and does exactly what the federal rules prescribe. After properly moving and prevailing under Rule 12(b)(6), Defendants bring this Motion under Rule 54(d)(2), which by its terms squarely embraces state fee-shifting statutes such as the Anti-SLAPP Law. In this posture, sections 8340.15(1)(ii) and 8340.18(a)(1) are in harmony with Rule 12(b)(6) and Rule 54(d)(2). *See Richey*, 2026 WL 867264, at *5 (no conflict where defendant "neither moved to dismiss under the special procedural provisions nor asked the Court to apply a non-Rule 12(b)(6) standard to [plaintiff's] complaint in resolving its motion to dismiss").

### 3. The Attorneys' Fees Provisions Are Substantive

Once it is determined that no applicable federal rule conflicts with sections 8340.15(1)(ii) and 8340.18(a)(1), the last step of the *Erie* analysis is to determine whether those provisions are substantive and therefore apply in federal court. While sometimes "*Erie*'s murky waters" make this question difficult, here the applicability of state fee-shifting statutes is "settled law." *Paucek*, 349 F.R.D. at 511, 516 (citations omitted).

The Third Circuit has long held that, "for *Erie* purposes, a party's asserted right to

---

[7] In *Henrich v. Colby's Crew Rescue*, District Judge Henry ruled that section 8340.15 conflicted with Rule 12(b)(6) "by effectively 'supplant[ing] the Rule 12(b)(6) motion to dismiss standard with the Rule 56 summary judgment standard.'" 2026 WL 839119, at *8 (E.D. Pa. Mar. 26, 2026) (alteration in original) (quoting *Jakes*, 782 F. Supp. 3d at 218). That decision has no persuasive value in the context of this Motion. In theory, section 8340.15(2)—a subsection *not* at issue here—might supplant Rule 12(b)(6) if a defendant sought to invoke that subsection's "no genuine issue as to any material fact" standard on a pre-answer motion to dismiss. But here, Defendants never invoked section 8340.15(2), and Defendants litigated their motion to dismiss under the ordinary Rule 12(b)(6) standard. Defendants' use of section 8340.15(1)(ii) does not and cannot "supplant" Rule 12(b)(6).

attorneys' fees is a matter of substantive state law." *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008). "[S]tate law creating or denying the right to attorneys' fees controls in a diversity action" under "principles designed to prevent forum shopping and to uphold the rationale of *Erie*." *Sec. Mut. Life Ins. Co. of N.Y. v. Contemp. Real Est. Assocs.*, 979 F.2d 329, 332 (3d Cir. 1992) (citing *Montgomery Ward*, 557 F.2d at 56). "[A] statute which permits a prevailing party in certain classes of litigation to recover fees" "embod[ies] a substantive policy" of the state. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975)). As the Supreme Court and the Third Circuit have recognized, state fee-shifting statutes are substantive and apply in diversity cases.

Therefore, the Anti-SLAPP Law's fee-shifting provisions are substantive and apply here. That is true of both the award of section 8340.18(a)(1) and the immunity of section 8340.15(1)(ii), which triggers the award. *See Ali v. McClinton*, 2017 WL 2588425, at *2 (E.D. Pa. June 14, 2017) ("[U]nder the *Erie* doctrine, state rules of immunity govern actions in federal court alleging violations of state law."); *see also* PA. H.R. JOUR., 2023 Reg. Sess. No. 45, at 1268 (House Speaker: "The subject of [the act] is to provide for a *substantive* right of civil immunity based on protected public expression." (emphasis added)). The commentary to the Anti-SLAPP Law explains that its provisions, including fee-shifting, protect and enshrine "substantive" rights, namely, First Amendment rights and a right not to incur the "expense of defending against litigation that has no demonstrable merit." 42 Pa. C.S. § 8340.13 unif. l. cmt. 2; *see also* Berry & Gurney, *supra* note 5, at 22 (Anti-SLAPP Law's "mandatory award of attorneys' fees is a substantive provision of state law" applicable in federal court). Federal courts must apply these substantive rights to prevent forum-shopping; otherwise, the federal courts would "become safe havens for abusive litigants" who could file meritless suits there "with impunity" and "[w]ithout the prospect of

11

having to financially reimburse" prevailing defendants.  42 Pa. C.S. § 8340.18 unif. l. cmt. 1.[8]

In sum, the Anti-SLAPP Law's fee-shifting provisions offer substantive protections under state law, and a failure to apply those provisions  would undermine the law's purpose and promote forum-shopping by plaintiffs seeking to pursue dubious claims arising from speech on matters of public concern.  And as explained *supra* Part II.A.2, the fee-shifting provisions do not frustrate any federal policy or conflict with any federal rule.  Therefore, *Erie* requires the application of these provisions.

### B.    The Amount of Fees Requested Is Reasonable

Defendants seek recovery of $491,009.00 in attorneys' fees and $5,847.25 in litigation expenses.  Of that, $333,453.00 corresponds to fees billed by Davis Wright Tremaine for 481.4 hours at a blended hourly rate of $700 per hour for partner and senior associate-level attorneys (and a lower rate for paralegals and support staff), and $3,787.42 corresponds to related expenses incurred by Davis Wright Tremaine.  The remaining $157,556.00 corresponds to fees billed by Hangley Aronchick Segal Pudlin & Schiller ("Hangley") for 280.2 hours at the rates described below, and $2,059.83 for related expenses incurred by Hangley.

The party seeking fees "has the initial burden of proving that its fee request is reasonable by submitting evidence of the number of hours worked and the hourly rate claimed."  *United States ex rel. John Doe I v. Penn. Blue Shield*, 54 F. Supp. 2d 410, 413 (M.D. Pa. 1999) (citing *Rode v.*

---

[8] Notably, the General Assembly intentionally separated the Anti-SLAPP Law's substantive provisions from its procedural provisions, and delayed the effective date of the procedural provisions to comply with the Pennsylvania Constitution's requirement that only the Pennsylvania Supreme Court promulgate court procedures.  *See* Pa. Const. art. V, § 10(c).  The procedural sections (which are *not* invoked here) will not go into effect until they are approved by the Supreme Court.  *See* 2024 Pa. Laws 72, § 7(1) (delaying effective date of 42 Pa. C.S. § 8340.16).  The substantive provisions—including the fee-shifting provisions invoked here—went into effect immediately upon enactment, as this Court observed. Dkt. 46 at 27.  Thus, nothing prevents parties in federal court from invoking the substantive provisions only, as Defendants do here.

*Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).  "In determining whether an award is reasonable, a court first calculates the lodestar by multiplying the reasonable hours worked by a reasonable hourly rate."  *Augustyn v. Wall Twp. Bd. of Ed.*, 139 F.4th 252, 259 (3d Cir. 2025) (citing *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992)).  "The party opposing the fee award then has the burden of challenging the reasonableness of the fee requested" with "sufficient[] specific[ity]."  *Penn. Blue Shield*, 54 F. Supp. 2d at 413–14 (citing *Rode*, 892 F.2d at 1183).

### 1.    Defendants' Hourly Rates Are Reasonable

"Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community."  *Rode*, 892 F.2d at 1183 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  "[T]he normal billing rate of the attorney provides a starting point."  *Hinckley v. E.I. Du Pont De Nemours & Co.*, 583 F. Supp. 11, 13 (E.D. Pa. 1983).  Indeed, as a court in this District recently explained, "[a]n attorney's actual billing rate is generally strong evidence of the market rate because 'billing rates reflect market rates,' and 'they therefore provide an efficient and fair short cut for determining the market rate.'"  *Abira Med. Lab'ys, LLC v. UPMC Health Plan Inc.*, 2025 WL 2109346, at *1 (E.D. Pa. July 28, 2025) (quoting *Student Pub. Int. Rsch. Grp. of N.J., Inc. v. AT&T Bell Lab'ys*, 842 F.2d 1436, 1445 (3d Cir. 1988)).[9]  The court should also "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Rode*, 892 F.2d at 1183.

---

[9] Other courts across the country have similarly held that the actual rate charged by counsel to private clients is the best evidence of a reasonable hourly rate.  *E.g.*, *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 735 (D.C. Cir. 2018) ("[A]n attorney's usual billing rate is presumptively the reasonable rate."); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm."); *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) (attorney's uncontested customary billing rate is *prima facie* reasonable), *abrogated on other grounds by Shipes v. Trinity Indus.*, 987 F.2d 311, 322–23 (5th Cir. 1993).

13

### a.    Davis Wright Tremaine

Davis Wright Tremaine LLP represents NYU in this case.  Davis Wright Tremaine is an AmLaw 100 law firm, with more than 600 lawyers in the United States.  It is widely known for its work in the fields of First Amendment, media, and entertainment law and represents numerous prominent media companies and publishers, including newspapers, publishing houses, television networks, documentary producers, and content producers of various stripes.  Law360 has named Davis Wright Tremaine's media and entertainment group a Practice Group of the Year nine of the last ten years, and the 2026 edition of Best Law Firms named Davis Wright Tremaine "Law Firm of the Year" for First Amendment Litigation.  Chase Decl. ¶ 2.  In setting its rates, Davis Wright Tremaine relies upon annual survey data compiled independently by one of the "Big Four" national accounting firms.  As set forth in the Declaration of David Altuna, Davis Wright Tremaine's billing rates are generally significantly lower than the midpoint range of rates of 70 other large law firms with headquarters or branch offices in New York.  *See* Altuna Decl. ¶ 7.

Jeremy Chase is a partner at Davis Wright Tremaine with over 16 years of litigation experience.  Mr. Chase concentrates his practice in cases involving defamation, copyright, trademark, right-of-publicity, invasion of privacy, SLAPP, reporters' shield laws, open records laws, access to courts, and all manner of news-gathering issues.  Named one of 500 Leading Global Entertainment, Sports & Media Lawyers in 2025 and a Rising Star in Media & Entertainment by Law360 in 2021, Mr. Chase graduated from the University of Pennsylvania Law School in 2009 and clerked for the Hon. Gene E.K. Pratter in the Eastern District of Pennsylvania.  Prior to joining Davis Wright Tremaine, Mr. Chase worked at Gibson, Dunn & Crutcher LLP in New York.  A copy of Mr. Chase's firm biography is attached as Exhibit A to his declaration.  Mr. Chase's 2026 standard hourly rate is $1,080, and his rate in 2025 was $965.

Raphael Holoszyc-Pimentel is an associate at Davis Wright Tremaine, where he litigates

14

defamation, copyright, trademark, and First Amendment matters.  Mr. Holoszyc-Pimentel graduated *magna cum laude* and Order of the Coif in 2015 from NYU School of Law, where he was Executive Editor of the NYU Law Review, and he clerked for the Hon. Edgardo Ramos on the United States District Court for the Southern District of New York.  He was named "One to Watch" by Best Lawyers for Intellectual Property Litigation from 2023–2026 and a "New York Rising Star" in Intellectual Property by Thomson Reuters in 2024.  Prior to joining Davis Wright Tremaine, Mr. Holoszyc-Pimentel worked at Jenner & Block LLP in New York.  A copy of Mr. Holoszyc-Pimentel's firm biography is attached as Exhibit B to the Chase Declaration.  Mr. Holoszyc-Pimentel's 2026 standard hourly rate is $970, and his rate in 2025 was $880.

Alexandra Perloff-Giles is an associate at Davis Wright Tremaine, where she represents media clients in defamation, First Amendment, and other matters.  Ms. Perloff-Giles graduated in 2017 from Yale Law School, where she was Executive Editor of the Yale Law Journal.  She clerked for the Hon. Marsha S. Berzon on the Ninth Circuit Court of Appeals, served as the First Amendment Fellow at The New York Times Company from 2019–2020, and has been named "One to Watch" by Best Lawyers in Entertainment & Sports Law since 2024.  Prior to joining Davis Wright Tremaine, Ms. Perloff-Giles worked at Gibson, Dunn & Crutcher LLP in New York. A copy of Ms. Perloff-Giles's firm biography is attached as Exhibit C to the Chase Declaration. Ms. Perloff-Giles's 2026 standard hourly rate is $910, and her rate in 2025 was $825.

In this matter, Davis Wright Tremaine charged a blended hourly rate of $700 for all attorneys.  That $700 rate is reasonable for several reasons.

*First*, that rate represents a significant discount off the attorneys' normal billing rates of $910–$1,080, which themselves represent the starting point for determining reasonable market rates. *See Hinckley*, 583 F. Supp. at 13.

15

*Second*, similar Davis Wright Tremaine rates have routinely been upheld as reasonable by courts across the country. *See*, *e.g.*, *Hill v. Heslep*, No. 20STCV48797 (Cal. Sup. Ct. 2021) (Chase Decl. Ex. D) (finding partner hourly rate of $700 in 2021 to be "reasonable and commensurate with or lower than rates charged by attorneys with comparable skill and expertise"); *White v. A360 Media, LLC*, No. 20STCV49927 (Cal. Sup. Ct. 2021) (Chase Decl. Ex. E) (finding partner hourly rates of $787.50 and $657.00 for work conducted in 2020 to be reasonable).

*Third*, the fees sought here by Davis Wright Tremaine are in keeping with fees routinely awarded in defamation cases and other cases dismissed under anti-SLAPP laws. *See Bobulinski v. Tarlov*, 2025 WL 872178, at *2 (S.D.N.Y. Mar. 20, 2005) (finding partner hourly rate of $1,338.75 and associate hourly rates of $722.50 and $637.50 to be reasonable in defamation action); *Title Tracy Anderson Mind & Body, LLC v. Roup*, 2023 WL 6890744, at *2–3 (C.D. Cal. Sept. 11, 2023) (finding 2023 partner hourly rates of $1,010–$1,065, counsel hourly rate of $1,000, and associate hourly rates of $760 and $655 to be reasonable in case involving copyright infringement and other claims); *Herring Networks, Inc. v. Maddow*, 2021 WL 409724, at *5, 7 (S.D. Cal. Feb. 5, 2021) (finding 2019–2020 partner hourly rates of $1,050–$1,150, senior associate hourly rate of $720, and mid-level associate hourly rate of $470 to be reasonable in defamation case); *Wynn v. Chanos*, 2015 WL 3832561, at *2–3 (N.D. Cal. June 19, 2015) (finding partner hourly rates of $920–$1,085 and associate hourly rates of $640–$710 to be reasonable in anti-SLAPP defamation case), *aff'd*, 685 F. App'x 578 (9th Cir. 2017).

*Fourth*, in determining a reasonable hourly rate, courts may look to reasonable hourly rates in other markets where the attorneys involved maintain their offices, when those attorneys have "special expertise" that warrants the engagement of attorneys outside the District. *See*, *e.g.*, *PPG Indus., Inc. v. Jiangsu Tai Mao Glass Co.*, 2022 WL 247755, at *5–9 (W.D. Pa. Jan. 27, 2022)

16

(determining that reasonableness of Quinn Emanuel attorneys' hourly rates should be assessed "within the context of the market in which those attorneys practice—Washington, D.C."). Here, Davis Wright Tremaine's New York attorneys had special expertise in defamation law and New York's fair report privilege in particular, which this Court held applied to this case (Dkt. 46 at 22). For example, Ms. Perloff-Giles worked on *Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021), one of the key precedents relied upon in the Court's decision granting Defendants' motion to dismiss (Dkt. 46 at 14, 20–21, 23). Other Davis Wright Tremaine attorneys litigated *Goguen v. NYP Holdings, Inc.*, 544 P.3d 868 (Mont. 2024), another key precedent supporting the application of New York's fair report privilege in a foreign jurisdiction (Dkt. 46 at 21). Davis Wright Tremaine's hourly rates should therefore be measured against the reasonable hourly rates for New York, where far higher rates for AmLaw 100 attorneys are routinely approved. *See An v. Despins*, 2024 WL 1157281, at *2, *4 (S.D.N.Y. Mar. 18, 2024) (finding 2023 partner hourly rate of $1,760, counsel hourly rate of $1,440, and associate hourly rate of $895 to be reasonable); *Wells Fargo Tr. Co. v. Fast Colombia S.A.S.*, 2023 WL 8591953, at *7 (S.D.N.Y. Oct. 16, 2023) (finding partner hourly rates of $1,370 to $1,750 and associate hourly rates of $1,060 to $1,240 to be reasonable), *adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023); *Vista Outdoor, Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (finding that partner hourly rates of $1,170 and $1,260 were reasonable and "not excessive in the New York 'big firm' market").

Even looking only to cases in this District, Davis Wright Tremaine's rates are reasonable. *See*, *e.g.*, *Bianucci v. Rite Aid Corp.*, 2025 WL 2166015, at *9 n.6 (E.D. Pa. July 30, 2025) (finding hourly rates of $850–$1,300 for partners and $520–$800 for associates "reasonable in this market"); *In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *27–28 (E.D. Pa. Mar. 15, 2023) (finding hourly rates of up to $1,325 to be reasonable and "well within the range of rates charged

by other attorneys in this market"); *Whiteley v. Zynerba Pharms, Inc.*, 2021 WL 4206696, at \*14 (E.D. Pa. Sept. 16, 2021) (finding hourly rates of up to $1,100 to be "well within the range of what is reasonable and appropriate in this market"); *Oross v. Kutztown Univ.*, 2025 WL 3644245, at \*4 (E.D. Pa. Dec. 16, 2025) (finding hourly rates of $825–850 reasonable); *Abira Med.*, 2025 WL 2109346, at \*1 (partner hourly rate of $712 and associate hourly rate of $632 reasonable); *Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at \*14 (E.D. Pa. Aug. 31, 2018) (blended hourly rate of approximately $685 reasonable); *see also PPG Indus.*, 2022 WL 247755, at \*9 (noting "the hourly rate for the primary attorney at Duane Morris [in Pittsburgh, PA] responsible for representing Defendants in this matter before this Court was $750 per hour" and holding this rate was "persuasive" evidence plaintiff's counsel's $782 blended rate for all attorneys was reasonable).

### b.    Hangley Aronchick Segal Pudlin & Schiller

Hangley represents Patricia Cummings in this case.  Hangley is a sophisticated, Philadelphia-based boutique law firm, ranked a Leading Firm in USA by Chambers in 2025.

John S. Summers is a shareholder at Hangley with over 40 years of experience in complex commercial litigation in state and federal courts.  Mr. Summers is chair of Hangley's litigation department and was ranked by Chambers USA for General Commercial Litigation in Pennsylvania: Philadelphia & Surrounds from 2006 to 2025, by The Legal 500 Philadelphia Elite as Tier 1 for Commercial Disputes from 2025–2026, and by The Best Lawyers in America for Commercial Litigation, ERISA Litigation, and Real Estate Litigation from 2008–2026.  He is a Member of the American Law Institute, East Coast Solicitor to the Pennsylvania Conference of State Trial Court Judges, and formerly chair of a Hearing Board of Disciplinary Board of the Supreme Court of Pennsylvania.  Mr. Summers graduated from University of Pennsylvania Law School in 1984 and clerked for the Hon. Thomas N. O'Neill, Jr. on the United States District Court for the Eastern District of Pennsylvania.  A copy of Mr. Summers's firm biography is attached as

Exhibit B to his declaration.  Mr. Summers's hourly rate for this matter is $775.

Jason A. Levine is a shareholder at Hangley with 16 years of experience in complex commercial litigation.  He was ranked in Tier 2 for Commercial Disputes by The Legal 500 City Elite: Philadelphia from 2025–2026, among the Best Lawyers in America for Commercial Litigation in 2026, and among Pennsylvania Super Lawyers for Business Litigation from 2022–2025.  Mr. Levine graduated *magna cum laude* from University of Pennsylvania Law School in 2009 and clerked for the Hon. Anthony J. Scirica on the United States Court of Appeals for the Third Circuit.  Prior to joining Hangley, Mr. Levine worked at Covington & Burling in Washington D.C.  A copy of Mr. Levine' firm biography is attached as Exhibit C to the Summers Declaration. Mr. Levine's hourly rate for this matter is $550.

Nicholas J. Bellos is an associate at Hangley where he litigates complex civil disputes at the trial and appellate levels in state and federal courts.  Mr. Bellos graduated from University of Pennsylvania Law School *magna cum laude* in 2019 and clerked for the Hon. Jan E. DuBois of the United States District Court for the Eastern District of Pennsylvania and for the Hon. Marjorie O. Rendell on the United States Court of Appeals for the Third Circuit.  A copy of Mr. Bellos' firm biography is attached as Exhibit D to the Summers Declaration.  Mr. Bellos' hourly rate for this matter in 2025 was $365, and it is now $390.

For the reasons set forth above with respect to Davis Wright Tremaine's rates and in the Declaration of John S. Summers, Hangley's hourly rates are also reasonable.

### 2.    The Hours Worked by Defendants' Counsel Are Reasonable

Attorneys at Davis Wright Tremaine worked 466.5 hours from the filing of the Complaint through resolution of the motion to dismiss the Amended Complaint.  Of that, 127.2 hours were billed by partner Jeremy Chase, 325.1 hours were billed by associate Raphael Holoszyc-Pimentel, and 14 hours were billed by associate Alexandra Perloff-Giles.  Attorneys at Hangley worked

19

280.2 hours from the filing of the Complaint through resolution of the motion to dismiss the Amended Complaint.

This litigation proceeded in phases. The first phase was through removal to federal court, including analysis of the original Complaint, initial factual investigation and development, the identification of Hangley as counsel for Ms. Cummings, and coordination among the firms on strategy. The second phase was through the filing of the motion to dismiss the original Complaint, including conducting research and drafting and editing the brief and ancillary papers, as well as collecting and reviewing documents from the clients. The third phase was through the filing of the motion to dismiss the Amended Complaint—a phase necessitated by Ms. McCaffery's decision to amend. The fourth phase was through the filing of Defendants' reply in support of their motion to dismiss and also included initial work on preparing demonstratives for oral argument. The fifth phase was through oral argument, including each firm's preparation for argument and a moot with both firms. The sixth phase—again necessitated by the litigation tactics by Ms. McCaffery's counsel—involved researching and drafting a response to Ms. McCaffery's supplemental brief and to a (baseless) letter from her counsel threatening Hangley with sanctions.[10]

Exhibit F to the Chase Declaration contains a breakdown of the hours billed by each Davis Wright Tremaine attorney during each phase of this litigation and a summary of the work conducted during that phase of the litigation. Exhibit E to the Summers Declaration contains the

---

[10] Ms. McCaffery's counsel understood before filing this case—in state court—that an early motion to dismiss could subject Ms. McCaffery to liability for a fee award. As her counsel's own website warns, following enactment of the Anti-SLAPP Law, "the risk that a claim may not survive an early motion to dismiss – and therefore, the defamation plaintiff would be tagged with having to pay a defendant's attorney fees – must be considered before a plaintiff decides to pursue a defamation lawsuit." *Understanding Pennsylvania's New Anti-SLAPP Statute: Implications for Defamation Cases*, BOCHETTO/LENTZ P.C. (July 25, 2024), https://www.bochettoandlentz.com/understanding-pennsylvanias-new-anti-slapp-statute-implications-for-defamation-cases/.

same information for Hangley.[11]

Defendants' hours billed are reasonable. *First*, this case was indisputably complex. It involved thorny questions of choice of law that had not previously been decided by any court in the Third Circuit. And, while the case was decided on a motion to dismiss, counsel had to familiarize themselves with the significant underlying proceedings—including the trial, retrial, conviction, appeal, post-conviction relief, and *nolle prosequi* of Dontia Patterson's criminal case— and to comb through a lengthy factual record, as Ms. McCaffery attached to her Amended Complaint about 2,000 pages of trial transcripts. Indeed, the Court acknowledged in its decision that "[t]he record before us is more substantial than a typical motion to dismiss" and "includes many exhibits from both parties, including the Zimroth Report, Nol Pros Motion, transcripts from the nol pros proceedings and two jury trials, copies of the documentary evidence allegedly withheld from the defense during Mr. Patterson's jury trials, and media coverage regarding the *Patterson* proceedings." Dkt. 46 at 22. Additionally, Ms. McCaffery and her counsel had engaged in extensive Right-to-Know litigation to obtain documents and testimony cited in the Complaint and Amended Complaint; reviewing and digesting those extensive materials further complicated the defense in this matter. Defendants reasonably needed to expend significant time studying these voluminous materials.

*Second*, Defendants took an efficient approach to litigating this case: Rather than file two

---

[11] Under Third Circuit law, a fee petition need only "include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.'" *Washington v. Phil. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1037–38 (3d Cir. 1996) (quoting *Rode*, 892 F.2d at 1190). "[I]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* at 1038 (quoting *Rode*, 892 F.2d at 1190). Should the Court require line-by-line billing entries, however, Defendants can provide them under seal.

separate motions on behalf of NYU and Ms. Cummings, Defendants coordinated and filed a joint motion to dismiss on behalf of both Defendants.

Davis Wright Tremaine took the lead on drafting to take advantage of its significant experience in litigating defamation cases. Specifically, Mr. Chase formulated strategy and coordinated the defense, reviewed and revised the briefs, corresponded with the clients, co-defense counsel, and opposing counsel, and prepared for and delivered oral argument. Mr. Holoszyc-Pimentel did the lion's share of the drafting work on the case, including drafting the motion to dismiss the original Complaint, the motion to dismiss the Amended Complaint, the reply in support of the motion to dismiss, and the response to Ms. McCaffery's supplemental brief. Ms. Perloff-Giles worked on editing and incorporating comments on the motions, including when Mr. Holoszyc-Pimentel was traveling, and on the slide show presentation for oral argument, pursuant to this Court's Policies & Procedures § 9 inviting "illustrative aids." In addition, counsel had to devote time to collecting documents from Defendants. Davis Wright Tremaine incurred expenses for collecting, processing, and hosting that data, as well as for obtaining copies of court documents and for counsel's travel to Philadelphia for oral argument.

Hangley worked closely with Davis Wright Tremaine on revising drafts of the aforementioned briefs. Mr. Summers, who is familiar with the underlying subject matter of this litigation through his prior representations of the Philadelphia DAO and Ms. Cummings, compiled and synthesized information about the underlying *Patterson* proceedings. Mr. Summers also provided guidance on local practice and procedure, communicated extensively with Ms. Cummings and opposing counsel, and prepared for and delivered oral argument with Mr. Chase. Mr. Levine revised all draft filings, participated in several strategy meetings with co-counsel, worked with a vendor to obtain potentially relevant documents, and helped to prepare Mr.

22

Summers for oral argument. Mr. Bellos conducted legal research on several issues in connection with Defendants' motions and other filings.

*Third*, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Defendants' motion to dismiss was entirely successful, resulting in the early dismissal with prejudice of all claims against all Defendants. Courts have recognized that "[w]here, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass *all hours reasonably expended* on the litigation.'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (emphasis added) (quoting *Hensley*, 461 U.S. at 435).

### 3. Additional Considerations Support the Reasonableness of the Requested Fees

"Once the lodestar amount has been calculated, a court has discretion to adjust the fee up or down, based on a variety of factors." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 96 (3d Cir. 2006). Those non-exclusive factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* at 96 n.2 (quoting *Hensley*, 461 U.S. at 430 n.3).

Those factors, among others, would support an adjustment upward from the lodestar. At a minimum, then, they support the reasonableness of Defendants' requested fees.

23

*First*, Defendants have taken a reasonable approach to the fees they are seeking to recover. Defendants are not seeking fees for analyzing the Court's motion-to-dismiss decision and preparing this fee motion, even though Defendants would be entitled to "fees on fees," as courts have held under other states' similar versions of UPEPA.[12]  Defendants also have not sought to recover 14.4 hours out of a total of 28.4 hours billed by Ms. Perloff-Giles, to avoid any concerns that those hours might be viewed as duplicative of work performed by Mr. Holoszyc-Pimentel. Additionally, Defendants are not seeking to recover fees incurred by Hangley's paralegal.

*Second*, counsel for Defendants not only have sterling legal credentials, including degrees from top-ranked law schools and federal court clerkships, but the Davis Wright Tremaine attorneys who took the lead on the briefing all have extensive experience litigating defamation cases, and the Hangley attorneys are likewise experienced and respected litigators who have deep familiarity with practice in this District.  *See Tenafly Eruv*, 195 F. App'x at 96 n.2 (courts should consider "experience, reputation, and ability of the attorneys").

*Third*, the key questions in this case—whether New York's fair report privilege should apply to a Pennsylvania defamation claim and how to apply that privilege—had never been addressed by a court in this Circuit.  In fact, the legal industry has recognized that the Court's decision in this case addressed a novel and significant issue. Law360 not only wrote an article about the decision, but also covered the suit in its March round-up of four important defamation

---

[12] *See*, *e.g.*, *Aston v. Chron.-Progress LLC*, 2026 WL 900920, at \*7 (Utah Apr. 2, 2026) ("[B]oth reasonable merits fees and reasonable fees for litigating those fees (often called 'fees-on-fees') are awardable [under Utah's UPEPA]." (citation omitted)); *Project Veritas v. Leland Stanford Junior Univ.*, 2022 WL 3103827, at \*2 (W.D. Wash. Aug. 4, 2022) (awarding fees-on-fees under Washington's UPEPA).

24

cases nationwide.[13]    The novelty and difficulty of the questions therefore supports the reasonableness of the rates.  *See Tenafly Eruv*, 195 F. App'x at 96 n.2.

***Fourth***, NYU is a longtime client of Davis Wright Tremaine, which has represented it in numerous other defamation and related matters.[14]  That repeat business confirms that Davis Wright Tremaine's rates are reasonable.  *See Tenafly Eruv*, 195 F. App'x at 96 n.2 ("nature and length of the professional relationship with the client" can support reasonableness of fees).  Likewise, Hangley and Mr. Summers in particular have represented Ms. Cummings or the Philadelphia DAO for several years.

***Finally***, "the results obtained," *id.*—dismissal of all claims against all Defendants at the earliest possible stage—supports the reasonableness of the requested fee award.

## III.    CONCLUSION

Defendants respectfully request that the Court award Davis Wright Tremaine attorneys' fees in the amount of $333,453.00 and expenses of $3,787.42, and award Hangley attorneys' fees in the amount of $157,556.00 and expenses of $2,059.83.

---

[13] *See* Matthew Santoni, *NYU Report Privilege Beats Ex-Prosecutor's Defamation Suit*, LAW360 (Mar. 17, 2026), https://www.law360.com/articles/2454003; Theresa Schliep, *Defamation Litigation Roundup: Unilever, Afroman, Musk*, LAW360 (Mar. 31, 2026), https://www.law360.com/articles/2458764.

[14] *See*, *e.g.*, *Rapaport v. Epstein*, No. 1:24-cv-7439-JGLC (S.D.N.Y.); *Rapaport v. Iyer*, No. 1:23-cv-6709 (S.D.N.Y.); *Miller v. Appadurai*, No. 160329/2020 (Sup. Ct. N.Y. Cnty.); *Hoben v. Aramark Corp.*, No. 154095/2018 (Sup. Ct. N.Y. Cnty.); *Rectenwald v. N.Y. Univ.*, No. 150387/2018 (Sup. Ct. N.Y. Cnty.).

Respectfully submitted,

| | |
|---|---|
| DAVIS WRIGHT TREMAINE LLP | HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER |

By:   */s/ Jeremy A. Chase*

    Geoffrey S. Brounell
    Jeremy A. Chase (*pro hac vice)*
    Raphael Holoszyc-Pimentel (*pro hac vice)*
    Alexandra Perloff-Giles (*pro hac vice*)
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020-1104
(212) 489-8230
geoffreybrounell@dwt.com
jeremychase@dwt.com
rhp@dwt.com
alexandraperloffgiles@dwt.com

*Attorneys for Defendants New York University School of Law and New York University*

By:   */s/ John S. Summers*

    John S. Summers
    Jason A. Levine
    Nicholas J. Bellos
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
jsummers@hangley.com
jlevine@hangley.com
nbellos@hangley.com

*Attorneys for Defendant Patricia Cummings*

Dated:  April 13, 2026